**UNITED STATES DISTRICE COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISON**

**ADAM COMMUNITY CENTER,** a
domestic nonprofit corporation, a/k/a
**ADAM COMMUNITY (ACC),** a
Domestic nonprofit corporation**,**

      Plaintiff,                          **Case No:**
                                          **Hon.**

v.

**CITY OF TROY,** A Michigan municipal
Corporation, **TROY CITY COUNCIL, CITY**
**OF TROY PLANNING COMMISSION,**
**CITY OF TROY ZONING BOARD OF**
**APPEALS,** and **DANIEL AGAUAS, GLEN**
**CLARK, THOMAS DESMOND, DAVID**
**EISENBACHER, ORESTIS KALTSOUNIS,**
**PADMA KUPA, DAVE LAMBERT, JAMES**
 **MCCAULEY,** individually and in their official
Capacities as Members of the **TROY ZONING**
**BOARD OF APPEALS,**

      Defendants.

---

**COUNCIL ON AMERICAN ISLAMIC RELATIONS MICHIGAN**
By: Amy V. Doukoure (P80461)
Attorney for Plaintiff
30201 Orchard Lake Road Suite 260
Farmington Hills, MI 48334
(248) 559-2247 Phone
(248) 559-2250 Fax
adoukoure@cair.com

---

**VERIFIED COMPLAINT, REQUEST FOR INJUNCTIVE RELEIF AND JURY**
**DEMAND**

       **NOW COMES,** Plaintiff, ADAMS COMMUNITY CENTER, a domestic nonprofit

corporation, by and through its attorneys COUNCIL ON AMERICAN ISLAMIC RELATIONS-

MICHIGAN, by Amy V. Doukoure, against Defendants City of Troy, City of Troy Planning

Commission, City of Troy Zoning Board of Appeals; Daniel Agauas, Glen Clark, Thomas

1

Desmond, David Eisenbacher, Orestis Kaltsounis, Padma Kupa, Dave Lambert, and James McCauley, individually and in their official capacities as Members of the Troy Zoning Board of Appeals, and avers as follows:

## Parties

1. Plaintiff Adam Community Center, a/k/a Adam Community (ACC) (hereinafter "Adam") is a Michigan domestic nonprofit corporation with business ID# 800923245. Its principal place of business is 29200 Southfield Road, Suite 108, Southfield, Michigan 40876. Adam's stated mission and purpose is to establish a center for increasing knowledge through proper research, education and training in the community for the youth and adults; To establish peace through proper guidance; to establish a homogenous atmosphere for all ethnic groups. For the purposes of RLUIPA, Adam constitutes a religious assembly or institution.

2. Defendant City of Troy (hereinafter "Troy") is a Michigan municipal corporation created and existing by virtue of the laws of the state of Michigan and is empowered to act through is governing body, its officials, employees and official bodies. Troy's principal place of business is 500 West Big Beaver Road, Troy, Michigan 48084. Troy is a government within the meaning of 42 U.S.C. §2000cc-5(4)(A), and is subject to the jurisdiction of this Court.

3. Defendant Troy City Council (hereinafter "City Council") is the body which adopted the Troy Zoning Ordinance (hereinafter "Zoning Ordinance"). The City Council is subject to the jurisdiction of this Court.

4. Defendant City of Troy Planning Commission, (hereinafter "Planning Commission") is a body which promulgates, adopted and interprets the Zoning Ordinance. The Planning Commission is subject to the jurisdiction of this Court.

5. Defendant City of Troy Zoning Board of Appeals (hereinafter "Troy ZBA") is the body which receives and rules on requests and applications for variances from the Zoning Ordinances. Troy ZBA is subject to the jurisdiction of this Court.

6. Defendants, Daniel Agauas, Glen Clark, Thomas Desmond, David Eisenbaher, Orestis Kaltsounis, Padma Kupa, Dave Lambert and James McCauley, are members on the Troy Zoning Board of Appeals in Troy, Michigan who hear and decide variance appeals and are subject to the jurisdiction of this Court.

## Jurisdiction and Venue

7. This Court has original federal question jurisdiction over Plaintiff's claims of violation of the United States Constitution and Religious Land use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.§2000cc et seq., pursuant to 28 U.S.C. §1331.

8. This Court has federal question jurisdiction, pursuant to 28 U.S.C. §1343 over Plaintiffs' claims regarding the deprivation under the color of State Law of rights secured by the First and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

9. This Court has supplemental jurisdiction over Plaintiff's State Law claims, pursuant to 28 U.S.C. §1367.

10. This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Michigan.

11. This Court has jurisdiction over Plaintiff's Constitutional claims pursuant to 42 U.S.C. §1983.

12. Plaintiff's claims for declaratory relief are sought under 28 U.S.C. §§ 2201 and 2202.

13. Plaintiff seeks permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §1343.

14. Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to 42 U.S.C. §1983 and RLUIPA.

15. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

16. Venue is proper under 42 U.S.C. §1391 as to all Defendants because the proposed site is located within this District, and the acts described herein occurred within this District.

## Nature of This Action

17. This is an action for declaratory and injunctive relief arising under the First and Fourtheent Amendments to the Constitution of the United States, the Religious Land use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §1988.

18. City of Troy, Troy Planning Commission, and Troy City Council has not identified any compelling government interest for creating and applying zoning ordinances more favorably to commercial businesses than it does to religious groups or religious institutions.

19. City of Troy Zoning Board of Appeals has failed to identify any compelling government interest for denying Adam's request for a variance.

20. City of Troy Zoning Board of Appeals has discriminated against Adam on the basis of religious denomination.

21. City of Troy has failed to enforce its Zoning Ordinance and Master Plan in the least restrictive means possible.

22. City of Troy has unlawfully imposed and implemented a land use regulation that imposes a substantial burden on the rights of Adam and its members to the free exercise of religion by

4

means that city officials, themselves recognize are not the least restrictive means available to the City of Troy to protect its asserted governmental interest.

23. City of Troy has imposed land use regulations that unreasonably limit religious assemblies, institutions and structures within the City, and has discriminated against MIA on the basis of religious denomination.

## Background

24. Adam is a Michigan domestic nonprofit organization. Adam currently holds religious and nonreligious classes that are open to all community members in an office space located in the city of Troy.

25. Members of the Adam's community are primarily individuals and families who reside and work within the city of Troy.

26. Furthermore, Adam holds religious worship and holiday services at various places in Michigan since they have been unable obtain approval from the City of Troy for a permanent place of worship.

27. In fact, Adam has, since 2013, attempted to have several different properties approved as a place of worship within the city of Troy without success.

28. In fact, Adam was in the process of having a building approved as a community center with a small prayer space inside of the structure, until a resident of the city of Troy complained that they believed the space was going to be utilized as a mosque and the city halted the approval of that building. After that, the city of Troy required Plaintiff to submit an application for a variance and delayed the hearing on that variance until a joint property owner sold that property to a different investor.

29. Plaintiff further attempted to purchase an existing church within the city, and when some residents of the city of Troy found out about the purchase, they brought in a group of Christian investors to pay a price higher than what Plaintiff could afford and purchased the building out from under Plaintiff.

30. In 2017, Plaintiff took several prospective properties to the City of Troy to seek advice and counsel as to which ones might be able to be developed most easily as a place of worship. The city of Troy Planning Department did not want to assist Plaintiff in reviewing the properties. When Plaintiff was speaking with City employee Paul Evans, they were told that the best thing to do for the Adam Community was to look to neighboring cities such as Rochester to acquire a place of worship because there were not any places in Troy which would be available.

31. The City of Troy currently has seventy-three (73) approved places of worship for various religions including Christian Churches and Hindu Temples. However, the city of Troy does not have a single approved Muslim Mosque or other Muslim religious institution within the city.

32. The city of Troy, through its Zoning Board of Appeals as well as planning commission employees, has on several occasions since 2013 recommended that Adam look to other cities as a better place to build their mosque and has stated that there are no places left in Troy where a mosque would be possible. This is despite the fact that there have been new Christian churches built and approved in the city of Troy between 2013 and 2018. In fact, members of the Troy ZBA bragged during recent ZBA hearings for variances how their church had just built one of the largest churches ever in the city of Troy.

33. As a result of being unable to have a permanent place of worship within the city where the majority of its members live and work, Adam has been unable to hire a full time religious

leader, hold regular congregational prayers, provide for the religious, educational and spiritual needs of its members and the Muslim community in general in Troy, resulting in a substantial burden to the free exercise and right to assemble of the Adam's community and Muslims in the city of Troy.

34. By not having a single Muslim place of worship within the city of Troy, members of the Adams community, as well as other Muslims who live and work within the city, have had their ability to practice their religion substantially burden because there is not a single place in the city for Muslims to attend the required religious congregational prayers, or where they can turn for religious education or guidance.

35. In an effort to provide for the religious needs of its members, and all of the Muslims in the city of Troy, Adam decided to purchase the substantial commercial property which is the subject of this litigation. This commercial building was proposed to be used as a religious place of worship as well as a community center with a library, gymnasium and banquet hall.

## The Proposed Property

36. The property purchased by Adam to be utilized as a Mosque and community center is located at 3565 Rochester Road, Troy, MI 48085.

37. The property is flanked on two sides by other commercial properties, is abutted on one side by a busy major road, and the fourth side of the property abuts a line of residential properties.

38. The property is fully developed as a commercial building, half of which is currently being used as a restaurant and banquet hall while the other half remains as an empty warehouse.

39. Prior to being utilized as a restaurant with an empty warehouse, the subject property was utilized as a large-scale retail establishment known as "DSW Shoe Warehouse". At the time

that this prior use existed, the entirety of the building as it stands now was utilized for that commercial purpose.

40. The property is currently permitted for use under what is known as an A-3 type use. This use type is given for commercial buildings which may hold large gatherings or "assembly". This is the same use type permit that would be required for a place of worship/community center, the proposed use of the Plaintiff. The building also holds a secondary use type of S-1 for storage.  The city has designated 52% of the building as an assembly type use and 48% as storage use.

41. However, there is no definition or use type classification for "storage" within the express terms of the zoning ordinance.

42. The property is located within "GB" or "general business" a commercial district.

43. Pursuant to the most recent approved site plan for the subject property, the single building is designated as being zoned as "B-3" or building form "C" a category that is "primarily designated for attached residential or live-work residential units. Townhouses and urban-style residential developments that are compatible with higher density urban character are the primary buildings permitted under this building form."  This zoning type requires a minimum 30 foot setback from the rear property line, requires a 10 foot setback from the street, and 15% of the property must remain as open space, according to the zoning ordinance section 5.03B.

44. There are currently126 parking spaces, one more than is required by the commercial zoning regulations for this restaurant. The parking lot and usable parking spaces currently reach the property lines on three sides of the property. The fourth property line is abutted by the city sidewalk and ingress to the parking lot.

45. Currently, there is no setback for the parking spaces that are present for the commercial use of the building, despite the 30foot setback requirement. As such, parking spaces run the entire length of the property line that abuts the residential district. The only buffer between the commercial property and the residential district is a six-foot brick wall. In fact, most, if not all, commercial properties and all current places of worship along Rochester Road have parking up to the property line that abuts residential districts.

46.   There is approximately 48.58 feet between the edge of the building and the property line that is adjacent to the residential properties. This distance is greater than that in the majority of the property where parking is present and up to 77.58 feet where the building is present.

47. The total area of the land is 98,000 sq. ft and the building is currently 20,700 sq. ft.

## Overview

48. In order for the building to be used as a mosque by Plaintiff, the building must comply with Zoning ordinance Section 6.21. Section E requires that all sides of the any building shall have a minimum of a fifty (50) foot setback and further in section F states that no parking should be setback requirement areas that are adjacent to areas zoned for residential purposes and shall be maintained as landscaped open spaces.

49. According to the Zoning Ordinance Section 4.21, Schedule of Regulations, places of worship are a use that is permitted as a right within an area zoned as "GB".

50. According to Section 4.14A of the Zoning Ordinance the intent of the General Business district is to "provide areas for more diversified retail and service uses, a City-wide regional market area, and/or arterial exposure." Furthermore, "The GB District also permits an opportunity for mixed-use development consistent with the intent of the Master Plan to support transit and walkability."

51. The current iteration of the Zoning Ordinances took effect on April 10, 2017, after the housing market and business district came back from the most recent recession.

52. It is impossible for the Plaintiff to comply with the zoning ordinance for religious places of worship with the building as it stands now for the following reasons:

  a. There is only a ten (10) foot setback in the front of the building that abuts the commercial road;

  b. There is just under a fifty (50) foot setback from the back of the building that is closest to the residential property;

  c. There is no setback on the north side of the building that abuts another commercial building as the same is not required of commercial buildings;

  d. Compliance with the limitations on parking within the setback requirement for the rear and side yards of the existing building would eliminate nearly all of the necessary parking spaces that are required under the zoning ordinance for a place of worship that size.

53. None of the difficulties in complying with the zoning requirements were created by Plaintiff, nor are they unique to Plaintiff.

54. In May 2018, Plaintiff submitted to Defendants an application for a variance and request for a hearing in front of the ZBA. That application went through three iterations prior to it being accepted by Defendants. Each time it was submitted Defendant Troy's employee Paul Evans rejected the application and asked that it be revised for the following reasons:

  a. Plaintiff's initial application listed the prior site plan as having a variance based on the fact that its classifications within the site plan did not comport with the

requirements of the Zoning Board, however Mr. Evans stated that there was no variance on the property;

b.  Plaintiff's second application was rejected by Mr. Evans who instructed Plaintiff to ask for a different type of variance than what was on the initial application. The initial application asked for a dimensional variance, and Mr. Evans instructed Plaintiff to change it to ask for a variance under Sections 6.21E and F.

55. While Plaintiff was attempting to submit its application for a variance and working directly with Mr. Evans to accomplish that goal, Mr. Evans stated to the president of the board of Plaintiff that Plaintiff should look to other cities if it wished to have a mosque stating that there was probably "no suitable places" left within the city of Troy where a mosque could be built or run.

56. Plaintiff however did finally get Mr. Evans to approve and submit its request for a variance to the Defendant ZBA for consideration and public hearing, and that hearing was held on or about June 19, 2018.

57. At the ZBA hearing Plaintiff made it abundantly clear that it did not intend to make any material changes to the outside of the building or the parking and was just asking for the variance to be able to utilize the current parking spaces that are available and being used by the previous owners of the building.

58. The express language of the Zoning Ordinance allows an owner of a property to request a variance where "literal enforcement of the provisions of this ordinance would involve practical difficulties within the meaning of this Article."  Section 15.04 E(1)

59. Further, the Zoning Ordinance requires the ZBA to authorize variance requests if they determine that the property and use will be in "harmony and with the spirit of this Article

and so that the public safety and welfare be secured ***and substantial justice done***." Section 15.04E(1) continued (emphasis added).

60. The Zoning Ordinance sets forth specific criteria for when a variance can be granted as follows:

    a. Exceptional characteristics of property for which the variance is sought make compliance with dimensional requirements substantially more difficult that would be the case for the great majority of properties in the same zoning district. Section 15.04E (2)(a).

    b. The characteristics which make compliance with dimensional requirements difficult must be related to the premises for which the variance is sought, not some other location. Section 15.04E (2)(b).

    c. The characteristics which make compliance with the dimensional requirements shall not be of a personal nature 15.04E(2)(c).

    d. The characteristics which make compliance with dimensional requirements difficult must not have been created by a current or previous owner. 15.04E(2)(d).

    e. Th proposed variance will not be harmful or alter the essential character of the area in which the property is located, will not impair an adequate supply of light and air to adjacent property or unreasonably increase the congestion in public streets, or increase the danger of fire or endanger the public safety, or unreasonably diminish or impair established property value within the surrounding area, or in any other respect impair the public health, safety, comfort, morals or welfare of the inhabitants of the City. Section 15.04E(2)(e).

61. The ZBA is required to hold an open hearing on the variance and make all decisions based on a finding of fact. Section 15.05 A9(2).

62. In Plaintiff's application for variance as well as within the oral arguments at the open hearing Plaintiff placed substantial fact based and testimonial evidence as to why it was entitled to the variance requested, and also as to why the Zoning Ordinance on its face discriminated against Plaintiff and other religious institutions and assemblies including the following arguments:

    a. This specific property was already fully developed in a manner that made substantial compliance with the zoning regulations, and further that the nature or the Zoning Ordinance language which makes places of worship permitted only in business or commercial districts, with the nature of the development in the city of Troy would make substantial compliance with the ordinance difficult, or impractical for Plaintiff and all places of worship within the city of Troy generally without receiving some sort of variance. This assertion was accepted by the ZBA and acknowledge in its statements that there was probably no place left in the city of Troy that would be acceptable for a place of worship.

    b. The problems with compliance with Zoning Ordinance that Plaintiff faced were created by the unfair restrictions on places of worship that were not present for commercial business, were further compounded by the previous two businesses that developed the property and utilized it in compliance with the commercial zoning rules, are not personal to the Plaintiff, and were not created by Plaintiff of the previous owner.

    c.   Furthermore, Plaintiff argued and showed that the use of the current property would not in any manner harm or alter the nature of the community or its current characteristics since the use type that is currently approved is the same use type that would be utilized by a place of worship (A-3 large assembly) it is in a commercial district which is set up for heavier traffic flows, and the traffic coming from the place of worship is already anticipated in the approval of the commercial district, the size of the building and the fact that it is already approved for a use that is the same as the one requested by Plaintiff, and further that the Plaintiff was not asking to utilize the property in an manner that differed from how it was already being used, the same space, the same building and the same parking.

63. Yet, Plaintiff's application for variance was denied without a single finding of fact on any single criteria set forth in the Zoning Ordinance as listed above. Rather, reasons given in the denial were arbitrary and capricious and personal in nature to the individual ZBA members who were voting.

64. Furthermore, at the hearing several irregularities took place as the ZBA was deliberating openly prior to taking a vote on the variance and deciding on the application.

65. For instance, the ZBA President spoke first and at length prior to allowing any other member of the board to make comment or ask questions. Of the three variance applications that were heard that night, Plaintiff's application hearing is the only one which he acted in this manner. Upon information and belief, his soliloquy was intended to signal to the other members of the ZBA which way they should vote. Evidence of his bias against the variance and against the mosque are:

a. He spoke at length about all of the churches in the city of Troy, and how his church was old and large. He further spoke at length about how his church had just recently purchased what might have been the last available good piece of land in the city of Troy for a place of worship and built a large church on that land.

b. He repeatedly stated that Plaintiffs were asking him to "break the law" which echoed the language of community members who came to speak against the variance who were both not from an area of the city which would have been affected had the variance been granted and spoke about issues of parking for a mosque that was located in a different city and a different county. Furthermore, stating that the Plaintiff was asking him to break the law negatively mischaracterizes the variance process which in fact is a remedy within the scope of the law.

c. Stated that he never granted a variance request unless everybody in the community was unanimously in favor of the variance being granted. This is not a standard either express or implied within the scope or context of the variance laws, and upon information and belief this is not a standard that has ever been stated or applied by this ZBA when evaluating applications for variances.

d. Stated unequivocally that there was probably no place left in Troy for a place of worship to be developed.

66. At the hearing Plaintiff stated that federal Religious Land Use and Institutionalized Persons Act required relaxing of some of the zoning requirements in favor of permitting religious places of worship to be present within the city. However, ZBA board members were instructed by the city attorney to ignore this law when making their evaluation of Plaintiff's application.

67. In the end, the ZBA unanimously denied Plaintiff's request for a variance, however, in complete violation of the zoning ordinance and requirements for the hearing and due process, they stated no actual findings that the Plaintiff's application failed based on any of the five (5) criterion set forth for consideration of variances and made no finding of fact as required by the Zoning Ordinance. Furthermore, the ZBA asserted no compelling governmental interest in denying the variance.

68. It is clear from the express language of the Zoning Ordinance as adopted in 2017, there is a preference in General Business "GB" zoning for commercial business, and that the Zoning Ordinance intentionally places unconstitutional and illegal barriers against the development of places of worship, since the ordinance puts far less restrictions on requirements for commercial buildings than it does for places of worship. By way of example as to the preferential treatment of commercial businesses:

   a. Commercial businesses have a less restrictive setback requirement on ***all*** sides of the property including those that abut residential properties. Whereas, places of worship require a fifty (50) foot setback on all sides.

   b. Commercial businesses zoning allows parking in all of the areas of required setback up to and including the property line on all sides, including to the property line of residential properties. Religious places of worship do not allow any parking in any area of the fifty (50) foot setback requirement that abuts a residential zone.

   c. Commercial businesses are not required to have any greenspace in any of the setback requirements except those which are within the ten (10) foot setback requirement of the public sidewalk. However, places of worship are required to maintain the setback area as open landscaped areas.

16

69. There is no rational basis, nor compelling government interest, in allowing commercial businesses utilized as places of assembly to have less restrictive zoning requirements than religious places of worship.

70. For the purposes of RLUIPA, the Defendants' denial of the proposed variance to Adam constitutes a "land use regulation[s]." 42 U.S.C. § 2000cc-5(5).

71. The Defendants' denial of Adam's ZBA application violates §2(a)(1) of RLUIPA. 42 U.S.C. §2000cc(a)(1).

   a. The denial of the proposed use represents an imposition or implementation of a land use regulation in a manner that imposes a substantial burden on the religious exercise of Adam, its community members and their families. The denial prevents Adam from using its land, in any manner, for religious exercise.

   b. The substantial burden created by the denial of the proposed variance does not further a compelling government interest, or even if it does, it is not the least restrictive means of furthering that compelling government interest.

   c. The substantial burdens imposed on Adam include, but are not limited to, preventing the community members who are residents in the city of Troy from having a place to hold religious prayers and gatherings. Furthermore Adam, its community members and families are prevented from having a location within their own city and community that provides religious instruction and exercise in the Islamic faith tradition.

   d. The substantial burden created by the denial of the proposed use affects, or the removal of that substantial burden would affect, commerce within the meaning of Section 2(a)(2) of RLUIPA.

e.   The Defendants' denial of Adam's proposed use constituted the imposition or implementation of land use regulations whereby Defendants made, or had in place, formal or informal procedures or practices of, individualized assessments regarding Adam's application within the meaning of Section 2(a)(2) of RLUIPA.

72. The Defendants' denial of Adam's petition constitutes the imposition or implementation of land use regulation that discriminated and continues to discriminate against Adam on the basis of religion or religious denomination in violation of Section 2(b)(2) of RLUIPA. 42 U.S.C. §2000cc(b)(2).

73. The Defendants' application and adoption of the Zoning Ordinance, and denial of Plaintiff's proposed use, constitutes an imposition or implementation of a land use regulation in a manner that treats a religious assembly or institution on less than equal terms than a nonreligious assembly or institution in violation of Section 2(b)(1) of RLUIPA. 42 U.S.C. §2000cc(b)(1).

74. The Defendant's application and adoption of the Zoning Ordinance, and denial of Plaintiff's proposed use, constitutes an imposition or implementation of a land use regulation that unreasonably limits religious assemblies, institutions, or structures within a jurisdiction in violation of Section (2)(b)(3)(B) of RLUIPA. 42 U.S.C. §2000cc(b)(3)(B).

75. The proposed use is a use of right within the express language of the zoning ordinance.

76. The proposed use is compatible with the previous use and characteristics of the zoning district and community where it is located.

77. The proposed use would not alter, in any manner, the way in which the subject property is already permitted for use, and therefore the change in use would not alter the characteristics of the community where it is located.

78. Defendants are not authorized under the Michigan Zoning Enabling Act to deny Plaintiffs' application for a variance, if the application comports with the standards set forth within the zoning regulations.

79. The actions of the Defendants exceed the Michigan Zoning Enabling Act and are invalid.

80. Adam has a legitimate claim of entitlement to have its variance application approved because the proposed use is compatible and is a use of right within the express terms of the zoning ordinance, conforms to the intent and to all requirements as set forth in the variance standards of the Zoning Ordinance, and because Defendants are not authorized under the Michigan Zoning Enabling Act to deny Plaintiff's petition because Plaintiff meets the standards articulated in the Zoning Ordinance.

**Count I**
**Violation of Religious Land Use and Institutionalized Persons Act**
**(Religious Exercise)**
**(as to official capacity Defendants only)**

81. Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

82. Defendants have deprived, are aware that they have deprived, and continue to deprive the Plaintiff of its right to the free exercise of religion by the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc(a) et seq., by imposing and implementing a land use regulation that substantially burdens Plaintiff's religious exercise.

83. Defendants have arbitrarily and unjustly applied the Zoning Ordinance to prohibit Plaintiff from establishing an Islamic Mosque to carry out religious prayer services, religious ceremonies and education to its members.

84. Without a physical location at which to gather for religious congregation, prayer and education, the Plaintiff's ability to administer to the religious and spiritual requirements

and needs of its community members has been unduly limited and burdened and outright thwarted. The ability to provide for the religious and spiritual needs to its members is fundamental to Adam's mission. The limitations imposed on Adam by Defendants have substantially burdened the religious exercise of Adam and its members.

85. By the imposition and implementation of a land use regulation that imposes a substantial burden on Adam's exercise of Islam within the city of Troy, Defendants made an individualized assessment of the proposed use and variance for the property that is the subject of this complaint.

86. Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

87. Plaintiff is entitled to a declaration that denial of the application for variance is a substantial burden to the free exercise of Plaintiff's religion, is not justified by a compelling government interest, and is in violation of RLUIPA.

88. Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Plaintiff's use of the entirety of the subject property for religious uses and requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

89. Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorney fees, plus other equitable relief the Court deems just and equitable.

**Count II**
**Violation of Religious Land Use and Institutionalized Persons Act**
**(Discrimination on the Basis of Religion)**
**(as to official capacity Defendants only)**

90. Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

91. The Zoning Ordinance, as applied to Adam, treats this religious organization and institution on less than equal terms with other religious and non-religious assemblies and institutions in the city of Troy.

92. Defendants' conduct was prompted or substantially caused by Plaintiff's religious exercise in attempting to establish an Islamic place of worship on the subject property and was clearly influenced by sectarian opposition to the presence of an Islamic religious institution in the city of Troy.

93. Defendants have deprived, are aware that they deprived, and continue to deprive Plaintiff of its right to be free from religious discrimination as secured by RLUIPA, by implementing a land use regulation that discriminates on the basis of religion.

94. Defendants have imposed onerous requirements on Adam that have not been imposed on any other applicant similarly situated in all material respects, religious or secular, within the city of Troy.

95. Upon information and belief the city of Troy ZBA has never required that an application for variance be met with 100% approval from all community members before it was

21

granted, thereby treating Adam different than other applicants similarly situated in all material respects, religious or secular.

96. Plaintiff is entitled to a declaration that the denial of the application is discrimination on the basis of Plaintiff's religion and not justified by a compelling government interest and is in violation of RLUIPA.

97. Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Adam's use of the entire property for religious uses, and requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

98. Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all su ch other relief this Court deems just and proper including costs and attorney's fees in this action.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorney fees, plus other equitable and relief this Court deems just and equitable.

### Count III
### Violation of Religious Land Use and Institutionalized Persons Act
### (Equal Terms)
### (as to official capacity Defendants only)

99. Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

100.        Defendants have deprived, are aware that they have deprived, and continue to deprive Plaintiff of its free exercise of religion as secured by RLUIPA, by imposing and

implementing a land use regulation that treats a religious assembly or institution on less than equal terms with a nonreligious institution or assembly.

101.    The Zoning Ordinance places far less restrictions and requirements on nonreligious assemblies or institutions than it places on religious assemblies or institutions. More Specifically:

a.   Nonreligious assemblies require only a ten (10) foot setback from the portion of the building that faces the major road, but religious assemblies require a fifty (50) foot setback;

b.   Nonreligious assemblies require only a thirty (30) foot setback from the portion of the building to the property line that abuts a residential district, whereas religious assembly requires a fifty (50) foot setback from the residential district.

c.   Nonreligious assemblies have no setback requirement for property lines that abut other commercial properties, whereas religious assemblies require a fifty (50) foot setback from other commercial properties.

d.   Nonreligious assemblies allow parking in all of the areas of setback, including those that abut residential districts, however religious assemblies do not allow parking in any areas of setback that abut residential districts.

e.   Nonreligious assemblies are not required to keep landscaping and open spaces in any of the setbacks other than those that are required on the ten (10) foot setback at the front of the building that abuts the commercial road, however, religious assemblies require landscaping and open spaces in all four of the fifty (50) foot setbacks.

102.     There is no compelling government interest in having relaxed requirements for nonreligious assemblies and institutions while imposing and implementing harsh and very restrictive zoning requirements on religious assemblies and institutions.

103.     Even if there was a compelling government interest, the zoning ordinance as written and as applied is not the least restrictive means of furthering that governmental interest.

104.     Plaintiff is entitled to a declaration that the Zoning Ordinance as written, and as applied as to Plaintiff, unconstitutionally discriminates against Plaintiff based on religion.

105.     Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Adam's use of the entire property for religious uses and requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

106.     Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant declaratory and injunctive relief, compensatory and punitive damages against Defendants, costs and attorney fees, plus other equitable relief this Court deems just and equitable.

### Count IV
### Violation of Religious Land Use and Institutionalized Persons Act
#### (Limitations and Exclusions)
#### (as to official capacity Defendants only)

107.     Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

108.     Defendants have deprived, are aware that they have deprived, and continue to deprive Plaintiff of its free exercise of religion as secured by RLUIPA, by imposing and

implementing a land use regulation that unreasonably limits religious assemblies, institutions and structures within the city of Troy.

109.     Religious institutions are a use as of right within the General Business "GB" zoning district where the subject property is located, and Plaintiff satisfied all of the standards set forth within Section 15.05 and 15.06 of the zoning regulations.  By refusing to allow Plaintiff to use its property as requested, Defendants have limited the ability of Adam to practice its religion in the city of Troy in accordance with Islamic beliefs.

110.     Defendants had no constitutionally reasonable basis for their refusal to approve Adam's application as submitted.

111.     The imposition of a land use regulation that unreasonably limits religious assemblies within the city of Troy constitutes an arbitrary and capricious act with no rational basis.

112.     Plaintiff is entitled to a declaration that denial of the application, as submitted, unconstitutionally limits and excludes Plaintiff's free exercise of religion.

113.     Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Plaintiff's use of the entire property for religious uses and requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

114.     Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorneys' fees, plus other equitable relief this Court deems just and equitable.

**Count V**
**Violation of First and Fourteenth Amendment to**
**the United States Constitution**
**(Free Exercise of Religion – 42  U.S.C. §1983)**

115.    Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

116.    Defendants have deprived, are aware that they have deprived, and continue to deprive Adam of its right to free exercise of religion as secured by the First Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the United States Constitution, by discriminating against Plaintiff because of its religious character and by substantially burdening its right to freely exercise its religious faith. Adam cannot fully and properly use its property for religious exercise if it is forced to adhere to zoning regulation restrictions that are not imposed on commercial buildings and nonreligious assemblies.

117.    Without a single Islamic place of worship within the City of Troy, Adam, and its community members' ability practice their religion is seriously limited.

118.    By the imposition and implementation of a land use regulation that imposes a substantial burden on Adam's exercise of Islam within the city of Troy, Defendants made an individualized assessment of the proposed uses for the property involved.

119.     Imposition of such burdens is not in the furtherance of a compelling government interest, and as recognized by the city of Troy, is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

120.     Plaintiff is entitled to a declaration that denial of the application as submitted, and the zoning regulations as written and as applied, violate Adam's First and Fourteenth Amendment rights to its free exercise of religion.

121.     Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Plaintiff's use of the subject property for religious uses and requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

122.     Defendant's unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorney fees, plus other equitable relief he court deems just and equitable.

### Count VI
### Violation of First and Fourteenth Amendment to United States Constitution
### (Establishment Clause – 42 U.S.C. §1983)

123.     Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

124.     Defendants' unique application of the Zoning Ordinance to Adam treats this religious organization and institution less than on equal terms with other religious and non-

religious assemblies and institutions in the city of Troy, thereby creating a denominational preference against Islam as a religion.

125.     Defendants' conduct was promoted or substantially caused by Plaintiff's religious exercise in attempting to establish an Islamic place of worship and was clearly influenced by the level of opposition to the application based on sectarian opposition to the presence of a Mosque in the city of Troy.

126.     Defendants have deprived, are aware they deprived, and continue to deprive Plaintiff of its right to be free from religious discrimination in violation of the Establishment Clause to the First Amendment to the United States Constitution by imposing and implementing a land use regulation in a manner whose purpose and effect is to discriminate on the basis of religion.

127.     Plaintiff is entitled to a declaration that denial of the application as submitted, and the zoning ordinance as written and as applied to Plaintiff, are a violation of the Establishment Clause to the First Amendment and the Fourteenth Amendment to the Constitution of the United States.

128.     Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Plaintiff's use of the entire subject property for religious uses, and requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

129.     Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorneys' fees, plus other equitable relief this Court deems just and equitable.

**Count VII**
**Violation of the First and Fourteenth Amendment to**
**The United States Constitution**
**(Freedom of Speech – 42 U. S. C. §1983)**

130.     Plaintiff hereby realleges and incorporates by reference all previously pled paragraph as if fully laid forth herein.

131.     Defendants have deprived, are aware they deprived, and continue to deprive Plaintiff of its right to speak on matters of religion as secured by the First Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the United States Constitution, by discriminating against Plaintiff based on the religious nature of its expression and by inhibiting its right to freely and fully express its religious faith to Adam students and the community.

132.     Defendants' imposition of more stringent requirements than those imposed by the Zoning Ordinance prevents Adam from using its property for religious practices and education.

133.     Plaintiff is entitled to a declaration that denial of the application, and the Zoning Ordinance as written and as applied to Plaintiff, a violation of its First Amendment right to free speech.

134.     Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Plaintiff's use of the entire subject property for religious

uses, and requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

135.     Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in action.

WHEREFORE, Plaintiff requests this Honorable Court to grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorney fees, plus other equitable relief this Court deems just and equitable.

### Count VIII
### <u>Violation of First and Fourteenth Amendment to the</u>
### <u>United States Constitution</u>
### (Freedom of Assembly – 42 U.S.C. §1983)

136.     Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

137.     Defendants have deprived, are aware they have deprived, and continue to deprive Plaintiff of its right to freely assemble for religious purposes as secured by the First Amendment to the United States Constitution by Prohibiting Adam community members from assembling in a religious place of worship for the purpose of religious congregation, prayer, services and education.

138.     Defendants' imposition of more stringent requirements than those imposed by the Zoning Ordinance prevents Adam from using its property for religious assembly.

139.     Plaintiff is entitled to a declaration that denial of its application as submitted and the Zoning Ordinance as written as applied to Plaintiff are a violation of its First Amendment right to freedom of assembly.

140.     Plaintiff is entitled to a permanent injunction enjoining Defendants from enforcing an limitation upon Plaintiff's use of the entire subject property for religious uses, and requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

141.     Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiffs request this Honorable Court to grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorneys' fees, plus any other equitable relief this Court deems just and equitable.

**Count IX**
**Violation of the Fourteenth Amendment to the**
**United States Constitution**
**(Equal Protection – 42 U.S.C. § 1983)**

142.     Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

143.     Defendants have deprived, are aware they have deprived, and continue to deprive Plaintiff of its right to equal protection of the laws as secured by the Fourteenth Amendment to the United States Constitution by unlawfully discriminating against Adam by denying its petition on the basis of religious status and on the basis of Plaintiff's exercise of its fundamental rights to freedom of religion, speech and assembly.

144.     Denial of the application is unconstitutional in that it imposes a substantial burden on the religious exercise of Plaintiff. Defendants have not demonstrated that imposition of

that burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that compelling governmental interest.

145.     Plaintiff is entitled to a declaration that denial of the application as submitted, and the Zoning Ordinance as written and as applied to Plaintiff is a violation of Plaintiff's Fourteenth Amendment right to equal protection of the laws.

146.     Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Plaintiff's use of the entire subject property for religious uses and requiring Defendant's to take whatever actions necessary to permit Plaintiff to undertake such use.

147.     Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all other such relief this Court deems just and proper including attorneys' fees in this action.

WHEREFORE, Plaintiff respectfully requests this Honorable Court, grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorneys' fees, plus other equitable relief this Court deems just and equitable.

**Count X**
**Violation of the Fifth Amendment to the**
**United States Constitution**
**(Substantive Due Process- 42 U.S.C. §1983)**

148.     Plaintiff realleges and incorporates by reference all previously pled paragraphs as if fully set forth herein.

149.     Plaintiff has a constitutionally protected right to utilize its property free from the irrational, arbitrary, and capricious applications of zoning regulations.

150.     By applying the zoning regulations to Plaintiff in a discriminatory manner, Defendants have subjected Plaintiff to irrational, arbitrary, and capricious application of zoning regulations.

151.     By failing to make findings on the criterion set forth in the Zoning Ordinance, and by applying demonstrably fictitious standards to the Plaintiff's application, Defendants have subjected Plaintiff to the irrational, arbitrary, and capricious application for zoning regulations.

152.     Defendants' decision to deny Plaintiff's application for variance has no relation to any legitimate government interest.

153.     Defendants' have deprived, are aware they have deprived, and continue to deprive Plaintiff of its right to use its property without due process of law as secured by 42 U.S.C. §1983, by implementing a land use regulation in a manner that discriminates on the basis of religion.

154.     Plaintiff is entitled to a declaration that the denial of the application as submitted and the failure to provide a basis for its decision is a violation of the Fifth Amendment to the United States Constitution

155.     Plaintiff is entitled to issuance of a permanent injunction enjoining Defendants from enforcing any limitation upon Plaintiffs' use of the entire subject property for religious uses, and for requiring Defendants to take whatever actions necessary to permit Plaintiff to undertake such use.

156.     Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorney's fees in this action.

WHEREFORE, Plaintiff request this Honorable Court to grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorneys' fees, plus other equitable relief this Court deems just and equitable.

**Count XI**
**<u>State Law Claims</u>**

157.     Plaintiff hereby realleges and incorporates by reference all previously pled paragraphs as if full set forth herein.

158.     Plaintiff is entitled to a declaration that the denial of the proposed use for the subject property imposed on Adam by the city of Troy are unreasonable and void and bear no substantial relation to the public health, safety, or general welfare.

159.     Plaintiff is entitled to a declaration that the Defendants had no objective factual basis to support the denial of the proposed variance for the subject property imposed on Adam by the city of Troy; and, as such, Defendants have violated Plaintiff's due process rights, which are protected by the Michigan Constitution Article I § 17.

160.     Plaintiff is entitled to a declaration that the limitations imposed on Adam by the city of Troy discriminate between Adam and other similarly situated individuals and institutions in violation of Plaintiff's right to equal protection under the Michigan Constitution Article I §2.

161.     Plaintiff is entitled to a declaration that the denial of the proposed use for the subject property imposed on Adam by the city of Troy interfere with Plaintiff's right to exercise its religion in accordance with the Plaintiff's freedom of worship and religious belief as secured by the Michigan Constitution Article I §4.

162.     Plaintiff is entitled to a declaration that the denial of the proposed use for the subject property imposed on Adam by the city of Troy interfere with Plaintiff's right to freedom of speech as secured by the Michigan Constitution Article I §5.

163.     Plaintiff is entitled to a declaration that the denial of the proposed use for the subject property imposed on Adam by the city of Troy interfere with Plaintiff's right to assemble as secured by the Michigan Constitution Article I §3.

164.     Plaintiff is entitled to a declaration that the denial of the proposed use for the subject property imposed on Adam by the city of Toy interfere with and damage Plaintiff's property rights for public purpose without due process of law, as provided by the Michigan Constitution Article I §17.

165.     Defendants' unlawful actions caused Plaintiff harm and it is entitled to injunctive, declaratory, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant injunctive relief, compensatory and punitive damages against Defendants, costs and attorney fees, plus other equitable relief the court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a jury trial as to all claims so triable.

Respectfully Submitted,

Council on American-Islamic
Relations, Michigan Legal Fund

By: /s/ Amy V. Doukoure
Amy V. Doukoure (P80461)
Attorney for Plaintiff
30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247 Phone
(248) 559-2250 Fax
adoukoure@cair.com

Dated: November 6, 2018