**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ADAM COMMUNITY CENTER, a domestic
nonprofit corporation, a/k/a ADAM
COMMUNITY (ACC), a domestic nonprofit
corporation,

        Plaintiff,

v.

CITY OF TROY, a Michigan municipal
corporation, TROY CITY COUNCIL, CITY
OF TROY PLANNING COMMISSION,
CITY OF TROY ZONING BOARD OF
APPEALS, and DANIEL AGAUAS, GLEN
CLARK, THOMAS DESMOND, DAVID
EISENBACHER, ORESTIS KALTSOUNIS,
PADMA KUPA, DAVE LAMBERT, JAMES
MCCAULEY, individually and in their official
capacities as members of the TROY
ZONING BOARD OF APPEALS,

        Defendant.

_____/

Case No. 18-13481

Honorable Nancy G. Edmunds

**ORDER AND OPINION GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS**

        This action arises from the City of Troy Zoning Board of Appeals' denial of Plaintiff's application for a variance from local zoning regulations in order to utilize an existing commercial building as a mosque, gym, library, community center, and banquet hall. Plaintiff is suing the City of Troy, the Troy City Council, the City of Troy Planning Commission, and the City of Troy Zoning Board of Appeals along with the eight members of the zoning board of appeals in their official and individual capacities. In its complaint, Plaintiff asserts claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") as well as 42 U.S.C. § 1983 based on allegations that Defendants

placed a substantial burden on Plaintiff's free exercise of religion and violated Plaintiff's constitutional rights.[1]

Pending before the Court is Defendants' motion to dismiss. (ECF No. 5.) Defendants seek dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes the motion. On March 12, 2018, the Court held a hearing in connection with the motion. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## I.    Background

Plaintiff Adam Community Center is a religious non-profit organization based in the City of Troy, Michigan.[2]  Plaintiff describes its members as individuals and families who reside and work within the City. Plaintiff specifically caters to members of the Islamic faith and currently provides religious and nonreligious classes that are open to all community members in an office building located in the City. However, Plaintiff alleges that it is unable to hold religious worship and holiday services at its current facility, and that there are no Muslim places of worship within the City. As a result, Plaintiff's community members must travel to various places outside of the City to engage in prayer and worship services.

Plaintiff alleges that since 2013 it has unsuccessfully attempted to obtain or construct a mosque or Muslim place of worship within the City. In one of these

---

[1] Plaintiff also asserts state law claims for violations of the Michigan Constitution. The Court declined to exercise supplemental jurisdiction over these claims and previously entered an order dismissing Plaintiff's state law claims. (*See* ECF No. 4.)

[2] The following background facts are taken from Plaintiff's complaint, which for the purposes of Defendants' motion, the Court must accept as true.

unsuccessful instances, Plaintiff describes being in the process of having a building approved as a community center with a small prayer space inside when a local resident complained to the City about the proposed use of the structure as a mosque. Plaintiff contends that the City delayed approval of its variance application for the property at issue, and ultimately, the property was sold to a different investor. In another instance, Plaintiff alleges that it attempted to purchase an existing church to use as a mosque. Plaintiff claims that after residents of the City found out about the purchase, they assembled a group of Christian investors to purchase the building at a price higher than what Plaintiff could afford.

Plaintiff alleges that the City and its officials have repeatedly shown animus or disdain towards Muslims throughout Plaintiff's efforts to obtain a mosque in the City. There are currently 73 approved places of worship within the City, which include Christian churches and Hindu temples. According to Plaintiff, none of the approved places of worship are a mosque or other Muslim religious institution.[3]

Plaintiff claims that in 2017 it presented several different potential properties to the City and sought advice as to which ones could be developed most easily as a place of worship. Plaintiff alleges that the City's planning department did not want to assist in reviewing the properties. Plaintiff further alleges that Paul Evans, a city employee, told Plaintiff it should probably look to neighboring cities such as Rochester, Michigan to find a suitable property for a mosque. According to Plaintiff, this is not the first time City officials indicated it would be better for Plaintiff to look elsewhere for a site to construct a

---

[3] In their briefing, Defendants dispute this factual allegation and contend that Plaintiff's facility is in fact a mosque because it is identified on Google as being a mosque. However, the City's website contains a list of all places of worship within the City and Plaintiff is not identified on this list.

mosque. Plaintiff states that since 2013, City officials have on several occasions indicated that there are no places left in the City to construct a mosque, while simultaneously approving the construction of several new Christian churches.

This lawsuit arises out of the City's most recent denial of a variance application submitted by Plaintiff. Plaintiff alleges that in an effort to provide for the religious needs of its members, and all of the Muslims in the City, it decided to purchase an existing commercial property which is the subject of this lawsuit. Plaintiff proposes to use this commercial building as a religious place of worship as well as a community center with a library, gymnasium, and a banquet hall. Plaintiff asserts that it needs to have a building that provides all of the foregoing amenities because there are only a few days of the week during which actual worship will take place.

The property purchased[4] by Plaintiff to be utilized as a Mosque and community center is located at 3635 Rochester Road, Troy MI 48085.[5] The property is flanked on two sides by other commercial properties, is fronted on one side by a major road, and the rear of the property abuts a line of residential properties. The property is fully developed as a commercial building, half of which is currently being used as a restaurant and banquet hall while the other half remains as an empty warehouse. Plaintiff alleges that prior to being utilized as a restaurant and warehouse, the subject property was utilized as a large-scale retail establishment known as DSW Shoe Warehouse.

---

[4] In their motion, Defendants challenge Plaintiff's allegations concerning its ownership of the property. Defendants argue that Plaintiff has not demonstrated that it purchased the property and is the current owner.

[5] In the complaint, Plaintiff states the address for the property is 3565 Rochester Road, Troy, MI 48085. However, this appears to be a typographical error as the exhibits submitted in connection with Defendants' motion reflect the true address for the property to be 3635 Rochester Road, Troy MI 48085.

The property is located within the general business district and is zoned for use as a general commercial building. According to the City's zoning regulations, places of worship are a use that is permitted as a matter of right within an area zoned for general business. Plaintiff alleges that the building is also permitted for A-3 type use, which Plaintiff claims allows the building to be used for large gatherings or assembly.

The property has 126 parking spaces—one more than is required by the commercial zoning regulations for use of the property as a restaurant. The parking lot and usable parking spaces currently reach the property lines on three sides of the property. The fourth property line abuts the City sidewalk and ingress to the parking lot. Plaintiff alleges that there is presently no setback for the parking spaces even though the zoning regulations require a 30 foot setback. The parking spaces thus run the entire length of the property line that abuts the residential district. The only buffer between the commercial property and the residential district is a six-foot brick wall. Plaintiff alleges that most commercial properties and all now existing places of worship along Rochester Road have parking up to the property line that abuts residential districts.

Although places of worship are permitted as a right within general business districts, in 2017, the City implemented special additional zoning regulations that apply to the use of a commercial building as a place of worship. Zoning ordinance Section 6.21(E) requires that all sides of a building utilized as a place of worship have a minimum of a fifty foot setback. Section 6.21(F) goes on to forbid parking in the setback areas fronting areas zoned for residential purposes and requires that any such setback area be landscaped. With respect to the property at issue in this lawsuit, Plaintiff claims that it is impossible to comply with the zoning ordinances for religious places of worship because: (1) there is

only a ten foot setback in the front of the building that abuts the commercial road; (2) there is only a forty eight foot setback in the back of the building that is closest to the residential property; (3) there is no setback on the north side of the building that abuts another commercial property because that is not required for commercial buildings; and (4) compliance with the limitations on parking within the setback requirement for the rear and side yards of the existing building would eliminate nearly all of the necessary parking spaces that are required under the zoning ordinance for a place of worship that size.

Because Plaintiff allegedly could not comply with the City's zoning regulations, Plaintiff applied for a variance. After receiving initial approval of its variance application by City employee Paul Evans, Plaintiff submitted its application for approval to the City of Troy Zoning Board of Appeals (the "ZBA"). The application included the signature of the prior owner of the commercial property in question, which Plaintiff claims was required by the City. In its application, Plaintiff did not seek a variance in order to modify the existing footprint or characteristics of the property. Instead, Plaintiff's application sought a variance from the setback regulations specifically applicable to places of worship.

On June 19, 2018, the ZBA held a public hearing on Plaintiff's variance application. Several community members as well as Plaintiff's counsel spoke at the hearing. Ultimately, the ZBA unanimously denied Plaintiff's application. Plaintiff alleges that a number of irregularities occurred at the hearing. Plaintiff claims that the president of the ZBA displayed bias and animus against the mosque during his remarks about Plaintiff's application. Plaintiff claims that the president's comments were directed to the other board members in order to coerce them to deny Plaintiff's application. Plaintiff also claims that a city attorney instructed the ZBA members to ignore RLUIPA's alleged requirement

to relax zoning regulations in favor of permitting religious places of worship within the City. And Plaintiff contends that it was improper for the ZBA to not issue findings of fact or identify a compelling government interest as the reason for its denial of Plaintiff's application.

Following the ZBA's denial of Plaintiff's variance application, on November 8, 2018, Plaintiff initiated this lawsuit. In its complaint, Plaintiff asserts that the denial of the proposed variance violates RLUIPA by placing a substantial burden on Plaintiff's ability to freely exercise its religion. In addition, Plaintiff challenges the City's enhanced zoning regulations for places of worship as unconstitutional. Plaintiff states that the City's zoning ordinance, adopted in 2017, reflects a preference for commercial businesses over religious institutions. Plaintiff states that the zoning ordinance intentionally places unconstitutional and illegal barriers against the development of places of worship since the ordinance puts far fewer restrictions on commercial buildings compared to places of worship.

Plaintiff alleges that it has suffered a number of hardships as a result of allegedly not being able to not construct a mosque within the City. For example, Plaintiff states that it has been unable to hire a full time religious leader, hold regular congregational prayers, or provide for the religious, educational, and spiritual needs of its members and the Muslim community in general in the City. Plaintiff claims that by not having a Muslim place of worship within the City, members of Plaintiff's community, as well as other Muslims who live and work within the City, have had their ability to practice their religion substantially burdened because there is not a single place in the City for Muslims to attend

the required religious congregational prayers or where they can turn for religious education or guidance.

Defendants move to dismiss Plaintiffs' claims on several grounds and challenge Plaintiff's assertion of a constitutional or RLUIPA violation.  Specifically, Defendants argue that: (1) the Troy City Council, the Troy Planning Commission, the Troy Zoning Board of Appeals (collectively, the " Entity Defendants") and the individual Troy ZBA members (collectively the "Individual Defendants") should be dismissed because they are not separate legal entities from the City of Troy, lack capacity to be sued, and/or have immunity from suit; (2) each of Plaintiff's claims arising out of allegedly discriminatory conduct prior to November 2014 is barred by the statute of limitations and Plaintiff failed to exhaust its administrative remedies by not appealing the ZBA's decision to the state circuit court; (3) Plaintiff failed to establish its substantial burden claim under RLUIPA; (4) Plaintiff failed to establish its discrimination or unequal treatment claim under RLUIPA; (5) Plaintiff lacks standing because it is not the true owner of the property; (6) the Individual Defendants are entitled to qualified immunity; and (7) Plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction.

In moving to dismiss under Rule 12(b)(6) and alternatively for summary judgment under Rule 56, Defendants do not specify which standard of review should apply to each of its arguments for dismissal.  Notwithstanding, Plaintiff responds that it has stated viable claims for relief against each of the Defendants, and that issues of fact preclude summary judgment at this early stage of the litigation.  Each of Defendants' arguments for dismissal is addressed below.

## II.    Standards of Review

## A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir.2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557 (brackets omitted).

*Id.* at 678. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show

entitlement to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id.* at 527.

## B. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

III.    Analysis

A. Entity Defendants' capacity to be sued

Defendants argue the Entity Defendants[6] should be dismissed from this suit because they are not legal entities capable of being sued.  In support of this position, Defendants state that the Entity Defendants lack capacity to be sued because they were not authorized to be sued as purportedly required by MCL 600.2051(4).  Defendants also point to the City of Troy charter which does not expressly grant the Entity Defendants the power to sue or be sued.

> MCL 600.2051(4) provides as follows:
>
> Actions to which this state or any governmental unit, including but not limited to a public, municipal, quasi-municipal, or governmental corporation, unincorporated board, public body, or political subdivision is a party may be brought by or against such party in its own name, or in the official capacity of an officer authorized to sue or be sued in its behalf, except that an officer of the state or any such unit shall be sued in his official capacity for the purpose of enforcing the performance by him of an official duty. Whenever any officer sues or is sued in his official capacity, he may be described as a party by his official title and not by name, subject to the discretion of the court, upon its own motion or that of any party, to require his name to be added.

Mich. Comp. Laws Ann. § 600.2051.  Without citing to any authority, Defendants contend that the phrase "authorized to sue or be sued in its behalf" as used in MCL 600.2051(4) applies to both the list of governmental entities and the individual officers who may sue or be sued in their official capacity.  Defendants contend that because the City of Troy's charter does not expressly authorize the Entity Defendants to be sued, they lack capacity to be sued in this lawsuit.  But Defendants' position is not supported by the plain language of the statute.  The statute authorizes suits against entities such as boards, public bodies,

---

[6] The Entity Defendants, as previously defined, are the Troy City Council, the Troy Planning Commission, and the Troy Zoning Board of Appeals, collectively.

and political subdivisions like the Entity Defendants in this case.  The phrase "authorized to sue or be sued in its behalf" plainly applies only to officers in their official capacities.

Defendants also argue that the Entity Defendants should be dismissed because the City is the real party in interest.  Defendants direct the Court to *Franklin Historic District Study Committee v. Franklin*, 241 Mich. App. 184 (2000) and *Moomey v. City of Holland*, 490 F. Supp. 188, 190 (W.D. Mich. 1980) to advance this position.  Neither of these cases supports Defendants' argument.

*In Franklin Historic Dist. Study Comm. v. Vill. of Franklin*, 241 Mich. App. 184, 614 N.W.2d 703 (2000), the Franklin Historic District Study Committee brought suit against the Village of Franklin alleging that the Village's removal of open space property from the historic district was invalid under the Local Historic Act.  The court found that the Franklin Historical District Study Committee was not a separate entity from the Village of Franklin itself and, thus, could not maintain lawsuit against the Village. *Id.*  The court's holding does not address the capacity of a subdivision of local government to be sued by a private citizen for constitutional violations. *See id.*  Rather, the court's analysis is limited to a situation where a political subdivision is suing the legislative body that by law maintains control over that political subdivision. *See id.*

*Moomey* involved a § 1983 negligence action brought against the City of Holland, the Holland Police Department, and the chief of police, after a prisoner hanged himself with his belt while in custody at a city jail. 490 F. Supp. at 190.  The court begins its analysis on the defendants' motion to dismiss by stating that the City of Holland was the real party in interest because the police department is a creature of the city. *Id.*  In support of this statement, the court cites to Mich. Comp. Laws § 92.1 which authorizes local

governments to establish a police force. *Id.* The court, however, did not expressly dismiss the police department from the lawsuit on account of Mich. Comp. Laws § 92.1 or hold that governmental units can never be parties to a § 1983 action, much less to suits involving claims asserted under RLUIPA.[7] *See id.* The purpose of the court acknowledging the relationship between the police department and city appears to be to introduce the proper standard for governmental liability under § 1983. *See id.* In other words, as the court explained, because the police department was a creature of the city, the standards for liability of governmental entities under § 1983 as propounded by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) applied. *Id.* This meant that in order for the defendants to be liable under § 1983 the allegedly unconstitutional action must implement or execute a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers, or be taken pursuant to governmental custom, even if not formally approved. *Id.* Adhering to this standard, the court dismissed the plaintiff's negligence claims finding the allegations

---

[7] Relying on *Moomey*, the Sixth Circuit has held that "[a] suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 992 n. 1 (6th Cir.1994) (citing *Moomey v. City of Holland*, 490 F. Supp. 188, 190 (W.D. Mich. 1980). *Haverstick* involved a suit against the City of Romulus and its police department for federal constitutional violations under § 1983. The court noted that under Michigan law, a municipal police department is a creature of the municipality, and that the police department cannot be sued independently. The *Haverstick* court therefore dismissed the plaintiffs' claims against the police department at the outset of its decision. Other courts have followed *Haverstick* and dismissed § 1983 claims against police departments finding that the City is the real part in interest. *See Boykin v. Van Buren Twp.,* 479 F.3d 444, 450 (6th Cir. 2007) ("Van Buren Township Police Department is subsumed within Van Buren Township as a municipal entity to be sued under § 1983, and thus the Police Department was improperly included as a separate defendant in Boykin's suit."); *Laise v. City of Utica,* 970 F. Supp. 605, 608 (E.D. Mich. 1997) (noting that a city police department is merely an agency of the city, and therefore is not a proper defendant in a § 1983 lawsuit). However, these cases do not stand for the proposition that all municipal entities cannot be sued in federal court for violations of RLUIPA or the United States Constitution. Even if Defendants are correct that a police department is not a proper party to a § 1983 action, this does not mean a city council or zoning board cannot be a party to such claims.

insufficient to "constitute the essential element of action pursuant to an officially adopted policy, custom, or regulation" for purposes of municipal liability under § 1983. *Id.*

Neither *Franklin Historic District Study Committee* nor *Moomey* actually stands for the proposition that a political subdivision or municipal entity is not a proper party to a § 1983 action or RLUIPA claim. Indeed, in *Blue Water Fin. Co. v. City of Lansing*, No. 5:97-CV-200, 1998 WL 278187, at *3 (W.D. Mich. Mar. 10, 1998) the court rejected the very argument made by the Entity Defendants in this case. The court interpreted the language of MCL § 600.2051(4) and distinguished *Moomey* in holding that the Lansing City Council was subject to suit where the allegations arose from the denial of a rezoning petition which constituted an implementation of an ordinance. *Id.*

Defendants do not identify a single authority holding that a city council or municipal board cannot be sued for its allegedly unconstitutional conduct because the city or township is the real party in interest. Defendants similarly fail to identify a single authority for the proposition that a city council or municipal board cannot be sued for alleged RLUIPA violations. Such an argument stands in contrast to the litany of cases against municipal entities alleging constitutional violations or claims under RLUIPA. *See, e.g.*, *Shepherd Montessori Ctr. Milan v. Ann Arbor Charter Twp.*, 259 Mich. App. 315, 675 N.W.2d 271 (2003) (finding genuine issue of material fact existed as to RLUIPA claim against City of Ann Arbor and Ann Arbor Zoning Board of Appeal); *Muslim Cmty. Ass'n of Ann Arbor & Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 762 (E.D. Mich. 2013) (concluding that board of trustees and related entity defendants could be sued along with the city for violations of § 1983 where board was final decision maker with respect to accepting or denying the plaintiff's zoning application); *Paeth v. Worth Twp.*, 483

Fed.Appx. 956, 964 (6th Cir. 2012) (quoting *Monell*, 436 U.S. at 690) (concluding that the township zoning board's final decision to deny the plaintiff's a variance fell within *Monell*'s definition of a municipal policy as "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers."). Accordingly, the Court declines to release the Entity Defendants from Plaintiff's claims on the basis that the City is the real party in interest.

### B. Legislative immunity for City Council and City Planning Commission

Defendants argue that the City Council and the City Planning Commission are entitled to legislative immunity from Plaintiff's claims. Defendants rely on the Supreme Court's decision in *Bogan v. Scott–Harris,* 523 U.S. 44, 49 (1998) to support the application of legislative immunity here.

Legislators are entitled to absolute immunity for the actions they take in their legislative capacity. *Haskell v. Washington Twp.,* 864 F.2d 1266, 1277 (6th Cir.1988); *Bogan*, 523 U.S. at 49. In contrast, legislative officials performing traditionally executive or administrative discretionary functions are entitled to only qualified immunity if they can establish that their actions were within the scope of their duties and were taken with a reasonable belief as to their lawfulness. *See Harlow v. Fitzgerald,* 457 U.S. 800, 807 (1982). A defendant bears the burden of establishing the existence of immunity. *Canary v. Osborn,* 211 F.3d 324, 328 (6th Cir. 2000).

*In Bogan*, the Supreme Court held that local legislators, in addition to state and regional legislators, are absolutely immune from suit under § 1983 for their legislative activities. *Bogan,* 523 U.S. at 49. The Supreme Court's opinion addresses only the immunity of individual legislative officials and does not concern whether legislative immunity equally applies to legislative bodies. *See id.* However, the Sixth Circuit has held

that legislative immunity does not apply to legislative bodies. *See Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (explaining that counties and other local governments, while "persons" for the purposes of § 1983 liability in the sense that they can be sued, do not enjoy the defenses of absolute and qualified immunity that are available to human defendants sued in their individual capacities). Thus in *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606, 615 (W.D. Mich. 2009), the court concluded that the township defendant, as a municipal entity, did not enjoy the protection of legislative immunity that covered the individual board members.

Defendants fail to present any authority applying legislative immunity to municipal entities or legislative bodies. Under the facts and circumstances presented here, the Court finds that Defendants fail to satisfy their burden on this issue.

### C. Legislative Immunity for the Individual Defendants

Although it is not entirely clear from their briefing, Defendants also appear to contend that the individual ZBA members (collectively, the "Individual Defendants") are entitled to legislative immunity from Plaintiff's claims. This argument is without merit.

"Whether an act is legislative depends on the nature of the act, rather than the official's motive or intent." *Guindon v. Twp. of Dundee, Michigan*, 488 Fed.Appx. 27, 33 (6th Cir. 2012) (citing *Bogan*, 523 U.S. at 55). The first relevant consideration is whether the acts "were integral steps in the legislative process." *Id.* Next, a court must consider whether the acts were "legislative in substance," that is "whether they 'bore all the hallmarks of traditional legislation,' including 'a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.' " *Id.* (citing *Bogan,* 523 U.S. at 55-56). "[T]he various activities of most local

or municipal officials cannot be characterized as only administrative, legislative, or judicial. Instead, the scope of immunity depends on the nature of the activity involved." *Haskell*, 864 F.2d at 1277-78.

The Sixth Circuit has recognized that "zoning is ordinarily a legislative activity" but that "it is not always legislative for purposes of immunity." *Id.* at 1278 (citing *Cutting v. Muzzey*, 724 F.2d 259 (1st Cir.1984) (concluding that the "[m]embers of a municipal planning board were not entitled to absolute immunity when imposing conditions on a developer because of racial animus)). The court explained:

> If the underlying purpose of zoning activity is to establish general policy, then it is legislative.... If, however, "the action 'single[s] out specifiable individuals and affect[s] them differently from others,' it is administrative." *Cutting,* 724 F.2d at 261. *See Scott v. Greenville County,* 716 F.2d 1409, 1423 (4th Cir.1983) ("When local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity."). Moreover, absolute immunity does not extend to even traditionally legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests.

*Haskell,* 864 F.2d at 1278 (brackets in original and additional citations omitted).

*In Guindon*, the Sixth Circuit applied the standards set forth in *Haskell* and held that members of Washington Township's Board of Trustees were not entitled to legislative immunity with respect to the plaintiffs' claims regarding the denial of their building permit request. 488 Fed.Appx. at 34. The court concluded that this was an administrative activity, relying on its previous decision in *Jaggers v. City of Alexandria,* No. 08–5213, 2009 WL 233244, at *4-6 (6th Cir. Feb. 2, 2009). In *Jaggers,* the court held that the defendant city council members could not establish as a matter of law that they were

entitled to legislative immunity with respect to their decision to deny the plaintiffs' proposed site-plan development. *Id.*

In line with these decisions, the court in *Muslim Cmty. Ass'n of Ann Arbor & Vicinity*, concluded that individual members of the zoning board were not entitled to legislative immunity for claims arising out of their denial of a rezoning application. 947 F. Supp. 2d at 761-62. For the same reasons, this Court must conclude here that the Individual Defendants are not entitled to legislative immunity with respect to their decision to deny Plaintiff's variance application.

### D. Duplicity of official capacity claims against the Individual Defendants

The Individual Defendants also seek dismissal of Plaintiff's claims against them in their official capacities arguing that such claims are equivalent to suing the City itself and the City is already named as a defendant. As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159 (1985), a suit against a government official in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165-66. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Based on these principles, where a complaint names an official-capacity defendant and the entity of which the officer is an agent, the Sixth Circuit and courts in this district have dismissed the official capacity defendant citing redundancy. *See Jackson v. Shelby Cnty. Gov't*, No. 07–6356, 2008 WL 4915434, at *2 (6th Cir. 2008); *Ebelt v. Cnty. of Ogemaw*, 231 F. Supp.2d 563, 568 (E.D. Mich. 2002) (Lawson, J.); *BBF Eng'g Services, PC v. Michigan*, No. 11–14853, 2012 WL

380282, at *4 (E.D. Mich. Feb. 6, 2012) (Edmunds, J.); *Muslim Cmty. Ass'n of Ann Arbor & Vicinity,* 947 F. Supp. 2d at 761-62 (Duggan, J.).

This Court sees no reason to reach a different result here and therefore is dismissing the Individual Defendants in their official capacity. Any claim asserted against the Individual Defendants in their official capacity will be construed as a suit against the entity (*i.e.*, the ZBA or the City of Troy) instead. The Court will address the issue of the ZBA members' individual liability below.

## E. Statute of limitations

The applicable statute of limitations for a RLUIPA claim is four years. *See* 28 U.S.C. § 1658(a). On November 8, 2018, Plaintiff filed its complaint in this lawsuit. Defendants argue that all conduct allegedly occurring prior to November 8, 2014 should therefore be struck from Plaintiff's complaint. Defendants, however, do not contend that any of Plaintiff's specific counts should be dismissed on the basis of the statute of limitations. Instead, Defendants request that the Court dismiss the factual allegations contained in paragraphs 27-29 and 32 of the complaint as being time barred.

Paragraphs 27-29 and 32 address Plaintiff's prior alleged unsuccessful attempts to construct a mosque in the City. While the paragraphs allege that no mosque has been approved by the City since 2013, there is no indication from the plain text of the complaint that all of the conduct described in these paragraphs actually occurred before November 8, 2014. Moreover, the conduct in the complaint relating to 2013 does not form the basis of Plaintiff's claims. The factual allegations contained in paragraphs 27-29 and 32 relating to pre-2014 activity, if true, may be relevant to support Plaintiff's RLUIPA claims or in connection with Plaintiff's efforts to prove discriminatory intent or animus by the City and its officials. The allegations, if true, may also be relevant to defending against Plaintiff's

claims. Either way, the alleged conduct is not relevant for determining when the statute of limitations began to run on Plaintiff's RLUIPA claims arising out of the ZBA's denial of the variance application or its constitutional challenge to the 2017 zoning ordinance. Plaintiff's claims in this dispute are not barred by the statute of limitations.

### F. Exhaustion of administrative remedies

Defendants contend that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff failed to exhaust its administrative remedies in appealing the ZBA's decision. Specifically, Defendants state that Plaintiff failed to exhaust its administrative remedies because it did not appeal the ZBA's decision to the circuit court as permitted by Mich. Comp. Laws Ann. § 125.3606, which provides that "[a]ny party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located."

Defendants' argument on this issue is confusing. Defendants appear to admit that Plaintiff followed all of the procedural steps required by the zoning statute and that a final determination was made by the ZBA. Thus it seems Defendants are contending that Plaintiff was required to appeal the ZBA's decision by filing a lawsuit with the Oakland County circuit court prior to filing a lawsuit in this Court asserting claims for religious discrimination. Defendants, however, fail to identify any authority requiring a party to pursue an appeal of a zoning board decision to the state circuit court prior to pursuing claims for constitutional violations in federal court.

Plaintiff responds that Michigan's statute requiring exhaustion of administrative remedies does not apply to its RLUIPA claims. Plaintiff further argues that it has in fact received a final adjudication by the zoning board of appeals and therefore it is entitled to pursue litigation in this Court or in a state circuit court. Like Defendants, Plaintiff fails to

cite any case law in support of its interpretation of Mich. Com. Law Ann. § 125.3606. Nonetheless, the Court conducted its own research on this issue and agrees with Plaintiff that it has exhausted its administrative remedies.

With regard to equal protection claims brought concerning zoning questions, the Sixth Circuit has indicated that the issue of ripeness must be considered by the district court since it is jurisdictional. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1214 (6th Cir.1992). In *Seguin v. City of Sterling Heights*, 968 F.2d 584 (6th Cir.1992), the court held that "absent an application for a variance and a final decision on that application, we are unable to determine, at this juncture, whether the city will ultimately deny plaintiffs the equal protection of the laws." *Id.* at 588. But in *Thornton v. City of Allegan*, 863 F. Supp. 504 (W.D. Mich. 1993), the court distinguished *Seguin* and held that the zoning board of appeals' affirmance of the city council's denial of the plaintiff's permit application was a final decision within the meaning of Mich. Comp. Laws § 125.585(11). *Id.* at 507-08. The court rejected the same argument made by Defendants here and exercised subject matter jurisdiction over the dispute. *See id.*

Here, Plaintiff submitted an application for a variance to the ZBA and the variance application was denied by the ZBA. Plaintiff's application and the ZBA's final decision sufficiently satisfies the requirements of *Seguin*. Plaintiff's pleadings establish that it exhausted its administrative remedies prior to filing suit and its claims are now ripe for review by this Court.

### G. Plaintiff stated a substantial burden claim under RLUIPA

Defendant argues that Plaintiff's RLUIPA claims should be dismissed because Plaintiff has failed to establish that Defendants' actions imposed a substantial burden on Plaintiff's exercise of religion. Defendants further argue that the significant scope of the

variances requested coupled with the fact that there are not special religious attributes unique to the property in question are dispositive of Plaintiff's substantial burden claim.

RLUIPA's substantial burden provision provides in pertinent part:

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). The statute defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief" including "[t]he use, building, or conversion of real property for the purpose of religious exercise ... of the person or entity that uses or intends to use the property for that purpose." *Id.* § 2000cc–5(7). The statute, however, does not define "substantial burden." *See Living Water Church of God v. Charter Twp. of Meridian*, 258 Fed.Appx. 729, 734 (6th Cir. 2007); *Muslim Cmty. Ass'n of Ann Arbor & Vicinity*, 947 F. Supp. 2d at 767-68.

Recently, in *Livingston Christian Sch. v. Genoa Charter Twp.,* 858 F.3d 996 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1696, 200 L. Ed. 2d 952 (2018), the Sixth Circuit discussed the absence of a uniform test for determining whether a land use regulation imposes a substantial burden on a religious institution under RLUIPA. The court enumerated three primary factors that the district court should consider when analyzing substantial burden claims. 858 F.3d at 1004 These factors are: (1) whether the religious institution has a feasible alternative location from which it can carry on its mission; (2) whether the religious institution will suffer substantial delay, uncertainty, and expense due

to the imposition of the regulation; and (3) whether the plaintiff has imposed the burden on itself. *Id.* The court describes this third factor as substantial and points to several circuits holding that when a plaintiff has imposed the burden upon itself, then the government cannot be liable for a RLUIPA substantial burden violation. *Id.* "For example, when an institutional plaintiff has obtained an interest in land without a reasonable expectation of being able to use that land for religious purposes, the hardship that it suffered when the land-use regulations were enforced against it has been deemed an insubstantial burden." *Id.*; *see, e.g.*, *Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 515 (4th Cir. 2016) (concluding that a burden was not substantial because it was self-imposed when the plaintiff entered into a contingent lease agreement for a property despite knowing that the property failed to meet applicable setback requirements and having been informed that the application for a zoning variance would be denied); *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) (concluding that the plaintiff was not substantially burdened when it had imposed the burden upon itself by purchasing property in an industrial zone for use as a church after having been informed that its special-use application would be denied because the relevant zoning ordinance banned churches in that zone). However, in the Sixth Circuit, discriminatory intent by the municipality is not considered in connection with the substantial burden analysis, although it is considered by other circuits. *Id.* at 1005. Analyzing these factors is a fact intensive inquiry that requires a developed record replete with evidence to support each party's position.

In arguing that Plaintiff has failed to establish a substantial burden here, Defendants cite a number of cases where courts found no substantial burden was created

by the denial of a rezoning application. In all but one of these cases, the court's findings were made on a developed record and in summary judgment proceedings, rather than on a motion to dismiss. *See Great Lakes Soc. v. Georgetown Charter Twp.*, 281 Mich. App. 396, 406, 761 N.W.2d 371, 379 (2008) (discussed by Defendants) (affirming in part and reversing in part the trial court's order on summary judgment based on extensive and developed record); *Livingston Christian Sch.*, 858 F.3d at 1005 (6th Cir. 2017) (discussed by Defendants) (affirming summary judgment on RLUIPA claims where the plaintiff failed to put forth sufficient evidence to establish that alternative location was inadequate for its religious mission). In their reply brief, Defendants point to the Fourth Circuit's opinion in *Andon* in which the court affirmed the dismissal of a RLUIPA claim at the motion to dismiss stage. 813 F.3d at 515. In *Andon*, the Fourth Circuit found that the plaintiff failed to plead sufficient factual allegations in the complaint, which if true, amounted to a substantial burden on the exercise of its religious beliefs. *Id.* Thus dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) was warranted.

Here, Plaintiff's complaint sufficiently states a substantial burden claim. Plaintiff alleges that it cannot conduct prayer services in its current facility, that there are no Muslim places of worship within the City for Plaintiff and its community members to practice their religion, that there are no other properties available in the City that satisfy the City's zoning requirements for places of worship, and that not having a place of worship within the City poses a substantial burden on its ability to engage in religious exercise. Plaintiff also alleges facts, which if true, would support its theory that the City acted with discriminatory intent and treated Plaintiff differently from other faith based organizations. Plaintiff specifically alleges that the zoning laws have not been applied

neutrally to it and that commercial businesses and Christian churches are treated more favorably.

Defendants challenge the accuracy of many of these allegations. But the record is far too incomplete for the Court to make a determination as to the merits of Plaintiff's substantial burden claim. That Plaintiff admits it currently provides religious and nonreligious educational classes at its current facility does not automatically mean that it is able to engage in worship or prayer activities at that facility. Similarly, Google's apparent description of Plaintiff's current facility as a mosque, without more, does not mean that Plaintiff's current facility is in fact a mosque. Discovery and actual evidence is needed to address several of the factors relevant to the substantial burden inquiry, such as whether the alleged burdens Plaintiff sustained were actually self-imposed hardships as opposed to being caused by the ZBA's denial of Plaintiff's variance application.

In sum, the determination of whether Defendants' actions substantially burdened Plaintiff's religious exercise is too fact intensive to resolve on Defendants' motion to dismiss, and it is too premature to address on a motion for summary judgment given the limited record before the Court. While Plaintiff will ultimately be required to present actual evidence to support the allegations in its complaint, it has sufficiently satisfied its pleading requirements to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## H. Plaintiff stated a discrimination and unequal treatment claim under RLUIPA

The same analysis applies to Plaintiff's discrimination and unequal treatment claim. Defendant repeatedly urges the Court to find that Plaintiff has failed to "establish" RLUIPA violations. However, such an argument requires a review of a complete record that is not presently before the Court. Plaintiff sufficiently alleges for the purposes of the

Court's analysis under Federal Rule of Civil Procedure 12(b)(6) that Defendants treat similarly situated comparative uses more favorably than mosques. Whether there is any actual evidence to support Plaintiff's allegations will necessarily impact the evaluation of whether Plaintiff can establish its claims. Defendants' motion to dismiss these claims is denied without prejudice to Defendants' reassertion of these same arguments on summary judgment once the record in this case is more developed.

## I. Plaintiff's standing

Defendants argue that Plaintiff lacks standing to bring this action because it is not the actual owner of the property in question. In support of this argument, Defendants submit Plaintiff's application for variance which identifies a third party as the owner of the property. Plaintiff responds that it is in fact the owner of the property as alleged in its complaint. Plaintiff submits an agreement for the sale and assignment of the property from the prior owner to Plaintiff to establish Plaintiff's current ownership interest in the property.

Defendants fail to meet their burden on this issue. As an initial matter, the Court notes that a plaintiff need not possess an ownership interest in the subject property as a necessary element of a RLUIPA claim. All that is required is a legally recognized property interest in the property. *See Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Charter Twp.*, No. 12-CV-10803, 2015 WL 1286813, at *7 (E.D. Mich. Mar. 20, 2015), *adhered to in part on reconsideration*, No. 12-CV-10803, 2015 WL 5131797 (E.D. Mich. June 1, 2015) (explaining that RLUIPA's definition of "land use regulation," 42 U.S.C. § 2000cc–5(5), makes clear that nearly any type of property interest will suffice so long as the interest is legally cognizable.). Moreover, here, Plaintiff sufficiently alleges that it is the owner of the property and has an interest in the property such that it is entitled to bring the claims

asserted in the complaint. The evidence submitted by Defendants with their motion does not affirmatively demonstrate that Plaintiff is not the owner of the property or that Plaintiff has no legally recognized interest in the property. Therefore based on the record before the Court Defendants' motion to dismiss for lack of standing is denied without prejudice.

## J. Qualified immunity for Individual Defendants

Defendants argue that the zoning board members are entitled to qualified immunity in connection with Plaintiff's claims. Defendants contend that Plaintiffs failed to meet their threshold burden of establishing that any of the Individual Defendants acted with intent to violate Plaintiff's RLUIPA or constitutional rights.

Public officials who perform discretionary duties within the scope of their employment are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Guindon v. Twp. of Dundee, Mich.*, 488 F. App'x 27, 35 (6th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not a defense to liability; it is an absolute immunity from suit. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Once a defendant asserts the doctrine of qualified immunity, the plaintiff bears the burden of satisfying a strict two-part test. *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011). The plaintiff must show: (1) a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

To find that a right is "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson,* 477 F.3d 347, 355 (6th Cir.2007) (internal quotation marks omitted). In the "light of pre-existing law[,] the unlawfulness must be apparent."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Plaintiff alleges that the Individual Defendants denied Plaintiff's variance application on the basis of animus to the Islamic faith rather than any legitimate or neutral purpose. There can be no dispute that at all times pertinent to this action it was clearly established that individuals have a right to be free from discrimination by the government that burdens a fundamental right such as the free exercise of religion, *see Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531-32 (1993), or that targets a suspect class such as a religious group, *see City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). Plaintiff pleads sufficient facts to allege that the Individual Defendants denied Plaintiff's variance request and strictly enforced the zoning ordinance for the purpose of discriminating on account of religion. *See Muslim Cmty. Ass'n of Ann Arbor & Vicinity*, 947 F. Supp. 2d at 772 (denying individual board trustees defendants' motion to dismiss based on qualified immunity where complaint alleged that the individual trustees acted for the purposes of discriminating against religion). Therefore the Individual Defendants are not entitled to dismissal based on qualified immunity at this stage of the proceeding. However, the Individual Defendants are in no way foreclosed from reasserting their qualified immunity defense with a more developed record on summary judgment.

### K. State law claims

By separate order, the Court dismissed Plaintiff's state law claims for lack of subject matter jurisdiction. (*See* ECF No. 4.) Plaintiff concedes that these claims are no longer viable in this action. Therefore the Court need not address this issue again in connection with Defendants' motion to dismiss.

## IV.    Conclusion

For the above-stated reasons, the Court **GRANTS** Defendants' motion to dismiss with respect to the individual members of the ZBA in their official capacity, and **DENIES** Defendants' motion in all other respects.  Defendants' motion for summary judgment is denied without prejudice.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge


Dated:  April 3, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 3, 2019, by electronic and/or ordinary mail.


s/Lisa Bartlett
Case Manager