UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM COMMUNITY CENTER, a domestic
nonprofit corporation, a/k/a ADAM
COMMUNITY (ACC), a domestic nonprofit
corporation,

Case No. 2:18-cv-13481

Hon. Nancy G. Edmunds

Plaintiff,

v.

CITY OF TROY, a Michigan municipal
corporation, et al.,

Defendants.

_____/

## DEFENDANT GLENN CLARK'S MOTION FOR SUMMARY JUDGMENT

Defendant Glenn Clark, by and through his attorneys, and pursuant to

Federal Rule of Civil Procedure 56 and Local Rule 7.1, moves this Court for

an order granting summary judgment. Clark is entitled to qualified immunity

regarding actions taken in the course of his official duties as a member and

chairman of the City of Troy Zoning Board of Appeals to deny Plaintiff's

application for a variance from the City of Troy's Zoning Ordinance. For the

1

reasons set forth in Clark's supporting brief, judgment should be entered in Clark's favor dismissing him from this lawsuit.[1]

Dated:  November 25, 2019                Respectfully Submitted,

                                         s/ Brandon M. Bolling (P60195)
                                         Thomas More Law Center
                                         24 Frank Lloyd Wright Drive
                                         Ann Arbor, MI  48106
                                         (734) 827-2001
                                         bbolling@thomasmore.org

                                         *Attorneys for Plaintiff*

---

[1] Pursuant to Local Rule 7.1 Defendant Clark sought, but did not receive, concurrence from Plaintiff related to the relief sought herein.

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2019 a copy of the foregoing

was filed with the Court via the District's Electronic Case Filing system

which will serve copies upon all parties of record in this matter.

s/ Brandon M. Bolling

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM COMMUNITY CENTER, a domestic
nonprofit corporation, a/k/a ADAM
COMMUNITY (ACC), a domestic nonprofit
corporation,

Case No. 2:18-cv-13481

Hon. Nancy G. Edmunds

Plaintiff,

v.

CITY OF TROY, a Michigan municipal
corporation, et al.,

Defendants.

_____/

## BRIEF IN SUPPORT OF DEFENDANT
## GLENN CLARK'S MOTION FOR SUMMARY JUDGMENT

## I.     BACKGROUND

On November 8, 2018, Plaintiff filed its Complaint alleging numerous

claims set forth in eleven Counts against Glenn Clark and his co-Defendants

after they denied Plaintiff's variance application in the City of Troy, Michigan.

Thereafter, Defendants filed Defendants' Motion For Dismissal Pursuant to

FRCP 12(b)(6) and FRCP 56.[1] Subsequently, the Court issued an Order And

Opinion Granting In Part And Denying In Part Defendants' Motion To Dismiss

_____

[1] ECF No.5

1

("Order").[2] Pursuant to the Order, Counts I – IV and XI were dismissed against Clark.[3] The discovery process is now complete and consistent with the Order, Clark moves the Court for summary judgment on the remaining Counts V – X.

## II.    STATEMENT OF FACTS

*City of Troy ("Troy") Zoning Board of Appeals ("ZBA")*

1.  The ZBA is a group of seven people appointed by the Troy City Council to decide on requests for variances. ZBA Opening Statement p. 1.

2.  Clark is the Chairman of the ZBA and has been on the ZBA between 10 and 20 years. Clark Dep. pps. 3, ln 19-20, and p. 4, ln 12-13.

3.  Clark receives a packet of information regarding applications for variances from the Troy City Administration. Clark Dep. p. 11, ln 16-22; p. 20, ln 5-10.

4.  When determining if someone qualifies for a variance, Clark decides whether the applicant meets the five items of potential hardship listed in the Troy Zoning Ordinance. Clark Dep. p. 16, ln 6-12.

5.  Clark does not state findings regarding each of the five factual bases because the application can be denied if any one of them are not in compliance. Clark Dep. p. 57, ln 10-13.

---

[2] ECF No. 9
[3] ECF No. 9, pps. 18-19 (Religious Land Use and Institutionalized Persons Act of 2000) & p. 28 (State law claims)

6. Clark reviews the packet provided to the ZBA and reviews what is presented during the ZBA meeting. Clark Dep. p. 20, ln 5- 15.

7. The City Attorney or a member of his staff brief Clark extensively regarding each application before the ZBA. Clark Dep. p. 60, ln 3-21.

8. To learn about the exceptional characteristics of the property for which a variance is sought Clark reads the applicant's package, balances it against the five practical difficulty factors, and assesses if it makes compliance with the dimensional requirements of the zoning ordinance substantially more difficult than for the majority of properties in the same zoning district. Clark Dep. p. 17, ln 3-24 and p. 19, ln 9-25.

9. Characteristics of the property to be considered include: exceptional narrowness, shallowness, smallness, irregular shaped topography, vegetation and other similar characteristics. Clark Dep. p. 17, ln 8-11.

*Plaintiff Adam Community Center's Application for a Variance*

10. Plaintiff was formed in 2009 with an intention to establish a house of worship. Amin Dep. P. 9, ln 11-14, p. 11, ln 14-16.

11. Plaintiff wants to establish a mosque in Troy along with a community center. Amin. Dep. p. 20, ln 7-15.

3

12. Dr. Nurul Amin, Plaintiff's president, estimates that six to ten thousand square feet are needed to build a mosque in Troy. Amin Dep. p. 13, ln 22-25, p. 14, ln 1-5; p. 20, ln 24-25, p 21, ln 1-5.

13. The mosque would always be open with scheduled prayer five times a day. Amin Dep. p. 22, ln 2-14.

14. The property for which Plaintiff seeks a variance, 3635 Rochester Road, is in a business district and at the time of Plaintiff's application for a variance, one side of the building located at 3635 Rochester Road was an empty warehouse that was previously used as a retail storefront and one side of the building was used as a restaurant. Statement of Practical Difficulty Re: Adam Community Center, p. 1.

15. When Amin entered a purchase agreement for 3635 Rochester Road, he knew that he would have to seek a variance to use the property for a place of worship. Amin Dep. p. 79, ln 17-23.

16. Petitioners seeking a variance must indicate a hardship or practical difficulty with the land that would warrant the granting of the variance, and for a variance to be granted, the ZBA must determine such conditions to be present. ZBA Opening Statement p. 1; Agauas Resp. to Interrog. 16.

17. On June 19, 2018 the ZBA held a public meeting to consider Plaintiff's request for "1) A variance from the requirement that front, side, and rear yard

setbacks be a minimum of 50 feet; 2) a variance to allow parking within the required 50 foot setbacks, and 3) a variance to allow areas within the required 50 foot setbacks to not be maintained as landscaped open space" at 3635 Rochester Road. City of Troy Notice of Public Hearing. Agauas final discovery part 1.

*June 19, 2018 Zoning Board of Appeals Meeting ("Meeting")*

18. At the Meeting ZBA Vice Chair Agauas explained "A variance is a relaxation of the literal provisions of the zoning ordinance. Petitioners must indicate a hardship or practical difficulty with the land that would warrant the granting of the variance." 6/19/18 ZBA Meeting Tr. p. 5, ln 22-25; p. 6, ln 1.

19. Clark reiterated that the ZBA must consider "irregularities with the property in question" that would create a hardship justifying a variance. 6/19/18 ZBA Meeting Tr. p. 20, ln 1-22.

20. ZBA Member Eisenbacher set forth the five criteria before granting a variance. 6/19/18 ZBA Meeting Tr. p 21, ln 14-25, p 22, ln 1-14.

21. ZBA Member Kuppa indicated during the Meeting that the idea of the ZBA is to not grant many variances. 6/19/18 ZBA Meeting Tr. p. 36, ln 7-13

22. Clark stated at the Meeting that he generally views himself as a "strict constructionist" and a "rule of law type person" and is reluctant to grant variances. 6/19/18 ZBA Meeting Tr. p. 37, ln 5-14.

23. At the Meeting Clark stated in denying a variance application brought by a different petitioner "The proper way for a property owner to take a look at a potential problem that's not related to an irregular shaped parcel, is to address the people's elected representatives and their appointed representatives vis-à-vis the city council and the planning commission to change it instead of constantly hodgepodging through many variance requests which could have a snow ball effect of other variance requests." 6/19/18 ZBA Meeting Tr. p 37, ln 14-22.

24. Prior to addressing Plaintiff's petition at the Meeting, Clark voted against a lot split submitted by a different petitioner because it did not meet the requirements for a variance. 6/19/18 ZBA Meeting Tr p. 37, ln 22-25, p. 38, ln 1-2; p. 41, ln 17-24, p. 42, ln 8.

25. During the Meeting Clark allowed everyone who wanted to speak about Plaintiff's application to do so and noted the importance of the First Amendment. 6/19/18 ZBA Meeting Tr. p. 60, ln 22-25; p. 61, ln 1-10.

26. Plaintiff's counsel was the first to mention First Evangelical Community Church at the Meeting and claimed that its building has similar characteristics to Plaintiff's building. 6/19/18 ZBA Meeting Tr. p.51, ln 6-9.

27. Clark inquired of City Administration regarding First Evangelical Church and noted that he was aware that "no variance request has come to this

6

board since that particular church has been doing operations at that property; so therefore, they did not acquire that property with a variance." 6/19/18 ZBA Meeting Tr. p.118, ln 13-20.

28. Clark was provided information that, regarding the other churches referenced on Rochester Road, one appeared on a plat from 1916 and one appeared in maps between the 1960s and 1974. 6/19/18 ZBA Meeting Tr. p. 120, ln 2-8.

29. Clark noted that the Troy's zoning was a "patchwork" and that different rules applied when certain buildings were built. 6/19/18 ZBA Meeting Tr. p. 120, ln 9-25.

30. Clark stated the ZBA "only consider[s] variance requests based on the hardship that runs with the land." 6/19/18 ZBA Meeting Tr. p. 121, ln 12-14.

*Clark's Vote to Deny Plaintiff's Variance Application*

31. Prior to voting on Plaintiff's requested variance, Clark reviewed everything presented to the ZBA by all parties. Clark Dep. p. 48, ln 11-12, p. 85, ln 10-14.

32. Clark did not have any knowledge or information about Plaintiff's application prior to the Meeting other than what was contained in the packet provided to the ZBA and he researched Plaintiff's property on June 19, 2018 so as not to prejudge the case. Clark Dep. p 13, ln 13-15, p. 48, ln 6-10.

7

33. In order for a variance to be granted, a practical difficulty, as determined by the ZBA, must be present. Lambert Interrog. Resp. 16.

34. The characteristics of the property which shall be considered under section A of the requirement of practical difficulty of the relevant zoning ordinance include "exceptional narrowness, shallowness, smallness, irregular shaped topography, vegetation, other similar characteristics." Clark Dep. p. 53, ln 14-24.

35. Based on the information provided to the ZBA and during the Meeting as to Item A of the zoning ordinance statement of practical difficulty, including the diagram of the building at issue, Clark determined the property for which Plaintiff was seeking a variance was not shallow or irregularly shaped. Clark Dep. p. 67, ln 4-20.

36. Clark does not believe Plaintiff's application satisfied the requirement of practical difficulty found in section A of the relevant zoning ordinance that "The exceptional characteristics of the property for which the variance is sought, make compliance with dimensional requirements substantially more difficulty than would be case for the great majority of properties in the same zoning district." Clark Dep. p. 53, ln 14-24, p. 54, ln 1-7.

37. Clark believes Plaintiff failed to meet its burden to establish a practical difficulty including failing to establish any exceptional characteristics of the

8

property justifying a variance from the setback requirements, that the characteristics were not of a personal nature, that the characteristics were not created by the current owner, that the proposed variance will not be harmful or alter the essential character of the area, that the proposed variance would not increase the congestion in public streets, that the proposed variance would not increase the danger of fire or endanger the public safety, that the proposed variance would not unreasonably diminish or impair established property value within the surrounding area, that the proposed variance would not in any other respect impair the public health, safety, comfort, morals or welfare of the inhabitants of the City. Clark Interrog. Resp. 22.

38. The ZBA debated application of factor E of the statement of practical difficulty including the concern regarding increased traffic on public streets. Clark Dep. p. 69, ln 9-13.

39. Public safety was a consideration for Clark in denying Plaintiff's application for a variance based on factor E of the statement of practical difficulty such as worrying about kids getting hit by traffic. Clark Dep. p. 69, ln 13-16.

40. At the Meeting Kuppa had concerns regarding traffic impact because "A restaurant doesn't have the same patterns of usage as a banquet facility would." 6/19/18 ZBA Meeting Tr. p. 55, ln 7-13.

41. Clark also considered property values, comfort and general welfare of the inhabitants of the neighborhood near Plaintiff's property, prior to voting to deny Plaintiff's variance request namely, "a high impact building so close to a residential area." Clark Dep. p. 69, ln 16-21.

42. Clark found that Plaintiff's parcel itself is perfectly good and there's not a problem that is running with the land. Clark Dep. p. 54, ln 3-4.

43. Applications for a variance where there is not a problem that is running with the land are routinely denied by the ZBA. Clark Dep. p. 54, ln 3-7.

44. Clark does not remember the ZBA ever approving such an extreme variance as that requested by Plaintiff. Clark Dep. p. 39, ln 6-13.

45. Clark determined Plaintiff's variance application did not meet their burden to establish the necessary criteria pursuant to Sections 15.04E.2 & .3 of the Troy Zoning Ordinance to grant it. Clark Dep. p. 17, ln 3-12.

46. Clark based his vote to deny Plaintiff's variance request on the fact that there was no practical difficulty running with the land for a 50-foot variance on all four sides of the building. Clark Dep. p. 48, ln 15-19.

47. Clark did not improperly influence the votes of other board members to deny Plaintiff's variance request. Kuppa Dep. Tr. pps. 24 ln 8-11 & 46 ln 6-9; 6/19/18 ZBA Meeting Tr. p. 142, ln 21-25.

_Clark's Vote to Deny Plaintiff's Variance Request Was Lawful_

48. At the Meeting when questions were raised regarding the application of the Religious Land Use and Institutionalized Persons Act,[4] the ZBA was advised by the City Attorney to "apply the standards you would apply to any variance." 6/19/18 ZBA Meeting Tr. p.137, ln 5-17.

49. Clark's decision to vote against Plaintiff's variance application was based solely on the criteria set forth in the Troy Zoning Ordinance and was not based on any personal bias or any other improper reason for denying a variance, including religious affiliation. Clark Resp. to Interrog. 21; 6/19/18 ZBA Meeting Tr. p. 122, ln 2-14, p. 123, ln 7-10 & 12-22, p. 124, ln 17-25, and p. 125, ln 1-18.

50. Clark does not have any religious animus toward the Muslim community. Clark Resp. to Request for Admission 3.

51. There were no derogatory statements made about Muslims or Islam during the Meeting at any time. See generally, 6/19/18 ZBA Meeting Tr.

---

[4] 42 U.S.C. § 2000cc et seq.

52. Plaintiff's President Amin could not provide any evidence of bias or wrongdoing when asked why he believes Clark denied Plaintiff's requested variance. Amin Dep. p. 70, ln 1-10.

53. Clark never told Plaintiff to leave Troy but asked "isn't there a better parcel available somewhere maybe in this community maybe somewhere else that would not require the extreme variances being sought." 6/19/18 ZBA Meeting Tr. p. 125, ln 14-24; Clark Resp. to Request for Admission 7.

54. Clark stated that Plaintiff can use the property at issue without a variance if Plaintiff constructs a building that complies with the zoning ordinance. 6/19/18 ZBA Meeting Tr.138, ln 12.

55. At the Meeting Clark described not giving preferential treatment to businesses even if they will be lucrative and bring many jobs. 6/19/18 ZBA Meeting Tr. p 134, ln 1-8; p 139, ln 19-22.

56. During Clark's tenure on the ZBA he has never voted against a variance request because there was opposition from the community, instead he "generally vote[s] opposed to anything where there's neighborhood opposition when it's clear that it doesn't fit the zoning ordinance." Clark Interrog. Resp. 13; 6/19/18 ZBA Meeting Tr. 136, ln 10-12.

57. Agauas made a motion at the Meeting to deny Plaintiff's variance application because it did not fit the statement of practical difficulty. 6/19/18 ZBA Meeting Tr. 142, ln 21-24.

## III.    STANDARDS OF REVIEW

### A. SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual

13

disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").[5]

### B. QUALIFIED IMMUNITY

Public officials who perform discretionary duties within the scope of their employment are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not a defense to liability; it is an absolute immunity from suit. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). Once a defendant asserts the doctrine of qualified immunity, the plaintiff bears the burden of satisfying a strict two-part test. *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011).

The plaintiff must show: (1) a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's

---

[5] See Order And Opinion Granting In Part Defendant's Motion To Dismiss, *ADAM Community Center v. City of Troy, et al.*, 2:18-cv-13481 [ECF No. 9, p. 10].

alleged misconduct. *Id.* These tests may be addressed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To find that a right is "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (internal quotation marks omitted). In the "light of pre-existing law[,] the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court has admonished lower courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011).

## IV.   ARGUMENT

Plaintiff's buffet of claims contained within Counts V – X boil down to an allegation that Clark denied Plaintiff's variance application based on animus to the Islamic faith rather than any legitimate or neutral purpose. To succeed, Plaintiff must show: (1) a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. Regarding the second prong of this test, Clark does not dispute that under the Constitution it is clearly established that individuals have a right to be free from discrimination by the government that burdens a

fundamental right such as the free exercise of religion or that targets a religious group. However, Clark asserts that Plaintiff failed to meet its burden pursuant to the first prong of the test by failing to establish that Clark violated any of Plaintiff's constitutional rights.

Clark is entitled to qualified immunity because his actions were within the scope of his duties as a member and chairman of the ZBA and were taken with a reasonable belief that they were lawful. Public officials, like Clark, performing discretionary duties within the scope of their employment are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Here, Clark neither knowingly violated any laws nor did he act in a plainly incompetent manner. Further, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[6] Accordingly, the Court should act to shield Clark from the harassment, distraction, and any looming liability borne of this lawsuit because he reasonably performed his duties as part of the ZBA.[7]

---

[6] *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).
[7] *Guindon v. Twp. of Dundee, Mich.*, 488 F. App'x 27 (6th Cir. 2012)

The ZBA is a group of people appointed by the Troy City Council to decide on requests for variances and other matters brought before them. Applicants seeking variances from the ZBA must indicate a hardship or practical difficulty with the land that would warrant the granting of the variance. When determining whether someone qualifies for a variance, the ZBA determines whether the applicant meets all five factors listed in Troy's Zoning Ordinance.[8] When making this determination, the ZBA shall not find that any of the five criteria regarding practical difficulty exist unless substantial evidence is provided by the *applicant* to that effect.[9] Accordingly, it is the *applicant's* burden to establish that all five criteria are met by providing substantial evidence to support any petition for a variance.

When assessing variance requests, Clark reviews the applicant's supporting materials, the materials presented to the ZBA by the City Administration, and any materials presented during the ZBA meeting. Clark

_____

[8] See Section 15.04.E.2 (a) Exceptional characteristics of property for which the variance is sought make compliance with dimensional requirements substantially more difficult than would be the case for the great majority of properties in the same zoning district. Characteristics of property which shall be considered include exceptional narrowness, shallowness, smallness, irregular shape, topography, vegetation and other similar characteristics. (b) The characteristics which make compliance with dimensional requirements difficult must relate to the premises for which the variance is sought, not some other location. (c) The characteristics which make compliance with the dimensional requirements shall not be of a personal nature. (d) The characteristics which make compliance with the dimensional requirements difficult must not have been created by the current or a previous owner. (e) The proposed variance will not be harmful or alter the essential character of the area in which the property is located, will not impair an adequate supply of light and air to adjacent property, or unreasonably increase the congestion in public streets, or increase the danger of fire or endanger the public safety, or unreasonably diminish or impair established property value within the surrounding area, or in any other respect impair the public health, safety, comfort, morals, or welfare of the inhabitants of the City.
[9] Troy Zoning Ordinance Section 15.04.E.3

is also briefed extensively by the City Attorney, or a member of the City Attorney's Staff, regarding each application being heard at a ZBA meeting. Finally, Clark balances all this information against the criteria for determining whether a practical difficulty exists to warrant granting a variance under the Zoning Ordinance. Here, Plaintiff desired to establish a mosque in Troy along with a community center using a building located in Troy's business district; therefore, Plaintiff was required to seek a variance to do so. Importantly, when Plaintiff entered a purchase agreement for this building, it knew that it would have to seek a variance to use the property for a place of worship. Accordingly, Plaintiff applied for a variance and came before the ZBA.

During the Meeting regarding Plaintiff's variance requests, Clark reiterated the criteria the ZBA must consider that would create a hardship justifying a variance. Clark allowed everyone who wanted to speak to do so and reminded everyone in attendance of the importance of the First Amendment. Clark—and the ZBA—was advised by the City Attorney regarding the application of the Religious Land Use and Institutionalized Persons Act[10] and instructed to apply the standards applicable to any variance under the Zoning Ordinance. Clark went through the extensive review process of the information and materials provided by all concerned

---

[10] 42 U.S.C. § 2000cc et seq.

parties, determined Plaintiff's application did not meet the necessary criteria, and voted to deny Plaintiff's variance application.

During the Meeting, there were various factors considered that affected the ZBA's analysis of Plaintiff's variance application. These factors included: the characteristics of the property itself; public safety; traffic; property values; the comfort and general welfare of the inhabitants of the neighborhood near Plaintiff's property; and the effects of a high impact building located so close to a residential area. Ultimately, Clark concluded Plaintiff failed to meet its burden to establish a practical difficulty because it did not establish any exceptional characteristics of the property justifying any variances from requirements of the Zoning Ordinance. Clark's decision to vote against Plaintiff's variance application was based solely on the criteria set forth in the Zoning Ordinance. In fact, during Clark's time on the ZBA, it has never approved such an extreme variance as that requested by Plaintiff.

At the Meeting Plaintiff claimed that a specific church building located in Troy has similar characteristics to those sought by Plaintiff. Clark inquired of the City Administration regarding this church and then noted that no variance request has come to the ZBA from that church and that it did not acquire its property with a variance. Additionally, Clark was provided information that, regarding other churches referenced on Rochester Road in

19

Troy, one appeared on a plat from 1916 and one appeared in maps between the 1960s and 1974—both at times when zoning regulations were substantively different than when Plaintiff submitted their variance application. Regardless, while a ZBA member, Clark has not provided preferential treatment to anyone and indicated "at the end of the day in a business sense, you know, if it doesn't fit the Zoning Ordinance, I don't support it."

During the Meeting Clark pointed out that the ZBA has previously dealt with houses of worship and values people of faith, but at the end of the day, must look at the Zoning Ordinance. Contrary to Plaintiff's allegations, Clark never told Plaintiff to leave Troy, rather he questioned, "isn't there a better parcel available somewhere maybe in this community maybe somewhere else that would not require the extreme variances being sought." Clark even suggested that Plaintiff can use the property at issue without a variance if Plaintiff constructs a building that complies with the Zoning Ordinance. Neither Clark nor any other ZBA Member made a single derogatory statement about Muslims or members of the Islamic faith—or any faith for that matter.

The determination by Clark regarding Plaintiff's variance application was based exclusively on the criteria contained in the Zoning Ordinance and

Plaintiff's religious practices and affiliation had nothing to do with it. During Clark's tenure on the ZBA he has always voted against variance applications when they did not meet the criteria set forth in the Zoning Ordinance, including denying variances requested by two Christian churches—one of which Clark had a "personal affinity" for. It is outrageous for Plaintiff to confect legal claims that Clark harbors religious animus toward the Muslim community when Plaintiff has no evidence to support these ad hominem allegations.

## V.   CONCLUSION

Public officials, like Clark, who perform discretionary duties within the scope of their employment are shielded from liability for civil damages when, like Clark, they are not plainly incompetent or do not knowingly violate the law. Certainly, Clark had no reason to believe any action he took in denying Plaintiff's variance application was unlawful because his decision was based solely on the criteria set forth in the Zoning Ordinance, made pursuant to the advice of the City Attorney, and not taken on any personal bias or other improper reason. Accordingly, Clark is entitled to the protections of qualified immunity and to summary judgment because he has shown that there is no genuine dispute as to any material fact related to his involvement in the denial of Plaintiff's variance application. Clark has met his initial burden of

demonstrating an absence of evidence to support Plaintiff's case and Plaintiff has no specific facts showing that there is a genuine issue for trial. Therefore, Clark requests this Court grant him summary judgment and enter an Order dismissing him from this lawsuit.

Dated:  November 25, 2019                    Respectfully Submitted,


                                             s/ Brandon Bolling (P60195)
                                             Thomas More Law Center
                                             24 Frank Lloyd Wright Drive
                                             Ann Arbor, MI  48106
                                             (734) 827-2001
                                             bbolling@thomasmore.org

                                             *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2019 a copy of the foregoing was filed with the Court via the District's Electronic Case Filing system which will serve copies upon all parties of record in this matter.

<u>s/ Brandon M. Bolling</u>