UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

**ADAM COMMUNITY CENTER,** a
domestic nonprofit corporation, a/k/a
**ADAM COMMUNITY (ACC),** a
Domestic nonprofit corporation**,**

   Plaintiff,        **Case No: 18-13481**
                **Hon. Nancy G. Edmunds**

v.

**CITY OF TROY,** A Michigan municipal
Corporation, **TROY CITY COUNCIL, CITY
OF TROY PLANNING COMMISSION,
CITY OF TROY ZONING BOARD OF
APPEALS,** and **DANIEL AGAUAS, GLEN
CLARK, THOMAS DESMOND, DAVID
EISENBACHER, ORESTIS KALTSOUNIS,
PADMA KUPA, JAMES
 MCCAULEY,** in their official Capacities as
Members of the **TROY ZONING
BOARD OF APPEALS,**

   Defendants.

| **CAIR-MI** | Lori Grigg Bluhm (P46908) | **THOMAS MORE LAW CENTER** |
|---|---|---|
| By: Amy V. Doukoure (P80461) | Allan T. Motzny (P37580) | BY: Brandon Bolling (P60195) |
| *Attorney for Plaintiff* | *Attorneys for Defendants* | BY: Richard Thompson (P21410) |
| 30201 Orchard Lake Road Suite 260 | 500 W. Big Beaver road | *Attorney for Defendant Glenn Clark* |
| Farmington Hills, MI 48334 | Troy, MI 48084 | 24 Frank Lloyd Wright Drive |
| (248) 559-2247 Phone | (248) 524-3220 | P.O. Box 393 |
| (248) 559-2250 Fax | Bluhmlg@troymi.gov | Suite J-3200 |
| adoukoure@cair.com | | Ann Arbor, MI 48106 |
| | | (734) 827-2001 |
| | | bbolling@thomasmore.org |
| | | rthompson@thomasmore.org |

# PLAINTIFF'S RESPONSE TO DEFENDANT GLENN CLARK'S MOTION FOR SUMMARY DISPOSITION

# ORAL ARGUMENT REQUESTED

**NOW COMES**, Plaintiff, ADAM COMMUNITY CENTER, by and through its Counsel, CAIR-MI LEGAL FUND, by Amy V. Doukoure, Esq., and in opposition of Defendant Glenn Clark's Motion for Summary Disposition avers as follows.

For reasons more fully sated, and supported in the attached ***Plaintiff's Brief in Opposition,*** Defendant Glenn Clark is not entitled to Summary Disposition based on Qualified Immunity because there remains material issues of fact regarding whether or not the Defendant intentionally and knowingly violated Plaintiff's well established First Amendment Rights to Religious Freedom and the Practice of Religion while acting as Chair of the City of Troy Zoning Board of Appeals.

Dated: December 16, 2019                          Respectfully Submitted,

**CAIR-MI LEGAL FUND**


/s/ Amy V. Doukoure_____
BY: Amy V. Doukoure (P80461)
30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247
adoukoure@cair.com

**COUNSEL FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

**ADAM COMMUNITY CENTER,** a
domestic nonprofit corporation, a/k/a
**ADAM COMMUNITY (ACC),** a
Domestic nonprofit corporation**,**

      Plaintiff,                            **Case No: 18-13481**
                                            **Hon. Nancy G. Edmunds**

v.

**CITY OF TROY,** A Michigan municipal
Corporation, **TROY CITY COUNCIL, CITY
OF TROY PLANNING COMMISSION,
CITY OF TROY ZONING BOARD OF
APPEALS,** and **DANIEL AGAUAS, GLEN
CLARK, THOMAS DESMOND, DAVID
EISENBACHER, ORESTIS KALTSOUNIS,
PADMA KUPA, JAMES
 MCCAULEY,** in their official Capacities as
Members of the **TROY ZONING
BOARD OF APPEALS,**

      Defendants.

---

## PLAINTIFF'S BRIEF IN OPPOSITON OF DEFENDANT CLENN CLARK'S MOTION FOR SUMMARY DISPOSITION

By: Amy V. Doukoure (P80461)
**CAIR-MI LEGAL FUND**
30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247
adoukoure@cair.com

**COUNSEL FOR PLAINTIFF**

## STATEMENT OF ISSUES PRESENTED

1. Whether or not Defendant Glenn Clark should be stripped of a defense of qualified immunity when he knowingly and intentionally violated Plaintiff's First Amendment Rights of Religion and Assembly when Defendant Clark sought to discriminate against Plaintiff Adam Community Center on the basis of religion by denying Adam's requests for zoning variances while granting almost identical variances for non-Muslim places of assembly.

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Creighton*, 483 U.S. 635 (1987)

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242(1986)

*Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011).

*Barker v. Goodrich*, 649 F. 3d 428 (6th Cir. 2011)

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)

*Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007)

*Malley v. Briggs*, 475 U.S. 335 (1986)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986)

*Pearson v. Callahan*, 555 U.S. 223 (2009)

*Redding v. St. Eward*, 241 F.3d 530 (6th Cir. 2001)

*Saucier v. Katz*, 533 U.S. 194 (2001)

## OTHER AUTHORITIES

Fed. R. Civ. Pro. Rule 56

# I.    PROCEDURAL HISTORY

Plaintiff Adam Community Center ("Adam") filed an eleven-count complaint against the City of Troy and its various departments, and the Defendant Glenn Clark among others. In its Complaint, Adam alleged violations of the Federal Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc, violations of the State of Michigan's Religious Land Use and Institutionalized Persons' Act, and various Constitutional Claims under 42 U.S.C. §1983. The allegations in the Complaint stem from Adam's application for a variance to the City of Troy's Zoning Ordinance and the Zoning Board of Appeals denial of the same on June 18, 2019 as well the City of Troy's historical interactions with Adams during its pursuit of a religious place of worship inside the city of Troy.

Subsequently, this Court dismissed Adam's state law claims, without prejudice and all Defendants filed a Motion to Dismiss all of the counts in Plaintiff's Complaint pursuant to FRCP 12(b)(6) and FRCP 56. After holding oral arguments on Defendants' Motion, this Court issued an Order, denying in part and granting in part Defendants Motion.[1]

That Order resulted in Counts I-IV were Dismissed against Defendant Clark, and it was reiterated that the Court had already declined to exercise its supplemental

---

[1] ECF No. 9

jurisdiction over Plaintiff's State Law Claims. That Order further failed to dismiss Defendant Clark based Defendant's Clark's claim of qualified immunity.

## II.    STATEMENT OF THE FACTS

1.     Plaintiff, Adams Community Center (hereinafter "Adam" or "Plaintiff"), is a non-profit religious organization organized under the laws of the State of Michigan. **See Exhibit A**.

2.     Adam's stated mission and purpose is to establish a center for increasing knowledge through proper research, education and training in the community for the youth and adults; To establish peace through proper guidance; to establish a homogenous atmosphere for all ethnic groups. **Exhibit A**.

3.     Adams has applied three times for variances to the zoning ordinance for the city of Troy. **Exhibit B**.

4.      Adam's first application was for a community center, which resulted in an approval, and later denial on the same application. **See generally Exhibit B(1)**, See Also. Amin Dep. pps. 26 Ln. 7 -5 and Amin Dep. pps. 29 Ln. 25 – pps. 32 Ln. 22**.**

5.     Following the approval of the variance for the community center, a resident of the city of Troy emailed someone from the city and suggested that because Adam was a Muslim community they were actually going to use the community center as a place of worship. **See Exhibit D**.

6.     As a result of that email, and because Adam indicated that it would have a place for people to pray in the community center, Adam was forced to have a hearing to determine whether the community center was going to be a place of worship or a community center. **See Exhibit E**.

7.     This is despite the fact that the City of Troy has a community center that hosts Sunday religious services for Christians every week. **See Exhibit F.**

8.     Adam's second application was for the same property in its first application for variance, but the nature of use was changed to a religious assembly place, an application which was never heard by the city of Troy ZBA. **See generally B(2)**, See Also Amin Dep. pps.32 Ln.23 – pps. 33 Ln. 8.

9.     Adam's third application, is the subject of this instant litigation and was for a religious place of worship on the property which is also the subject of this instant litigation. **See Generally B(3)**.

10.     For the past 10 to 20 years Defendant Glenn Clark has been a member of the City of Troy Zoning board of Appeals ("ZBA") and the ZBA's chairman for at least the last four terms. Clark Dep. pps 3, ln 19-20 and p. 4 ln 12-13.

11.     As a result of sitting on the ZBA, Defendant Clark has had occasion to make determinations regarding the variances requested by Adam in the past and has on that occasion denied a variance to Adam. Clark Dep. pps.13 ln 16-21 and pps. 14 ln 4-9.

12.     Defendant Clark receives copies of the application for variance, including the one at issue in this instant matter, that are to be determined at any ZBA hearing, by email from the city prior to the ZBA hearing. Clark Dep. pps. 9 ln 18-23.

13.     In fact, the city emails the ZBA hearing applications for the next hearing at least five (5) days in advance of the Tuesday hearing. Clark. Dep. pg. 16-22.

14.     Defendant Clark has the opportunity to read the ZBA application packets along with any public comments prior to the ZBA meeting and hearing taking place, and sometimes he reads them and sometimes he doesn't. Clark. Dep. pps. 12 Ln. 13-21.

15.     In addition to having the information regarding the ZBA packets in advance, from time to time Defendant Clark has, a part of his official duty as member of the ZBA, talks to other city employees such as Paul Evans regarding items set for hearing before the ZBA prior to the hearing taking place. Clark Dep. pps. 7 Ln. 9-17.

16.     However, Defendant Clark asserts that he did not look at any of the variance applications for the June 2018 ZBA hearing prior to the start of the ZBA meeting that day. Clark Dep. pps. 15 Ln. 9-11.

17.    Defendant Clark makes a determination of whether or not an applicant meets the "pretty clear" five areas of potential hardship listed in the ZBA Application by being briefed by the city employees,  looking at the four page application and reading the "words" of the application packet. Clark Dep. pps. 16-12 and pps. 18 ln 4, and pps. 17 ln 19-25.

18.    Defendant Clark cannot state a single factual basis for why Plaintiff's application for a variance was denied, cannot state a single factual basis for why any aspect of Plaintiff's application failed to meet the criteria as outlined by the ZBA application and Ordinance, but rather stated that his decision was "logical" because he is aware of this building and its characteristics because he is a resident of the city of Troy who drives past it, and further that he didn't "believe" that this application fit within the criteria even though he couldn't give any further explanation. Clark Dep. pp.17 ln 15, and pp. 20 Ln. 20-24, and pp. 22 Ln. 11-23.

19.    Specifically, the Zoning Board of Appeals Application sets forth five (5) criteria of practical difficulty that the applicant must address, and clearly states that the "practical difficulty must be clearly related to as many of the 5 standards below as possible." **EXHIBIT H**.

20.    In the instant matter, Defendant Clark avers that Adam's application did not meet the criteria set forth in criteria "b" in the statement of practical

difficulty, because, in his judgement, it didn't fit the words that the criteria said. Clark Dep. pp. 21 Ln. 18-25 through pp. 22 Ln. 1- 23.

21.     Criteria b as set forth in the Statement of Practical Difficulty as stated in Troy's ZBA Application reads "[T]he characteristics which make compliance with the dimensional requirements difficult must be related to the premises for which the variance is sought and not some other location. **EXHIBIT H** paragraph b.

22.     Despite admitting that Adam's application was about the subject location and not another location, Defendant Clark, still believed, without explanation, that in his judgment Adam's application failed criteria b. Clark Dep. pp. 22 Ln 1-12.

23.     Clark has stated that he believes that he is a "strict constructionist" and a "rule of law type person," and is reluctant to grant variances. 6/19/18 ZBA Meeting Tr. p. 37, Ln. 5-14.

24.     Indeed, Defendant Clark, during the ZBA hearing on Adam's application for a variance on 06/19/2018 repeatedly accused Adam of asking the ZBA to break the law. 06/19/18 Meeting Tr. P. 121 Ln. 14-20; and pg.122 Ln 14-17.

25.     Indeed, Mr. Clark stated affirmatively that Adam was asking him to "severely break the law." Clark Dep. pg. 125 ln 23-25.

26.     In fact, Defendant Clark equated Adam's application for a variance within the scope of the zoning laws of the City of Troy to himself speeding in violation with state and city ordinances because "he felt like" he could do whatever he wanted. 06/19/18 ZBA Meeting Tr. pp120 Ln, 25- pg. 121 Ln 6.

27.     Defendant Clark also stated that he cannot grant variances which do not fit within the zoning. *Id.*

28.     Defendant Clark further stated that he denies variances because the community "didn't 100% agree to it and there was neighborhood opposition to it." Clark. Dep. Tr. 125 ln. 4-6.

29.     Furthermore, during the ZBA hearing in June 2018, Defendant Clark and other members of the ZBA, stated that it was impermissible for the ZBA to look at the intended of the project before them and allow any potential value of the use persuade their vote on the variance. 06/19/18 Meeting. Tr.  pp. 133 Ln 20 – pg.134 Ln. 16.

30.     Mr. Clark avers that he does not give preferential treatment to businesses even if they will be lucrative and bring many jobs. 06/19/18 ZBA Meeting Tr. p. 13, Ln 1-8 and pg. 133- Ln. 20- pg. 134 ln 9 and P. 139, Ln. 19-22.

31.     Furthermore, Clark stated that Adam could use the property at issue without a variance if Adam constructs a building that complies with the zoning ordinance 06/19/18 ZBA Meeting Tr. pps. 138 Ln 12.

7

32.     However, Defendant Clark did not consider himself a strict constructionist when in December 2018 Defendant Clark defended a commercial business's right to a variance by proclaiming that it was a wonderful project that could possibly be a beautiful restaurant or a wonderful retail space that was being held up by "zany" manmade pitfalls caused by the city's Big Beaver Master Ordinance. 12/18/2018 Meeting Tr. pp. 58 Ln. 22 – pp. 60 Ln. 7.

33.     In the hearing on that request for a zoning variance, the Petitioner had a new project, on a completely vacant parcel of land, and was seeking variances, nearly identical to those requested by Adams in its 06/18 hearing, including variances seeking a complete waiver of all of the setback requirements from the building that it was seeking to build. See **Exhibit G.**

34.     Indeed, Defendant Clark voted in favor of that very large-scale commercial variance, without ever once stating that the petitioner had asked him to break the law. 12/18/18 ZBA Meeting Tr. pps. 60 Ln. 8.

35.     Despite this December 2018 vote in favor of a large-scale variance, and the overwhelming approval of that variance, Defendant Clark could not recall at his deposition the ZBA ever granting such an extreme variance where all of the setback requirements were waived. Clark. Dep. pg. 39, Ln. 6-13.

36.     Despite the land subject to the Dec. 18 hearing being completely vacant, and the petitioner having the ability to construct a building the size and shape

necessary to comply with the zoning ordinances, Defendant Clark does not question the petitioner at all regarding making adjustments to the proposed building, or fails to mention at all petitioner's ability to make a smaller building on the land. See generally 12/18/18 ZBA Meeting Transcript.

37.     Defendant Clark also admitted in the December 18 hearing, that the issues that the petitioner had did not run with the land. 12/18/18 ZBA Meeting Tr. pps. 59 Ln. 7-12.

38.     However, Defendant Clark avers that applications for a variance where there is not a problem that is running with the land are routinely denied by the ZBA, and further basing his decision to deny Adam's variance on the fact that there was no practical difficulty running with the land. Clark Dep. pp. 54, Ln. 3-7 and Clark Dep. p. 48, Ln 15-19.

39.     In fact, during the ZBA Hearing in June 2018 for Adam's petition for a variance to be approved it must a "very specific to a hardship with the land, not a want, but a hardship. Clark Dep. 125 Ln. 16-18.

40.     In addition to the irregularities in the way that Adam was treated in June of 2018 and the commercial petitioner was treated in the December of the same year, Defendant Clark also spoke about several Christian religious places of worship that he affiliated himself with while addressing Adam's request for a variance. 06/19/18 ZBA Meeting Tr. pg. 59 Ln.5-9; and pg. 123 Ln.12-16; and pg. 123 Ln. 24-25; and

Page 124 Ln. 19-20; and pg. 135 Ln 8-16; and pg. 135 ln. 17-20; and pg. 138 Ln. 17-21 and pg. 141 Ln 11-21.

41.    Indeed, Defendant Clark spoke at length about one of the largest Christian churches in the city of Troy stating that he was a member, and that the church probably got the last usable parcel of land in the City of Troy to build a place of worship on. 06/19/18 ZBA Meeting Tr. pg. 135 Ln. 8-20.

42.    It is also true that Defendant Clark, at the very beginning of the discussion on Adam's petition for variance, after counsel for Adam's brought to the ZBA's attention a similarly situated Christian church was able to recall very specific information about that church,  its ownership and the church's never having appeared before the ZBA in his nearly twenty-years of service on the ZBA while asserting that it was his church. 06/19/2018 Meeting Tr. pg. 58 ln. 24- pg. 59 Ln. 11.

43.    Another irregularity in the Defendant Clark's assertions is when he cautioned the entire audience of the June 2018 hearing twice that they were to remain calm if they heard things that they didn't like, but did not provide any similar caution any members of the audience of the December 2018 hearing. See 06/19/18 ZBA Meeting Tr. pg.60 Ln.14- pg. 61 Ln. 15; and pg. 126 Ln. 12 compared to 12/18/18 ZBA Meeting Transcript.

44.     Defendant Clark further stated that he had knowledge of the protections afforded by the First Amendment. 06/19/2018 ZBA Meeting Tr. pg. 60 Ln. 24pg 61 ln. 5.

45.     He further threatened people that he could force individuals from the chamber in the June 2018 hearing, but made no similar threats during the December 2018 hearing. See 06/19/2018 ZBA Meeting Tr. pg. 61 Ln. 12-15, as compared to 12/18/18 ZBA Meeting Transcript.

46.     Additionally, Defendant Clark placed a three minute time limit on comments from community members at the public hearing in June of 2018 concerning Adam's variance request, but issued no such time limit on any of the comments for the other petitions that day, or any of the petitions in the December 2018 hearing. See 06/19/18 ZBA Meeting Tr. pps.57 Ln. 11-23 compared to 12/18/18 ZBA Meeting Transcript.

47.     During his statements during deliberation after closing the public hearing portion of the June 2018 meeting, Defendant Clark stated that he did not believe there was any portion of land left in the City of Troy that would fit Adam's needs, because otherwise they would not be coming in front of the ZBA to request a variance. 06/19/19 ZBA Meeting Tr. pg. 134 Ln.16-21.

11

48.     Defendant Clark also stated that maybe there was a better parcel of land in a different community that could fit the needs of Adam. 06/18/18 Meeting Tr. pg. 125 Ln. 22-23.

49.     Adam's President, Dr. Nurul Amin stated that he believes that Defendant Clark's statements to Adams about breaking the law, and all of the Church's in Troy as well as his statements at the ZBA hearing that there is probably no place in Troy fit for this community, have made him feel unwelcome as a Muslim in Troy and further that the statements made by Defendant Clark showed that Defendant Clark did not like Muslims and treated them differently than others. Amin Dep. pg. 99 Ln 15-21.

## III.    STANDARDS OF REVIEW

### A. SUMMARY JUDGEMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475

U.S. 574, 587 (1986)(citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

When deciding a motion for summary disposition the courts have stated that "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The courts further state that "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id* (quoting Adickes, 398 U.S., at 158-159.).

## B. QUALIFIED IMMUNITY

Public officials who perform discretionary duties within the scope of their employment are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not a defense to liability; it is an absolute immunity from suit. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). Once a defendant asserts the doctrine of qualified immunity, the plaintiff bears the burden of satisfying a strict two-part test. *Barker v. Goodrich*, 649 F. 3d 428, 433 (6th Cir. 2011).

The plaintiff must show: (1) a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id*. These tests may be addressed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To find that a right is "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right. *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (internal quotation marks omitted). In the "light of pre-existing law [,] the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The

Supreme Court has admonished lower courts "not to define clearly established law at a high level of generality." *Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011).

### IV.    ARGUMENT

In the instant Motion for Summary Judgement, Defendant Glenn Clark bears the burden of showing that there is no genuine issue of material fact as to whether or not he acted in a discriminatory manner when making a determination on Plaintiff, Adam Community Center's application for a zoning variance on June 18, 2018. It is clear that Defendant has wholly and completely failed to  carry his burden because he has not provided a single shred of corroborated and substantiated evidence of his neutral purpose in making his decision and there are genuine issues of material fact as to whether or not Defendant Clark acted with discriminatory intent in violation of Adam's known constitutional right to assemble and worship in the city of Troy.

What is clear is that Adam can meet its burden under the both prongs of two prong test to determine whether or not Defendant Clark is entitled to qualified immunity. First, the right to assemble and worship is a well-established constitutional right and (2) the right was established at the time that Defendant Clark made his determination as to the Plaintiff Adam's petition in June 2018.

Defendant Clark in his own motion acknowledges that that the "Constitution clearly establishes that individuals have a right to be free from discrimination by the government that burdens a fundamental right such as the free exercise of religion or

that targets a religious group."[2] Furthermore, it is clear from his statements on the record at the June 2018 ZBA hearing that Mr. Clark is knowledgeable about the constitution and specifically the First Amendment which affords individuals and groups the right to worship their faith free from government intrusion. As such there is clearly no issue that second prong of the *Pearson* test is satisfied, and that Adam had a clearly established right at the time of the misconduct.

Adam avers that Defendant Clark violated this well-established constitutional right when he failed to properly, fairly, neutrally, and equitably decide Adam's petition for a variance and denied Adam the ability to establish the first and only Muslim place of worship in the city of Troy.

While Defendant Clark would like to assert that he is a man of the law, and that he was acting within his discretion and without animus towards Adams because of their Muslim faith, the evidence of his disparate treatment of Adams can be found in the discrepancies in the manner in which he dealt with Adams as opposed to the ways in which he made other determinations for non-Muslim assembly places; his repeated talking points about violating the law when Adams was really requesting a remedy within the scope of the law; by his repeated remarks about how the city of Troy has no land left for Adams and suggesting they look to other communities; and

---

[2] See generally Defendant Glenn Clark's Motion for Summary Judgment ECF No. 30 Filed 11/15/19 pg. 15-16

by his incessant talking about a multitude of Christian places of worship during the hearing that he himself was affiliated with.

In this Response to Defendant Glenn Clark's Motion for Summary Judgement, Adam is not required to convince this Court that it should prevail on the merits of its argument, but in fact Defendant Glenn Clark bears the burden of proving that all of the facts, taken as a whole, lead this court to no conclusion other than that Defendant Clark treated Adam the same as he had any other applicant before him, and therefore could not have acted to violate Adam's right. Defendant Clark assures this Court that because he says he was fair, and because he made several statements on the record that Adams was asking for too much, and further avers that because he did not openly make Islamophobic statements, that he surely was acting as a neutral decision maker.

However, there is ample evidence to show that a reasonable juror could make a legitimate inference after weighing the evidence that Defendant Clark in fact acted with discriminatory intent when deciding Adam's petition for a variance.

It is clear from the December 2018 ZBA hearing that Defendant Clark made several statements that contradict the express rationale he is now using to assert that his decision in Adam's June 2018 petition hearing was neutral and fair. For instance, in the December 2018 hearing, Defendant Clark asserts, regarding a variance for a commercial place of assembly, that there is "no issue running with the land" and still

states that the applicant is entitled to the variance. However, in Adams case at least twice at the hearing Defendant Clark stated that Adams was not entitled to a variance because there was no "issue running with the land." This assertion was later repeated by Defendant Clark in his deposition and discovery responses, as well as his motion in chief. This fact alone could lead a jury to infer that Defendant Clark treated Adams differently, unfairly and was acting with discriminatory intent when he voted on Adams petition.

Furthermore, Defendant Clark asserted that he is a man of the law, and that he strictly constructs the law, when it came to determining Adam's petition. However, in the December 2018 hearing for the non-Muslim place of assembly, Defendant Clark disparages that same law equating it to a mere man-made pitfalls getting in the way of business, and then votes to grant a variance of all of the set-back requirements for a commercial building that is not yet built. This fact too, could lead a reasonable juror to infer that Defendant Clark did not treat Adam fairly and further that Defendant Clark was acting with discriminatory intent.

Additionally, Defendant Clark stated to Adam at the June 2018 hearing that if they could construct a building that fit within the zoning requirements that Adam could have their place of worship. When it came to the December 2018 non-Muslim place of assembly however, Defendant Clark made no suggestion that the petitioner should try and locate a piece of land that his project would fit better on, nor did he

18

suggest that they build a smaller building to comply with the zoning regulations, despite the fact that the land itself was completely undeveloped, unlike the land at issue in this case, and the petitioner would have been more capable of fitting the zoning requirements. This fact could lead a reasonable juror to make an inference that Defendant Clark's different treatment of Adam and this petitioner was due to Defendant Clark's discriminatory intent.

Defendant Clark further made several statements during Adams petition hearing that Adam was asking the ZBA to break the law, or severely break the law by asking for a waiver of setback requirements that didn't allow parking in the setback. However, during the December 2018 hearing, when the petitioner was asking for the very same waiver of no-parking in setback requirements, Defendant Clark did not at any time mention that the petitioner was asking to break the law. A reasonable juror could determine that this equates to disparate treatment of the two similarly situated petitioners and thus Defendant Clark was acting with discriminatory intent.

It is also true that Defendant Clark stated that he can't consider the use of the property or the benefit to the community when making a determination of a request for variance. In fact, in Adam's case Defendant Clark stated that he was strictly forbidden from considering it. However, in the December 2018 hearing on the commercial business, he clearly bases his decision on what he construes as a

commercial benefit that will be brought by an "amazing" new restaurant. This clearly indicates that Defendant Clark has a preference for the type of use that was being suggested in the December 2018 petition, and that he let his own preference sway his discretionary decision-making. This fact could lead a reasonable juror to make an inference that Defendant Clark was acting with discriminatory intent when deciding Adam's petition.

Defendant Clark's clear preference for the "amazing" commercial business proposed in the December 2018 petition hearing, in light of his multitude of statements about all of the Christian churches he has been affiliated with over the years could be interpreted by a reasonable juror that his decision of Adam's petition was outside the scope of his lawful discretion, and was driven by an animus or dislike for Adam's proposed use. As such, a reasonable juror could determine this is further evidence of Defendant Clark's discriminatory intent.

On the date that Adam had its hearing in front of the ZBA in June 2018 there were two other petitions being heard, and in December 2018, there were likewise three petitions being heard. However, the only time that there was a time limit placed on public comments was during Adam's petition hearing. Furthermore, the only time that anyone was reminded about decorum and threatened to speak nice or be removed after Defendant Clark struck his gavel, was during Adam's petition. The fact that Defendant Clark set these time limits, made these threats and comments

was during Adam's petition could reasonably be seen as him expressing his biased view of the Muslim community, their manners, and their public behavior. There was no precipitous act that indicated that the Muslim, and non-Muslim community, that was there to support Adam would act in any way outside the scope of how others in the past had acted, yet Defendant Clark assumed as much. This is clear indication of his bias and animus towards the Muslim community.

It is clear that Dr. Amin took many of the words stated by Defendant Clark at the hearing as a threat to his community. Dr. Amin indicates that when Defendant Clark told him that they were breaking the law, that he felt threatened and unwanted in the city of Troy. This was the second time that Dr. Amin was in front of Defendant Clark, as Defendant Clark presided over both applications for variances requested by Adam that went in front of the ZBA.

In 2014, Adam had a variance approved to allow them to build a community center. It was only after there was a suggestion made by someone in the community that the community center would be used as a Muslim place of worship that Defendant Clark changed his vote to disallow the community center to go forward. Reasonable minds could determine that the change in his decision regarding the use of the building after the initial approval based on an email was due to his animus towards the religion of Islam. This is especially true since the City of Troy itself

21

operates a community center that holds a regular weekly prayer service for a Christian Church.

As such, Dr. Amin's interpretation of Defendant Clark's intent and his behavior towards Adam and its members during the course of the 5 years that Adam has been dealing with the ZBA is relevant material facts for the jury and could lead a reasonable trier of fact to conclude that Dr. Amin is more credible, and further that weighing all of the evidence presented by Dr. Amin in light of Defendant Clark's inconsistent statements and behaviors a juror could find that Defendant Clark was acting with discriminatory intent.

## V.   CONCLUSION

The case law on summary judgement is clear that when there is conflicting evidence of material facts such that a reasonable inference could be made in favor of the non-movant,  that that the mover is not entitled to summary judgement. Overall, there is ample evidence that Defendant Clark did not utilize the same standards or apply the zoning ordinance in Adam's request for a variance for a religious place of worship in the same manner as he did when making a determination on a similarly situated variance for a commercial business which was clearly more his flavor. Furthermore, it is evident that Defendant Clark did not treat the community members present to support Adams request for variance in the June 2018 hearing with the same dignity and respect, or under the same conditions as he

did the other members of the community present that day or those present at the December 2018 ZBA hearing.

Discrimination and discriminatory intent is not always preceded by outward violent or harassing statements. Despite Defendant Clark's defense that he didn't say anything negative towards Muslims, a finding of discrimination does not require that Defendant Clark have made openly and outward Islamophobic statements. Defendant Clark's assertion that he is not acting with discriminatory intent because he didn't espouse hateful rhetoric against Muslims if accepted would amount to an absolute defense against racism and bigotry for anyone with enough sense to be a closed mouth bigot and discriminate in actions alone. In this case, Defendant Clark's actions and words speak for him, and reasonable jurors could determine that the totality of his actions and words show that he acted with discriminatory intent towards Adam.

Often times, discrimination takes on more subtle forms, as in this case where Defendant Clark failed to treat Adams Community Center on equal terms as it has other non-Muslim applicants.

As such, there are still issues of material fact that require a weighing of the evidence where reasonable inferences could be made in favor of Adam's claim that Defendant Clark violated its constitutional rights. Therefore, Defendant Clark has not met his burden, and summary judgment in favor of Defendant Clark is not

appropriate in this matter. As such, Defendant Clark's motion should be denied in whole.

      **WHEREFORE**, Plaintiff, Adam Community Center, prays this honorable court:

A. Issue an Order Denying in all ways Defendant Clark's Motion for Summary Judgment;

B. Grant any further relief this Court deems just and equitable.

Dated: December 16, 2019            Respectfully Submitted,

                         **CAIR-MI LEGAL FUND**

                         /s/ Amy V. Doukoure
                         BY: Amy V. Doukoure (P80461)
                         30201 Orchard Lake Road, Suite 260
                         Farmington Hills, MI 48334
                         (248) 559-2247
                         adoukoure@cair.com

                         **COUNSEL FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2019 a copy of the foregoing was filed with the Court via the District's Electronic Case Filing System which will serve copies upon all parties of record in this matter.

/s/ Amy V. Doukoure