# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ADAM COMMUNITY CENTER, a domestic nonprofit corporation, a/k/a ADAM COMMUNITY (ACC), a domestic nonprofit corporation, | Case No. 18-13481 |
| | Honorable Nancy G. Edmunds |
| Plaintiff, | |
| v. | |
| CITY OF TROY, a Michigan municipal corporation, TROY CITY COUNCIL, CITY OF TROY PLANNING COMMISSION, CITY OF TROY ZONING BOARD OF APPEALS, and DANIEL AGAUAS, GLEN CLARK, THOMAS DESMOND, DAVID EISENBACHER, ORESTIS KALTSOUNIS, PADMA KUPA, DAVE LAMBERT, JAMES MCCAULEY, individually and in their official capacities as members of the TROY ZONING BOARD OF APPEALS, | |
| Defendants. | |
| _____/ | |

**ORDER AND OPINION ON DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT [30] [32]**

The first amendment to the Constitution begins: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." "These provisions, made applicable to the states by the due process clause of the fourteenth amendment, forbid government to burden the free exercise of any religion or to favor one religion over another." *Islamic Ctr. of Mississippi, Inc. v. City of Starkville, Miss.*, 840 F.2d 293, 294 (5th Cir. 1988).

In the City of Troy, Michigan, property owners seeking to establish a place of worship must comply with certain setback requirements outlined in the City's zoning

1

ordinance. These requirements are additional to the zoning rules for general commercial properties. According to Plaintiff, this means that a certain property may be fit for general commercial business use, but not for use as a place of worship, even though the only difference between the two proposed uses of the property is that people will use the place of worship to practice their religion. In this lawsuit, Plaintiff claims the City's zoning ordinance, and the City's conduct in denying Plaintiff's request for a variance from the zoning ordinance so that Plaintiff could use an existing commercial building as a mosque and community center, violates Plaintiff's constitutional rights.

Pending before the Court are motions for summary judgment filed by the individual members of the zoning board of appeals (collectively, the "Individual Defendants")[1] who voted to deny Plaintiff's variance request. (ECF Nos. 30, 32.).[2] The Individual Defendants seek summary judgment on Plaintiff's claims asserted directly against them pursuant to Federal Rule of Civil Procedure 56 on the basis of qualified immunity or quasi-judicial immunity. On March 4, 2020, the Court held a hearing in connection with the motions.

While the record at this stage suggests Plaintiff's claims against the Entity Defendants may have merit, that issue is not presently before the Court. The only issue before the Court is whether the Individual Defendants must face personal liability for their vote to deny Plaintiff's request for a variance. Because the Court finds that they should not, the Individual Defendants are entitled to summary judgment on Plaintiff's claims

---

[1] The Individual Defendants are Daniel Agauas, Glen Clark, Thomas Desmond, David Eisenbacher, Orestis Kaltsounis, Padma Kupa, Dave Lambert, and James McCauley.
[2] The remaining Defendants—the City of Troy, Troy City Council, City of Troy Planning Commission, and City of Troy Zoning Board of Appeals (collectively, the "Entity Defendants")—have not moved for summary judgment.

2

against them in their personal capacity. Accordingly, for the reasons set forth below, the Court **GRANTS** Defendants' motions.

I. BACKGROUND

A. Plaintiff's Application for Variance

Plaintiff Adam Community Center is a religious non-profit organization based in the City of Troy, Michigan.[3] Plaintiff describes its members as individuals and families who reside and work within the City. Plaintiff specifically caters to members of the Islamic faith and currently provides religious and nonreligious classes that are open to all community members in an office building located in the City. However, Plaintiff alleges it is unable to hold religious worship and holiday services at its current facility, and that there are no Muslim places of worship within the City. As a result, Plaintiff claims its community members must travel to various places outside of the City to engage in prayer and worship services.

Plaintiff alleges that since 2013 it has unsuccessfully attempted to obtain or construct a mosque or Muslim place of worship within the City. This lawsuit arises out of Plaintiff's unsuccessful efforts, and in particular, the City's most recent denial of a variance application submitted by Plaintiff to utilize an existing commercial building as a place of worship. And Defendants' motions concern only the Individual Defendants' conduct in denying this particular variance application.

In its Complaint, Plaintiff states that it decided to purchase an existing commercial property located at 3635 Rochester Road, Troy MI 48085 to serve as its mosque and community center. The commercial property formerly served as a DSW Warehouse and

---

[3] Additional background information is discussed in detail in the Court's Order and Opinion Granting in Part and Denying in Part Defendants' Motion to Dismiss. (ECF No. 9.)

3

a hibachi steakhouse. Plaintiff claims it requires a building that can serve as both a community center and a mosque because there are only a few days of the week during which actual worship will take place, and that this particular property fits its needs.

The property at issue is flanked on two sides by other commercial properties, is fronted on one side by a major road, and the rear of the property abuts a line of residential properties. The property is fully developed as a commercial building, half of which is currently fit for use as a restaurant and banquet hall while the other half functions as an empty warehouse. The property is located within the City's general business district and is zoned for use as a general commercial building. According to Plaintiff's interpretation of the City's zoning regulations, places of worship are a use that is permitted as a matter of right within an area zoned for general business. Plaintiff alleges that the building is also permitted for the A-3 type of use, which Plaintiff contends permits the building to be used for large gatherings or assembly.

The property has 126 parking spaces—one more than is required by City's zoning regulations for use of the property as a restaurant. The parking lot and usable parking spaces currently reach the property lines on three sides of the property. The fourth property line abuts the City sidewalk and ingress to the parking lot. Plaintiff alleges that there is presently no setback for the parking spaces even though the zoning regulations require a thirty-foot setback. In other words, the parking spaces run the entire length of the property line that abuts the residential district. And the only buffer between the commercial property and the residential district is a six-foot brick wall.

Although places of worship are permitted within general business districts, the City implemented special additional zoning regulations that apply to the use of a commercial

building as a place of worship. Zoning ordinance Section 6.21(E) requires that all sides of a building utilized as a place of worship have a minimum of a fifty-foot setback. Section 6.21(F) goes on to forbid parking in the setback areas that front areas zoned for residential purposes. It also requires that any such setback area be landscaped. Plaintiff claims that it is impossible for it to use the existing building and comply with the zoning ordinances for religious places of worship because: (1) there presently exists only a ten foot setback in the front of the building that abuts the commercial road; (2) there is only a forty eight foot setback in the back of the building that is closest to the residential property; (3) there is no setback on the north side of the building that abuts another commercial property because that is not required for commercial buildings; and (4) compliance with the limitations on parking within the setback requirement for the rear and side yards of the existing building would eliminate nearly all of the necessary parking spaces that are required under the zoning ordinance for a place of worship of the size Plaintiff proposes.

Because Plaintiff allegedly could not comply with the City's zoning regulations for places of worship, Plaintiff applied for a variance. After receiving initial approval of its variance application by City employee Paul Evans, Plaintiff submitted its application for approval to the City of Troy Zoning Board of Appeals (the "ZBA").

### B. Consideration of Plaintiff's Variance Request by the ZBA

The ZBA is a group of seven people appointed by the Troy City Council to make decisions on requests for variances from the City's zoning regulations. Defendant Clark is the chairman of the ZBA and has served on the ZBA for over ten years. Defendant Clark states that prior to a hearing to consider a variance, the board members receive a packet of information regarding the particular application for a variance from the Troy City

5

Administration. The individual board members then review the packet of information, listen to the presentation at the hearing, and take comments from members of the general public in attendance at the hearing. The board members are also permitted to openly debate the application and to raise any questions or concerns they may have. Once any debate is completed, the members vote on the variance application.

In deciding whether to approve a variance, the board members consider whether the applicant satisfies five items of potential hardship listed in the zoning ordinance. These items are sometimes referred to by the parties as the practical difficulty factors. To learn about the exceptional characteristics of the property for which a variance is sought, the board members claim that they read the applicant's package, balance the requested variance against five practical difficulty factors, and assess whether compliance with the dimensional requirements of the zoning ordinance is more difficult than the majority of properties in the same district. Exceptional characteristics of the property considered by the board members in connection with variance applications include, but are not limited to, exceptional narrowness, shallowness, smallness, irregular shaped topography, vegetation, and other characteristics. Defendant Clark testified that he does not routinely state findings regarding each of the five factors because the application can be denied if any one of them are not in compliance.

In its application, Plaintiff did not seek a variance in order to modify the existing footprint of the building or to address physical exceptional characteristics of the property. Instead, Plaintiff's application sought a variance from the setback regulations specifically applicable to places of worship.

6

On June 19, 2018, the ZBA held a public hearing on Plaintiff's variance application. Several community members as well as Plaintiff's counsel spoke at the hearing. During the debate portion of the meeting, Defendant Kuppa raised a question about whether the Religious Land Use and Institutionalized Persons Act ("RLUIPA") impacted the ZBA's analysis. The ZBA was instructed by the City Attorney that it should not consider RLUIPA or Plaintiff's religion, but only to apply the standards as they would to any variance.

Ultimately, the ZBA unanimously denied Plaintiff's application. Plaintiff alleges that a number of irregularities occurred at the hearing. For example, Plaintiff claims that the chairman of the ZBA, Defendant Glenn Clark displayed bias and animus against the prospective mosque during his remarks about Plaintiff's application. And Plaintiff claims the president's comments were directed to the other board members in order to coerce them to deny Plaintiff's application. Plaintiff also alleges that the ZBA improperly, and against precedent, restricted the time for public comment to three minutes per person. Plaintiff further contends it was improper for the ZBA to not issue findings of fact or identify a compelling government interest as the reason for its denial of Plaintiff's application.

Following the ZBA's denial of Plaintiff's variance application, on November 8, 2018, Plaintiff initiated this lawsuit. In its complaint, Plaintiff asserts claims under RLUIPA as well as under 42 U.S.C. § 1983 based on allegations that Defendants placed a substantial burden on Plaintiff's free exercise of religion and violated Plaintiff's constitutional rights. As to the Individual Defendants, in Counts V-X, Plaintiff asserts various violations of constitutional rights based on the Individual Defendants conduct in voting to deny Plaintiff's variance application. Specifically, Plaintiff claims the Individual Defendants voted to deny Plaintiff's variance application because of animus to Plaintiff's religion.

7

The Individual Defendants now move for summary judgement on Plaintiff's claims against them in their individual capacity. They contend they are entitled to qualified immunity, or alternatively quasi-judicial immunity, from liability on Plaintiff's claims in their individual capacity. The Entity Defendants have not moved for summary judgment, and notwithstanding the resolution of this motion, Plaintiff's RLUIPA claims will still be pending. In addition, the United States Department of Justice has initiated its own lawsuit against the City related to these facts and its claims are still being litigated.

This Court initially addressed the Individual Defendants' qualified immunity defense at the motion to dismiss stage. The Court found that determining the issue of qualified immunity was premature at the motion to dismiss stage:

> Here, Plaintiff alleges that the Individual Defendants denied Plaintiff's variance application on the basis of animus to the Islamic faith rather than any legitimate or neutral purpose. There can be no dispute that at all times pertinent to this action it was clearly established that individuals have a right to be free from discrimination by the government that burdens a fundamental right such as the free exercise of religion, *see Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531-32, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), or that targets a suspect class such as a religious group, *see City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Plaintiff pleads sufficient facts to allege that the Individual Defendants denied Plaintiff's variance request and strictly enforced the zoning ordinance for the purpose of discriminating on account of religion. *See Muslim Cmty. Ass'n of Ann Arbor & Vicinity*, 947 F.Supp.2d at 772 (denying individual board trustees defendants' motion to dismiss based on qualified immunity where complaint alleged that the individual trustees acted for the purposes of discriminating against religion). Therefore the Individual Defendants are not entitled to dismissal based on qualified immunity at this stage of the proceeding. However, the Individual Defendants are in no way foreclosed from reasserting their qualified immunity defense with a more developed record on summary judgment.

*Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887, 905 (E.D. Mich. 2019). Discovery has progressed in this case and the issue of whether the Individual Defendants are entitled to qualified immunity is ripe for consideration.

8

## II. STANDARD

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In addition, once the moving party has met its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017). The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment and show that a genuine issue for trial exists—i.e., that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

## III. ANALYSIS

The Individual Defendants contend they are entitled to summary judgment on Plaintiff's claims on the basis of either qualified or quasi-judicial immunity. Each of these defenses is addressed below.

**A. Qualified Immunity**

9

The doctrine of qualified immunity shields government officials performing discretionary functions from individual liability as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1035 (6th Cir. 1992). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Qualified immunity is an affirmative defense. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). The defendant "bears the burden of pleading the defense, but the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Id*. In other words, once the defendant raises qualified immunity, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Id.*; *see Estate of Hill*, 853 F.3d at 312.

"For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Saylor v. Bd. of Educ. of Harlan Cty., Ky.*, 118 F.3d 507, 515 (6th Cir. 1997) (emphasis in original) (citation omitted). The unconstitutionality of an act

10

must be "clear in regard to the official's particular actions in the particular situation." *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir. 1991), *abrogated on other grounds as recognized in Virgili v. Gilbert*, 272 F.3d 391, 395 (6th Cir. 2001); *Wilkins v. Jakeway*, 44 F. App'x 724, 729 (6th Cir. 2002).

"At the summary judgment stage, a plaintiff may not rely on his pleadings. *Totten v. Caldwell*, No. CIV.A. 11-12485, 2012 WL 3965045, at *2 (E.D. Mich. July 31, 2012), *report and recommendation adopted*, No. 11-12485, 2012 WL 3964989 (E.D. Mich. Sept. 11, 2012). Rather, the Court must consider whether 'the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *See Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 647 (6th Cir. 2013).

Here, Plaintiff argues the Individual Defendants are not entitled qualified immunity because: (1) Plaintiff's right to assemble and worship is a well-established constitutional right, and (2) the right was established at the time the Individual Defendants made their determination as to Plaintiff's variance application. Plaintiff further contends that the Individual Defendants are not entitled to qualified immunity because their straightforward enforcement of a zoning ordinance or denial of a variance application, if done with intent to discriminate based on religious animus, establishes a violation of a fundamental right.

The Individual Defendants do not challenge Plaintiff's general proclamation of the clearly established constitutional right to uninfringed religious expression. Indeed, there is no real dispute among the parties that the right to assemble and worship is a well-established constitutional right. There is also no real dispute that it would be objectively unreasonable for a government official to deny a variance application because of animus

11

towards the religion of the applicant, or with intent to discriminate against the applicant on the basis of religion. In fact, this Court already addressed that proposition. *See Adam Cmty. Ctr.*, 381 F. Supp. 3d at 905. But acceptance of those general principles is not sufficient for Plaintiff to meet its burden here.

The issue here is, first, whether Plaintiff presents sufficient evidence to establish that the Individual Defendants should face personal liability on Plaintiff's claims because they knew or should have known that their vote to deny Plaintiff's variance application would violate Plaintiff's constitutional rights. The second issue, and the more disputed issue, is whether Plaintiff presents sufficient evidence indicating the Individual Defendants denied Plaintiff's variance application because of animus towards Plaintiff's religion. In other words, the Court must determine whether Plaintiff presents sufficient evidence to establish that the Individual Defendant's conduct in voting to deny Plaintiff's variance application was objective unreasonable based on clearly established precedent. Having considered the entire record before the Court, the Court finds Plaintiff fails to meet its burden to overcome the Individual Defendants' qualified immunity defense.

The Court will assume for the purposes of the Individual Defendants' motions that Plaintiff can establish the zoning ordinance, on its face or as applied, violates Plaintiff's constitutional rights. The Court will also assume that the ZBA's vote to deny Plaintiff's variance application violated Plaintiff's constitutional rights. Resolving these threshold issues, which go to the ultimate merits of Plaintiff's claims against the Entity Defendants, is not necessary to determine whether the Individual Defendants are entitled to qualified immunity. However, to prevail on Counts V – X against the Entity Defendants, Plaintiff

12

will need to present sufficient evidence to establish actual violations of its constitutional rights.

Assuming Plaintiff can establish its constitutional rights were violated by the ZBA's decision and handling of the variance application, the Court finds Plaintiff fails to produce sufficient evidence to establish that the Individual Defendants' conduct violated Plaintiff's clearly established rights of which a reasonable person would have been aware. The record does not present sufficient evidence to establish that the Individual Defendants knew or should have known their straightforward application of the seemingly legal zoning regulations, which impose different setback requirements on places of worship and places of business, would violate Plaintiff's constitutional rights. And Plaintiff provides no legal authority clearly establishing that a government official violates a citizen's right to freedom of religion when it enforces an apparently valid zoning ordinance for facially neutral reasons that may or may not interfere with the citizen's right to express her religion.

Moreover, Plaintiff fails to present sufficient evidence to establish that each of the of the Individual Defendants, in voting to deny Plaintiff's variance application, acted with discriminatory intent or religious animus such that that their conduct was objectively unreasonable. Plaintiff points to the following evidence which it contends amounts to an inference of intentional religious discrimination sufficient to overcome Defendants' qualified immunity defense:

(1) The ZBA's approval and handing of a variance application in December 2018 for a commercial property as compared to the treatment of Plaintiff's application in June 2018;

(2) Defendant Clark's comments at the June 2018 hearing suggesting that a variance request is akin to asking to "violate the law" with respect to Adam's request for a variance, in contrast to Defendant Clark's December 2018 description of the applicable regulations as a "manmade problem";

13

(3) Defendant Clark's question to Plaintiff at the June 2018 hearing: "isn't there a better parcel available somewhere maybe in this community maybe somewhere else that would not require the extreme variances being sought?";

(4) The ZBA's limitations on and comments to the audience members at the June 2018 hearing;

(5) The failure of the ZBA to formally state all of its reasons for denying the variance;

(6) The Individual Defendants' questions and comments at the hearing, including questions and comments concerning potential issues with Plaintiff's proposed use of the property, such as parking, traffic, and child safety concerns, even though no evidence was presented on those issues at the hearing; and

(7) Defendant Kuppa's articles and blogs discussing issues related to religion and Muslims, which Plaintiff claims should be interpreted as being anti-Islam.[4]

While this evidence, together with a more developed record, may ultimately support Plaintiff's claims against the Entity Defendants, it does not establish that each of the Individual Defendants' vote to deny Plaintiff's variance application was based on animus towards Plaintiff's religion. More importantly, it does not establish that each of the Individual Defendants acted objectively unreasonable under the circumstances. Accordingly, based on the record presently before the Court, the Court finds that the Individual Defendants are entitled to qualified immunity.

However, in finding that the Individual Defendants are entitled to qualified immunity, the Court cautions that its decision here should in no way be construed as a finding that Plaintiff's constitutional rights were not violated by the ZBA's decision, or as absolving the ZBA, the City, or any of the Entity Defendants from potential liability. Issues such as whether the zoning ordinance on its face or as applied to Plaintiff violates

---

[4] The Court reviewed the articles and finds no reasonable reading could lead to an inference that Defendant Kuppa holds animus towards the Islamic faith. If anything, the articles provide evidence of Kuppa's support for Muslims and for religious expression.

14

Plaintiff's constitutional rights are not presently before this Court. The only issue presented here is whether these seven government officials should face liability in their individual, personal, capacity for the performance of their official duties. Under the facts and circumstances here and based on the record before the Court on summary judgment, the Court finds that they should not.

### B. Quasi-Judicial Immunity

The Court now turns to the Individual Defendants' quasi-judicial immunity defense. The doctrine of judicial immunity shields judges from liability for actions taken in a judicial capacity. *See Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997). Underlying the doctrine is the notion that "most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Forrester v. White*, 484 U.S. 219, 227 (1988). Judicial immunity is absolute with regard to claims relating to the exercise of judicial functions, *see Antoine v. Byers & Anderson*, 508 U.S. 429, 433 n. 8, (1993), but it does not apply to actions taken outside the judge's judicial capacity. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).

The Supreme Court has extended the doctrine of absolute judicial immunity to some officials who are not judges, but who "perform functions closely associated with the judicial process." *See Flying Dog Brewery, LLLP v. Michigan Liquor Control Comm'n*, 597 F. App'x 342, 347 (6th Cir. 2015) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985)). The level of immunity granted to various public officials is adjusted because it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s the] immunity analysis. *Id.* Thus *quasi-judicial immunity* "attaches to public

15

officials whose roles are functionally comparable to that of a judge." *Id.* (quoting *Keystone Redevelopment Partners, LLC v. Decker,* 631 F.3d 89, 95 (3d Cir. 2011)).

To determine whether a public official is entitled to quasi-judicial immunity, the Court must examine "the nature of the functions with which a particular official or class of officials has been lawfully entrusted," and "evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* at 347–48 (6th Cir. 2015) (quoting *Forrester*, 484 U.S. at 224). The Court considers a non-exhaustive list of factors to determine whether a public official should be afforded quasi-judicial immunity:

(1) the need to assure that the individual can perform his functions without harassment or intimidation;

(2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

(3) insulation from political influence;

(4) the importance of precedent;

(5) the adversary nature of the process; and

(6) the correctability of error on appeal.

*Id.* The Supreme Court has "been quite sparing in [its] recognition of absolute immunity," and has declined "to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991) (internal quotation marks and citation omitted). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.* at 486–87. Consequently, the burden is on the officials seeking quasi-judicial immunity to demonstrate that public policy requires an exemption of this scope. *See Flying Dog Brewery, LLLP*, 597 F. App'x at 348.

16

Here, the Individual Defendants fail to meet their burden to establish that they are entitled to quasi-judicial immunity. As an initial matter, the Court observes that the Sixth Circuit has not expressly addressed whether members of a zoning board ruling on a variance application perform quasi-judicial functions protected by judicial immunity. Other courts around the country appear split in their application of judicial immunity to similar boards. *Compare Omnipoint Corp. v. Zoning Hearing Board of Pine Grove*, 181 F.3d 403, 409 (3rd. Cir. 1999) (holding that in ruling on a zoning permit application, zoning boards perform a quasi-judicial function under the six factors and are therefore entitled to quasi-judicial immunity for their decisions); *Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633, 661–62 (E.D. Pa. 2003) (holding that individual zoning board members were entitled to quasi-judicial immunity on claims that they selectively enforced ordinance requiring that medical clinics must be located on minimum three acre plots to prevent operation of an abortion clinic); *Grace Church of Roaring Fork Valley v. Bd. of Cty. Comm'rs of Pitkin Cty., Colorado*, 742 F. Supp. 2d 1156, 1168 (D. Colo. 2010) (finding that individual members of county board of commissioners were entitled to quasi-judicial immunity for their conduct in denying application for special use permit to construct a new church) *with Rodrigues v. Vill. of Larchmont*, N.Y., 608 F.Supp. 467, 475—76 (S.D.N.Y. 1985) (holding that members of village board of zoning appeals was not entitled to quasi-judicial immunity); *Chabad Lubavitch of Litchfield Cty., Inc. v. Borough of Litchfield, Connecticut*, 213 F. Supp. 3d 329, 332–34 (D. Conn. 2016) (same); *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 Fed.Appx. 367, 374 (5th Cir. 2015) (refusing to recognize quasi-judicial immunity for city council members for their denial of a land development plan application).

17

Recently, in *Flying Dog Brewery, LLLP*, the Sixth Circuit observed that the application of quasi-judicial immunity to state governmental boards should be considered on a case-by-case basis. *See Flying Dog Brewery, LLLP*, 597 F. App'x at 349 (explaining "we expressly do not consider whether quasi-judicial immunity is warranted for other factual situations the Administrative Commissioners may face, nor do we consider whether the Hearing Commissioners who suspend or revoke liquor licenses in disciplinary cases are entitled to quasi-judicial immunity. Those questions are not before us.")

In addition to the lack of precedent supporting the application of quasi-judicial immunity to zoning board members, the Individual Defendants fail to produce sufficient evidence to establish that they are entitled to judicial immunity under the circumstances here. In particular, the Individual Defendants present no evidence concerning the third factor, insulation from political influence, or the fourth factor, the importance of precedent in making their decisions. The Individual Defendants also fail to establish that the remaining factors lean in their favor such that they are entitled to quasi-judicial immunity for their decision to deny Plaintiff's variance application (or all variance applications for that matter). Accordingly, the Individual Defendants' motions for summary judgment are denied to the extent they are based on the defense of quasi-judicial immunity.

### IV. Conclusion

For the above-stated reasons, the Court **GRANTS** the Individual Defendants' motions for summary judgment because the Individual Defendants are entitled to qualified immunity.

**SO ORDERED.**

      s/Nancy G. Edmunds
      Nancy G. Edmunds

18

United States District Judge


Dated: August 26, 2020


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 26, 2020, by electronic and/or ordinary mail.


<u>s/Lisa Bartlett</u>
Case Manager