# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISON

**ADAM COMMUNITY CENTER,** a
domestic nonprofit corporation, a/k/a
**ADAM COMMUNITY (ACC),** a
Domestic nonprofit corporation**,**

      Plaintiff,               **Case No: 18-13481**
                               **Hon. Nancy G. Edmunds**

v.

**CITY OF TROY,** et. al.

      Defendants.

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 AND LOCAL COURT RULE 7 AGAINST ALL DEFENDANTS

## ORAL ARGUMENT REQUESTED

Pursuant to Federal Rule of Procedure 56 and this Court's Local Rule 7, Plaintiff, Adam Community Center, respectfully moves this Court for entry of an Order granting summary judgment in its favor. Specifically, Plaintiff move for judgment on Count I and Count III of their Complaint that Defendant City of Troy's Zoning Ordinance, and the application of the Zoning Ordinance violates the Federal Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C. §2000, Free Exercise and Equal Terms provisions.

In support of this Motion, Plaintiff is filing a Brief in Support providing Points of Authorities and Statement of Material Facts, along with a declaration and a Proposed Order. Plaintiff requests oral arguments on this Motion.

Plaintiff, in accordance with E.D. Mich. LR. 7.1, counsel for Plaintiff conferred with counsel for Defendants, Allan Motzny, on Monday, December 21, 2020 by phone in an effort to discuss the legal basis and seek concurrence on this motion. That attempt was unsuccessful.

For the reasons fully laid forth in the Brief in Support, Plaintiff's contend that there is no genuine issue of material fact and that it is entitled to judgement as a matter of law on its claims. Therefore, Plaintiff respectfully prays this honorable Court grant summary judgment in its favor, declare that Defendant Troy's zoning ordinance as written and as applied to this Plaintiff is a violation of law enjoin the

City of Troy from enforcing it against this Plaintiff with regards to the subject property, and award damages, attorney's fees and costs.

Respectfully Submitted,

**CAIR-MI LEGAL FUND**

/s/ Amy V. Doukoure
BY: Amy V. Doukoure (P80461)
30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247
adoukoure@cair.com

**COUNSEL FOR PLAINTIFF**

DATED: December 23, 2020

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISON

**ADAM COMMUNITY CENTER,** a
domestic nonprofit corporation, a/k/a
**ADAM COMMUNITY (ACC),** a
Domestic nonprofit corporation**,**

      Plaintiff,                 **Case No: 18-13481**
                                   **Hon. Nancy G. Edmunds**

v.

**CITY OF TROY,** et. al.

      Defendants.

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

By: Amy V. Doukoure (P80461)

CAIR-MI LEGAL FUND

30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247
adoukoure@cair.com

**COUNSEL FOR PLAINTIFFS**

## STATEMENT OF ISSUES PRESENTED

1. Is Adam, a Religious Institution, Entitled to Judgement as a Matter of Law When Defendant's Imposition and Implementation of a Land Use Regulation Prohibits Adam from Obtaining a Religious Place of Assembly in a Manner that Substantially Burdens Their Religious Exercise and the Implementation and Imposition of the Land Use Regulation Is Not the Least Restrictive Means to Further a Compelling Government Interest?

   Adam: Yes
   Defendants:  No

2. Is Adam, a Religious Institution, Entitled to Judgement as a Matter of Law When Evidence Clearly Shows that Defendants' Imposition and Implementation of a Land Use Regulation Treats Religious Institutions and Assemblies on Less than Equal Terms than Non-Religious Assemblies and Institutions?

   Adam: Yes
   Defendants: No

# TABLE OF CONTENTS

Precise Statement of Issue Presented…………………………………………ii

Table of Contents……………………………………………………………iii

Table of Authorities…………………………………………………………..v

Factual Background…………………………………………………………...1


I.     The Parties……………………………………………………………1
II.    History of Adams Attempts at Obtaining a Place of Worship…………..2
III.   Adam's Current Location is Inadequate to Meet Their Needs…………..5
IV.    Adam's Acquisition of 3635 Rochester Road and Request for a
       Variance……………………………………………………………….6
V.     Troy's Zoning Ordinance……………………………………………...8
       a.  The Setback for Assembly is Greater Than for Non-Religious
           Uses……………………………………………………………...8
       b.  Troy's Basis for More Stringent Setback and Parking For Religious
           Assembly………………………………………………………10
       c.  Expert Testimony Shows Troy's Zoning Ordinance is Fatally
           Flawed…………………………………………………………12


LAW………………………………………………………………………17


I.     Standard of Review…………………………………………………..17

II.    Defendants' Imposition and Implementation of its Zoning Ordinance Has
       Substantially Burdened Plaintiff's Religious Exercise in Violation of
       RLUPA ………………………………………………………………17

III.   Defendants' Zoning Ordinance and Application of the Ordinance are Not
       the Least Restrictive Means to Further a Compelling Government
       Interest………………………………………………………………..23

       a.  Defendant's Setback and Parking Requirements are Not Related to A
           Compelling Government Interest…………………………………23

b.  The Defendant's Zoning Ordinance is Not the Least Restrictive Means of Protecting Their Interest Regarding Light and Noise Pollution to Adjacent Residential Properties………………………………………..24

c.  Defendants' Denial of Adam's Variance Request Was Not the Least Restrictive Means of Furthering Defendant's Interest in Protecting Adjacent Residential Properties from Impacts of Parking and Traffic…………………………………………………………………..25

IV.  Defendant's Zoning Ordinance, as Written Treats Religious Assemblies on Less than Equal Terms with Non-Religious Assemblies…………...……26

Conclusion………………………………………………………………………...30

Prayer for Relief………………………………………………………………...30

## TABLE OF AUTHORITY

**CASES**

*City of Cleyburn Tx. v  Cleyburn Living Center,* 473 US 432, 448 (1985)

*De Laura vs City of Ann Arbor*, 30 Fed. Appx. 501 (2002)

*Dorman v. Charter Township of* Clinton 2019 WL 3322352 (E.D. Mich. July 24, 2019)

*Guru Nanak Sikh Soc'y of Yabu City v County of Sutter*, 456 F.3d 978 (9Th Cir. 2006)

*Lighthouse Community Church of God v City of Southfield* 2007 WL4230280 (ED. Mich. Jan. 3, 2007).

*Livingston Christian Schools v Genoa Charter Township*, 858 F.3d 996 (6th Cir. 2017)

*New Life Ministries v. Charter Twp. Of Mt. Morris* 2006 WL 2583254 (E.D. Mich. Sept. 7, 2006)

*Tree of Life Christian Schools v. Upper Arlington*, OH., 905 F.3d 357, 369-370 (6th Cir. 2008)

**STATUTES**

42 USC §2000 et. seq.

42 USC §2000cc(a)(1)-

42 USC 2000cc(a)(2)(C)

42 USC 2000cc-(b)(1)

42 USC 2000cc-2(b)

**COURT RULES**

E.D. Mich. Local. Rule 7

Fed. R. Civ. Pro. 56

**OTHER AUTHORITIES**

## FACTUAL BACKGROUND

### I.    *The Parties*

Plaintiff, Adams Community Center (hereinafter "Adam" or "Plaintiff"), is a non-profit religious organization organized under the laws of the State of Michigan. Adam's stated mission and purpose is to establish a center for increasing knowledge through proper research, education and training in the community for the youth and adults; To establish peace through proper guidance; to establish a homogenous atmosphere for all ethnic groups.[1]

The Goal of Adam was to establish a religious organization that would serve the Muslim community in Troy.[2] Central to the mission of Adam is establishing a mosque in Troy because Troy has a large Muslim population that has no place to come together and worship as one community.[3] It is imperative to the mission of Adam to have a place of worship located in Troy because of the requirement of the the five (5) daily prayers needing to be in congregation creating the need to have a place close by to where it's membership lives.[4]

Defendant City of Troy (hereinafter "Troy") is a Michigan municipal corporation created and existing by virtue of the laws of the state of Michigan and is

---

[1] **Exhibit A-** Articles of Organization for Adam Community Center
[2] **Exhibit B-** Declaration of Dr. Nurul Amin ¶ 3
[3] *Id.*
[4]  **Exhibit C-** Declaration of Mahmood Akhtar Syed ¶ 5; **Exhibit D-** Declaration of Imam Faheem Nobin Ahmed ¶ 6-7;

empowered to act through is governing body, its officials, employees and official bodies. Troy is a government within the meaning of 42 U.S.C. §2000cc-5(4)(A).[5]

## II.     *History of Adam's Attempts at Obtaining a Place of Assembly in Troy*

Currently, the city of Troy has about sixty religious assemblies but no approved places of worship for the Muslim Community.[6] Adams has been looking for a permanent location in Troy to obtain a mosque since its foundation.[7] In 2012, the community began praying and holding other religious activities in the basement of 4700 Rochester Road in Troy in a building owned and operated by Nima Group.[8] That building was never intended as a permanent place of worship because the space is insufficient to meet the needs of the community and it does not meet setback requirements of the City of Troy Zoning Ordinance.[9] The building is subject to enforcement of the zoning ordinance at any time which could end Adam's continued use of the property.[10]

Adam has consistently attempted to procure a permanent location to accommodate their community's religious needs.[11] In 2013, Adam purchased a former restaurant and attempted to utilize it as a community center. [12] Adam

---

[5] **Exhibit E-** Defendant's Answer to Plaintiff's Complaint Paragraph 2.

[6] **Exhibit F-** (List of Places of Worship for City of Troy) **Exhibit G-** Dep. Savident 2020 Pg. 146 Ln. 11-14

[7] Dec. Amin ¶ 5;

[8] *Id.* ; Dec Syed ¶ 7

[9] *Id*. ; Dec Syed ¶ 7.

[10] Dep. Savident 2020 Pg. 139 Ln. 10- Pg. 140 Ln 7

[11] Dec. Amin ¶ 6; Dec. Syed ¶18-24.

[12] Dec. Syed ¶ 20.

submitted a site plan to the city and received approval to use the building as a community center.[13] After the initial approval, Defendant received email allegations that because Adam was a Muslim organization that everything they do is considered worship and that they would hold prayer in the facility and then called for the ZBA to make a determination on the use of the building.[14] The ZBA ultimately decided that, because pray would occur at the facility, that it was a place of worship.[15] Troy made the distinction between community center and religious assembly, solely on introduction of prayer at the facility.[16] In fact, Defendant Troy has asserted that any organized prayer in a space turns it into a place of worship, despite having regular Sunday Christian services at their own community center.[17]

Recission of the approval required Adam to seek a variance for parking and setback requirements in order to comply with the unique restrictions for a place of worship.[18]  Adam submitted a variance request, but prior to the ZBA hearing on the variance application, the building was sold by one of the building's co-owners.[19]

Immediately following the sale of the proposed community center, Adam began investigating a number of other available properties in the city of Troy for a religious assembly, but each place they considered failed to be an appropriate

---

[13] **Exhibit H**- Emails, correspondences and Documents related to 4924 Rochester Road.
[14] *Id*. See also Dep. Savident 2020 Pg. 72 Ln. 12 – Pg. 78 Ln. 6
[15] Id.
[16]  Id also  Pg. 89 Ln 2-5.
[17] Id. *See Also* **Exhibit F**.
[18] Dep. Savident 2020 Pg. 72-78; Dep. Amin Pg. 33 generally
[19] Dec. Syed ¶ 20; Dep. Amin. Pg. 33s

place.[20] Many of the reasons that Adam's made a determination not to pursue a property was because of the conditions of the property related to setback and parking restrictions, the need to obtain a Special Land Use permits from the city and the overall unsuitability of the properties as a result of conditions on the land.[21]

The Defendants were aware of the efforts and difficulties that Adam was having in finding a suitable location, as Adam sought advice and assistance from the Defendants regarding the suitability of several properties, including undeveloped land and land with already existing buildings.[22] Defendants routinely offer this type of assistance to individuals and entities looking to purchase or build in Troy.[23] However, Defendants failed to provide any routine advice or assistance to Adam in its search for property.[24] Adam was told by members of the ZBA that there was no place left in Troy for them to have a place of worship, and that they should look outside the city.[25]

Both Defendant city of Troy and their expert stated that Troy is nearly completely built out.[26]

---

[20] Dec. Syed ¶ 20-23; See Also Dep. Amin Pg. 34-43; Pg. 48-54; Pg. 92-94
[21] Deposition Dr. Mohamed "Nurul" Amin Pg. 34-43; Pg. 48-54; Pg. 92-94 (generally)Dec. Syed ¶19-26.
[22] Dep. Savident 8/8/2020 Pg. 111 ln 2- Pg. 112 ln. 20
[23] Dep. Paul Evans 8/8/2020 Pg. 35 Ln 3-21; Dep Savident 2020 Pg.30 Ln. 23-Pg 32 Ln. 8
[24] Dep. Savident 2020 Pg.107 Ln 20- Pg. 109 Ln 4; Dep Amin Pg. 52-53;
[25] 06/19/18 ZBA Tr. Pg. 135 Ln 8-20; Pg. 134 Ln 16-21; Pg. 125 Ln 22-23; Pg. 131 Ln 19-Pg. 132 Ln. 3
[26] Dep. Savident Pg. Ln.; Dep Carlisle Pg. Ln.; Exhibit D Carlisle Expert Report

Adam attempted to purchase an already existing church; however, it was purchased by a developer for substantially less money than Adam had offered.[27] Additionally, Adam was told by the real estate agent that no matter how much they offered, the church was unwilling to sell to them.[28] Each time Adam searches for a property or prepares plans to submit to the Defendants for approval, it costs Adam time and money.[29]

While attempting to find a permanent location to meet their needs, Adam also rented space from the Defendant Troy at their community center as well as from a church. Neither attempt was adequate for the needs of Adam community members.[30]

### III.   *Adam's Current Location is Inadequate to Meet Their Needs*

Adam's use of 4700 Rochester road as a place of worship is insufficient to meet the needs of the community and their mission.[31] The building is dark, damp and uninviting and inaccessible to older congregants and those with disabilities which has reduced prospects for permanent membership of the congregation and caused members to withdraw their children from classes taught at Adam.[32] Women members of the Adam community are particularly disenfranchised by the current conditions in the basement as it inhibits their ability to maintain modesty, to enter

---

[27] Dep. Amin Pg. 49 Ln. 18- Pg. 50 Ln. 13 and Pg. 93 Ln 7- Pg. 94 Ln 7. **Exhibit J**: Church Purchase Documents
[28] *Id*.
[29] Dec. Amin ¶6.
[30] Dep Amin Pg. Ln
[31] Dec. Amin ¶4-5; Dec. Syed ¶ 7; Dec. Ahmed ¶14.
[32] Dec. Syed ¶ 15; Dec. Ahmed ¶ 12.

and pray separately from men, causing women to refrain from attending worship and events.[33]

The current basement location is not large enough to (1) hold the entire congregation for Friday congregational prayers (2) hold holiday worship services (3) hold iftar dinners during the Islamic holy month of Ramadan (4)hold religious weddings and funeral ceremonies (5) hold other ceremonies and celebrations that are significant in Islamic beliefs (6) hold religious education classes for its children and adult community members (7) provide space for the washrooms necessary to allow members to perform obligatory wudu prior to the beginning of the prayer services and (8) hold other events including guest lecturers, fundraising and community banquets.[34]

## IV.   *Adam's Acquisition of 3635 Rochester Road and Request for Variance*

In 2018, Adam entered into an agreement for the purchase of the subject property 3635 Rochester Road that would have been sufficient to meet their needs for Mosque and community center.[35] When Adam entered into the agreement, the building was being used as a restaurant that included two separate banquet halls and had a large warehouse.[36] The property had previously been used as a (1) fruit market

---

[33] **Exhibit U**- Declaration of Ayesha Qudrat Ali Generally.

[34] Dec. Syed ¶9-13; Dec. Ahmed ¶9-12; Declaration of Ayesha Qudrat Ali (generally).

[35] See **Exhibit V**- Purchase Agreement; Dec. Syed ¶24 Dep. Amin. Pg. 76-77.

[36] **Exhibit K**- City of Troy Approved Site Plan for Sakura

(2) shoe store  (3) haunted house and (4) an antique and collectible store in operation at the same time as the haunted house.[37]

The building currently existing on the property is a non-conforming structure[38] Adam was unable to move into the building, without seeking a variance from the Defendant ZBA, due to their classification as a religious assembly,.[39] If Adam were any assembly use other than a religious one, they would have been able to move into the subject property without seeking any variances.[40] At most they may have been subjected to informal discretionary involvement of Troy's Planning Director.[41]

Adam applied for and believed they'd receive a variance from the setback and parking restrictions of Section 6.21 of the Zoning Ordinance because they were not making any external changes to the building or parking, and because they believed they were going to continue to use the building in the same manner it was already being used.[42] However, that variance was denied with little more than conclusory statements that Adam's request didn't fit the statement of practical difficulty or the intent and purpose of the specific lot, that Adam was asking to "severely break the

---

[37] Dep. Savident Pg. 252-253 ln 19.
[38] Dep. Savident Pages 254-258 ln 12.
[39] Dep Savident Pg. 216 LN. 15-20
[40] Dep. Savident Pg. 257 Ln. 20-25
[41] *Id* and Pg. 248 Ln 24-Pg. 249 Ln. 7; Pg. 284 Ln 18- Pg. 285 Ln. 7; PG. 197 Ln 18-20; 198 ln 2-8
[42] **Exhibit M**- 06/18/2018- ZBA Hr. Tr. Pg.50 Ln 7-13. Dec. Syed ¶24.  See also **Exhibit L**-Application for Variance

law", that variances are always denied when the community didn't give "100% support," and some unfounded statements about Friday night traffic.[43]

The ZBA suggested that Adam demolish either all or some of the current building and rebuild a new building in compliance with the setback requirements.[44] Adam is unable to engage in that type of construction because a substantial portion of the land and 60% of building would be lost to setbacks making this property no more compatible with their needs as their current basement location. As such, Adam would need to expend upwards of $3 million to demolish and completely rebuild a new facility on that space, that still would not meet their needs.[45]

When the variance was denied by the ZBA, Adam lost substantial contributions that were pledged donations necessary to acquire and renovate the property.[46] As a result Dr. Nurul Amin, Mr. Mahmood Syed and two other individuals purchased the building for Adam's benefit with their own personal funds and gave Adam an option to lease agreement that has been renewed continuously during this litigation.[47]

V.   ***Troy's Zoning Ordinance***
     a.   *The Setback for Religious Assembly is Greater than Non-Religious Uses*

---

[43] Id at Pg 125 ln 23-25;125 Ln 4-6; Pg 141 Ln 66-8; Pg. 142 Ln 21-25.
[44] **Exhibit L**- Variance request with site plan; 06/19/18 ZBA Meeting Tr. pg. 143 ln 9-25.
[45] Dec. Amin ¶8.
[46] Dec. Dr. Amin Ln. 9.
[47] Dec. Amin ¶7; Dep Syed ¶ 25; See also **Exhibit N**: Current Option to Lease

According to the Defendant's Planning Director, the zoning ordinance at issue in this matter was enacted pursuant to a comprehensive rewrite of both the master plan and zoning ordinance which took effect in 2011.[48] In that re-write, Troy created form-based districts that contained use groups based on the similar impacts and characteristics of the uses.[49] Places of worship are allowed as of right in all form-based districts.[50] As a result of the re-write places of worship are also permitted as a right in nearly all of the other districts including the GB district where the property at issue is located.[51] Places of worship are subjected to stricter setback and parking restrictions in all districts where they are approved as of right.[52]

The definition of "Place of Assembly" could encompass that of a "Place of Worship" under the express language of the zoning ordinance at issue, but "Place of Worship" is singled out for more significant zoning restrictions based solely on religious services being conducted at a location.[53]

Defendants' zoning ordinance sets forth unique and more stringent parking and setback requirements for religious assemblies than it does for secular assembly uses.[54] The text of the zoning ordinance sets a fifty-foot setback on all sides from

---

[48] Dep. Savident 2020- Pg. 35 Ln. 17-23; Pg. 40 Ln 5- 41 Ln. 1;
[49] Dep. Savident Pg. 186 Ln. 15- Pg. 190 Ln 3.
[50] Dep. Savident Pg. 48
[51] *Id.*
[52] **Exhibit O1**-Zoning Ordinance Section Pg. 26 (ordinance page).
[53] **Exhibit O1**- Sections 2 (Definitions) Page 26.
[54] Dep. Savident 2020 Pg. 181 ln 12-Pg 182 Ln. 3; Pg. 171Ln 12-18.

religious places of worship and doesn't allow parking in the setback area.[55] The parking and setback requirements are imposed only on assembly uses that are religious in nature and  secular assemblies, regardless of size or membership, are not required to adhere to the same requirements.[56] Furthermore, in the zoning districts where religious assembly uses are permitted only as a "special use", secular assembly uses are permitted as of right.[57]

Mr. Savident further recognizes that the zoning itself places a burden on Adam's ability to find a suitable property in Troy because (1) it is more difficult to develop a lot with a larger setback and less usable space (2) not allowing parking in the setback means that there is less room overall for parking making land more difficult to develop and (3) the fifty-foot setback requirement makes it challenging for a religious assembly to get into a commercial property.[58]

b. _Troy's Basis for More Stringent Setback and Parking for Religious Assembly_

The stricter setback and parking requirements for religious assemblies were kept in the comprehensive re-write of the ordinance because the city gave little or no thought to "carrying them over" from residential neighborhoods to commercial districts or the effects that would have on the ability of a religious assembly to come

---

[55] **Exhibit O5**
[56] Dep. Savident 2020 Pg. 167 Ln 9; Pg. 171 Ln. 12-18; Dep Alan Weinstein Pg. 20 Ln 14-19;
[57] **Exhibit O3**
[58] Dep. Savident 2020 Pg. 171 Ln 1-11; Pg. 171 Ln 19-Pg 172 Ln 11; Pg. 114 Ln 6-10.

into those districts.[59] The Defendant recently stated concerns regarding the impact of Troy's five largest "megachurches".[60] However at least one of Troy's largest mega churches, Woodside Bible, was not in existence at the time of the re-write and was granted a PUD that didn't subject it to the parking and setback requirements for places of worship.[61]

Defendants' assert that the rationale for the more stringent building and parking requirements is due to secondary impacts to residential properties due to the use of the building as a place of worship including (1) property values of residential neighborhoods (2) light and noise associated with parking during events and (3) traffic congestion.[62]

However, Defendant's Planning Director who oversaw the re-write of the zoning ordinance acknowledges (1) there is no justification to treat places of worship and secular assembly with the same capacity differently based on concerns of impact[63] (2) non-religious assembly with similar building capacity could have the same impact on traffic and noise[64] (3) all things being equal with size of building and activities, secular assemblies could have the same impacts as a religious

---

[59] Dep Savident Pg. 37 Ln 15- Pg. 38 Ln 2: **Exhibit P**- Deposition of Mark Miller Pg. 74 Ln 14- Ln 21, Dep Evans Pg. 47 Ln 21- Pg. 48 Ln. 4.
[60] Dep. Savident Pg. 132 Ln. 3- Pg. 134 Ln. 18 and Pg. 56 -57 Ln. 3.
[61] Dep. Savident Pg. 232-233; ( and exhibit 13 to his Deposition)- Woodside Bible PUD
[62] Dep. Savident 2020 Pg. 55 Ln 18-Pg 58;. PG. 179 Ln 14-21.
[63] Dep. Savident 2020 Pg. 62 Ln 4-8;
[64] Dep. Savident 2020 Pg. 61 Ln 18- 62 Ln 3

assembly and those impacts would translate into requiring the same setback[65] (4) the city is capable of distinguishing between larger and smaller places of worship, yet they didn't[66] and (5) other assembly uses are allowed to abut a residential property in the GB district and all form based districts with less than a 50' setback.[67]

Furthermore, Mr. Paul Evans, whose Defendants' co-administrator of the zoning ordinance, staff liaison to the ZBA, and responsible for code enforcement, stated that he believes that other uses are similar to religious assemblies and doesn't see the need for the different setbacks.[68]

It is also true that a Market Study report done by Gerendasy Valuation, LLC. provides conclusive evidence that residential property values are not negatively impacted when they abut adjacent religious assembly places, even when those assembly places have parking and setbacks that are less than those prescribed in section 6.21 of the Zoning Ordinance.[69] Notably, Defendants have provided no information, documentation, or expert opinion to support any assertion that residential property values are affected negatively by religious assembly uses.

c. _Expert Testimony Shows That Troy's Zoning Ordinance is Fatally Flawed_

---

[65] Dep. Savident 2020 Pg. 68 Ln 7-10.
[66] Dep. Savident 2020 Pg. 61 n 9-12
[67] Dep. Savident Pg. 169 Ln 6-9.
[68] Dep. Evans 2020 Pg. 20-23; Pg. 135 Ln 18 Pg. 137 Ln. 5.
[69] See **Exhibit Q**: Market Valuation Prepared by Gerendasy Valuation, LLC.

Alan Weinstein has been a professor for 31 years, a consultant, has published about land use planning, zoning and the Religious Land Use and Institutionalized Persons Act (RLUIPA), consulted on comprehensive revisions of zoning ordinances and drafted zoning ordinances.[70]

In his report, Mr. Weinstein states that Defendants' zoning ordinance section 6.21 has applied a "unique set of requirements for places of worship that do not apply to uses that are not places of worship.[71] Indeed Mr. Weinstein agrees with Mr. Savident that theaters, funeral homes and restaurants that hold receptions and other large gatherings, places of assembly, conference, meeting and banquet facilities, fine and performing art facilities, funeral homes and primary and secondary schools are all similarly situated to religious assemblies based on the legitimate zoning criteria in Section 1.03 of Troy's zoning ordinance.[72] Despite these uses being comparable to religious assemblies, Mr. Weinstein states that Defendant has "imposed a scheme of parking and setback requirements on religious assemblies that are far more restrictive and extensive than those of secular assemblies that have a greater impact than places of worship."[73] According to Mr. Weinstein, Defendants' zoning is an express differentiation of religious assembly.[74]

---

[70] See **Exhibit R**- CV of Alan Weinstein and **Exhibit S**- Dep. Weinstein Pg. 8-10.
[71]  Dep. Weinstein Pg. 20 Ln 14-19
[72] Id. Pg 41 Ln 9 – Pg. 46 Ln 5; Page 53 Ln 2-5; Pg. 53 Ln 21- Pg 55Ln 12. **Exhibit T**- Weinstein Expert Report Pg 22-23.
[73] Weinstein Report Pg. 17-18;
[74] Id at 20.

Further, according to Mr. Weinstein, Defendants' differential treatment of religious assembly uses within the same zoning district, on both vacant and developed parcels of land, created "significant obstacles for many, if not most or all, places of worship seeking to locate on a developed parcel in a non-residential district and a near-insuperable barrier to Adam gaining approval for Rochester road without a variance."[75]

Additionally, Mr. Weinstein asserts that the Defendant ZBA's denial of the variance for 3635 Rochester Road resulted from the members failing "to evaluate parking and safety concerns, precluding it from legitimately justifying its decision to deny Adam's application."[76] "Given this information, and the historical context of Muslims treatment in requesting zoning relief made it a reasonable choice that Adam decided not to pursue subsequent or additional special use approvals."[77] Furthermore, in Weinstein's professional opinion, Adam's search for properties led to no "alternative properties" because set backs are not the only issues facing them in their search for reasonably available properties."[78]

As for Defendants' claims of their legitimate zoning criteria for the setback, Weinstein's expert opinion is that Troy doesn't provide ***any*** to "explain setback

---

[75] Id at 18.
[76] Id at 32-33.
[77] Dep. Weinstein Pg. 32 Ln 11
[78] Weinstein Report Page 27-29 Generally.

differences within each district for religious assemblies or institutions."[79] His explanation is that based on the criteria set forth in Defendants' zoning ordinance section 1.03, many of the similarly situated non-religious uses have a greater impact than places of worship yet are subject to less restrictive zoning.[80]

Mr. Weinstein also believes that Defendants have undermined their own argument regarding the need for greater setback and parking restrictions for religious places of worship in the following ways (1) granting a PUD to the mega church Woodside Bible without the 50' setback because doing so suggests that the city, when faced with the very concern they are asserting as the rationale for the setback, didn't find it necessary to secure public safety and welfare[81] (2) the city's granting of variances reducing screening walls in places of worship adjacent to residential properties [82] and (3) the city's history of having numerous places of worship with parking no less than 10' from residential neighborhoods posing no concerns "with regard to public safety welfare, or any other concern germane to a land-use decision."[83]

Mr. Weinstein, states that the ordinance is offensive to religious assemblies because (1) it requires a much larger setback than necessary in all cases except very

---

[79] Weinstein Report Page 22.
[80] Id.
[81] Id at 31; Dep Weinstein Pg. 73 Ln 7- Pg. 74 Ln 5;
[82] Dep. Weinstein Pg. 62 Ln 17-Pg. 63 Ln 2
[83] Id at Page 31-32.

large places of worship (2) smaller congregations on smaller parcels of land require less buffering than larger congregations on larger parcels of land[84] (3) the setback requirements make religious assemblies "patently incompatible with four out of five building form build to requirements and are greater than the requirements for the fifth[85] and (4) in the GB district where the 3635 property is located secular assemblies have greater use of their property due to having substantially reduced setback requirements. [86]According to him, it is "good planning practice" to "impose smaller setback requirements- and less of a "burden"- for places of worship on smaller parcels" and "thus the rational and legitimacy of Troy's setback requirements" are undermined.[87]

Weinstein asserts that Defendants' could have achieved the goal of protecting adjacent residential properties from traffic and parking impacts in less restrictive ways and set forth two examples in his report of how to achieve that.[88] He further proffers that the ZBA could have alleviated the concerns by placing screening as a condition of approval, and further that the ZBA had a history of doing so in the case of a church who was asking for a 22' variance from the parking and setback requirements.[89]

---

[84] Weinstein Report page 15 -17.
[85] Id. At 20.
[86] Id.
[87] Id at 15-17.
[88] Weinstein Dep. Pg. 36 ln 24-page 41
[89] Weinstein Dep. Pg. 76 Ln 20- Page 77 Ln 22. Weinstein Report Page 33-34

# LAW

## I.     Standard of Review

This Court has set forth the standard for Summary Judgement on page 10 of ECF

9. Based on that standard, Adam is entitled to judgement as a matter of law.

## II.     Defendants' Imposition and Implementation of its Zoning Ordinance Has Substantially Burdened Plaintiff's Religious Exercise in Violation of RLUPA

RLUIPA prohibits Defendant from imposing or implementing a land use

regulation that substantially burdens Plaintiff's religious exercise unless the burden

is the least restrictive means of furthering a compelling government interest.[90]   In

order to trigger RLUIPA's substantial burden clause the Plaintiff must have a legally

cognizable interest in the land even if the interest is merely a definite non-possessory

interest.[91] The *DiLaura* Case cites *Community Treatment Centers* "holding that a

contingent agreement is sufficient to confer standing" and *Haven v City of Troy*

"holding that an option to purchase land had standing to challenge building permits."

Furthermore, the Defendant must have a system in place under which they make an

individualized assessment of the property involved.[92] The *DiLaura* found that

requiring an application for a variance constitutes an individualized assessment.[93]

---

[90] 42 USC 2000cc(a)(1)-

[91] See *De Laura vs City of Ann Arbor*, 30 Fed. Appx. 501, 506 (2002) (citing *Community Treatment Centers* 970 F. Supp. At 1206-07 and (*Haven v City of Troy* 39 Mich. App 219, 197 N. W. 2d 496 (1972)

[92] 42 USC 2000cc(a)(2)(C).

[93] *DeLaura* ,30 Fed. Appx. At 510 (2002)

In *Livingston,* the controlling 6th Circuit case, the court sets forth some factors that are helpful in determining whether a substantial burden exists because of a land use regulation.[94]

First, *Livingston* held that when a religious institution doesn't have a feasible alternative location a substantial burden exists.[95] Feasible alternative location is based on (1) whether the current location is adequate to carry out the mission of the religious institution[96] and (2) whether there are other properties available close to the property at issue adequate for the needs of the religious institution.[97] "When central religious beliefs are in question, courts must be especially deferential to testimony from the religious institution about the truth of that belief."[98]

The *Livingston* Court cites several instances of insufficiency of a current place of worship that create a substantial burden including (1) when an assembly's current location doesn't allow the congregation to worship as a whole and (2) lack of sufficient space when a school or congregation were expanding.[99]

The second factor according to *Livingston* is whether a religious institution will suffer substantial delay, uncertaintity or expense due to the imposition of a

---

[94] *Livingston Christian Schools v Genoa Charter Township*, 858 F.3d 996, 1004 (6th Cir. 2017)
[95] Id at 1004.
[96] *ID* at 1005-1006. (citing *Bethel World Outreach Ministries*, 706 F.3d at 558 and In*t'l Church of the Foursquare Gospel v City of San Leandro*, 673 F.3d 0159, 4068-69 (9th Cir. 2011) and *Westchester Day Sch. V Vill. Of Mamaroneck*, 504 F.3d 338 352 (2d Cir. 2007)) (internal quotes omitted)
[97] *Id* (citing *World Outreach Conference Ctr. v City of Chicago*, 591 F.3d 539 (7th Cir. 2009).
[98] ID at 1006 citing Foursquare 637 F. 3d at 1069
[99] *Id*.

regulation a substantial burden exists.[100] Courts have determined that continued and prolonged searches for land and continued necessity to file applications with the city created enough delay and uncertaintity to be a substantial burden.[101] The courts have further found that a Plaintiff's "uncertaintity increased with each time they were denied or put off by Defendant's multiple permit denials and broad reasoning for each denial" because it "significantly reduced Plaintiff's prospects for ever gaining approval."[102]

*Livingston's* third factor is whether the Plaintiff's own actions created a substantial burden on itself by obtaining an interest in land without a reasonable expectation of being able to use the land for religious purposes.[103]

In the instant matter is undisputed that Plaintiff have a legally cognizable interest in land pursuant to the option to lease agreement they hold over the subject property. It is also undisputed that Troy's zoning ordinance is a land use regulation subjecting them to the provisions of RLUIPA and further that Adam was subjected to an individualized assessment pursuant to the zoning ordinance when it applied for a variance of the setback and parking requirements.

What is also clear is that Adam has met its burden in showing that it has suffered a substantial burden as a result of the implementation and imposition of

---

[100] *Livingston Christian School* 858 at 1004.
[101] *Id.*
[102] *Guru Nanak Sikh Soc'y of Yabu City v County of Sutter*, 456 F.3d 978, 991-992 (9Th Cir. 2006).
[103] Id.

Defendants' zoning ordinance. Adam is a religious assembly or institution according to their Articles of organization whose purpose is to establish a place of worship for the Muslims of Troy. It is imperative to have a location in Troy, according to the community members, for several reasons, but primarily because of the requirement to attend the five (5) daily prayers in congregation necessitating a shorter travel time to and from the place of worship.

Furthermore, according to Adam community members and religious leaders, Adam's current location is deficient on all fronts because it doesn't allow them to carry out the core of their religious practices, doesn't afford women a meaningful worship opportunity that aligns with Islamic principles, and doesn't afford children a meaningful opportunity to learn their religion.

All the evidence in this matter proves that Adam does not have a feasible alternative location. First, there is no other location in the city of Troy for Muslims to worship. Second, there are no adequate properties available to Adam as a result of the onerous setbacks imposed only on religious institutions by the Defendants.

Third, Adam has attempted to purchase an already existing religious assembly place, but despite being the highest bidder was unable to acquire the property. The city itself, through its ZBA and planning department has stated that the city is nearly completely built out, and it is likely that there is no place left in Troy for Adam to have a place of worship.

20

It is also true that Adam has suffered and will continue to suffer substantial uncertainty, delay and expense should it not be able to use the subject property. Adam has spent nearly eight years looking for a property, has made many attempts to purchase a property, or obtain relief from the zoning ordinance. The refusal of the Planning Department employees to provide guidance to Adam when they request it, the repeated denials of approval for site plans and variance applications with vague or absent reasoning, along with the vesting of substantial discretion in the Planning Director to make determinations regarding whether a use is similar and can gain access to an existing building solidify Adam's uncertaintity.

Furthermore, Adam's continued use of the basement at 4700 is uncertain and can end whenever Defendants make the determination to enforce their ordinance.[104] The *DiLaura* court held that failure to enforce an ordinance is "merely a delay in enforcement" and there is a "presumption of enforcement," because the "enforcement of the ordinance is mandatory" and lack of enforcement is "contrary to the [city's] own laws".

Adam has expended thousands of dollars in its pursuit of a suitable location and in having documents prepared to present to the Defendants for various approval processes. That expense will only grow should Adam continue to search for properties and apply and receive denials from the Defendants. Furthermore, the costs

---

[104] *DiLaura* 30 Fed. Appx at 505 (2002).

of tearing down an existing building only to replace it with another that would likely not be sufficient to meet Adam's needs and realistically costing in the millions of dollars, is a substantial expense that cannot be carried by a smaller congregation like Adam.

Adam did not self-create the burden to its religious exercise. At the time that it submitted the application for variance and entered into the purchase agreement for the subject property, it had a reasonable expectation to be successful at the ZBA hearing and believed that the variance would be granted. This is especially true since Adam believes, and Troy has now admitted, that the proposed use of the property was not any different, or more impactful that the use of the property at the time of the hearing and Adam wasn't changing the exterior footprint of the building, nor were they changing anything with the parking. Instead, Adam was going to be using the building and parking, as it was being used at the time they applied for the variance.

Furthermore, equity requires this Court to look at Adam's prospects for obtaining property at the time it entered into the purchase agreement for the subject property. If Defendants' ZBA continuously denies variances of the setback requirements for vague and unsubstantiated reasons, and the Defendants are allowed to argue that they should not have expected to be successful in seeking relief that was granted by the ZBA to other places of worship in the past, the ability of any

religious assembly, including Adam, to enforce their rights under the provisions of RLUIPA would not exist and this would render the statute itself void.

Because Adam has suffered a substantial burden to its religious exercise because it has no feasible alternative to carry out its mission, because its current space is inadequate, and because it will suffer undue delay, expense and uncertainty in finding an adequate property it has made a prima facie case that there is a substantial burden on its religious exercise and that Defendants have violated RLUIPA.

**III.   Defendants' Zoning Ordinance and Application of the Ordinance are Not the Least Restrictive Means to Further a Compelling Government Interest**

When a Plaintiff makes a prima facie case of substantial burden to its religious exercise, the Defendant bears the burden of proving "that the land use regulation is the least restrictive means to further a compelling government interest.".[105]

   *a.   Defendant's Setback and Parking Requirements are Not Related to A Compelling Government Interest*

According to Defendants', and their Planning Director, the setback requirements are to protect residential properties from the impacts of traffic and parking resulting from the ancillary uses places of worship due to events being held there. Because the Defendants and their Planning Director have admitted, and the

---

[105] 42 USC 2000cc-2(b). *Lighthouse Community Church of God v City of Southfield* 2007 WL4230280 (ED. Mich. Jan. 3, 2007) (attached as Appendix I).

expert Mr. Weinstein agrees, that there are a multitude of other assembly uses whose impacts could be the same or even more intrusive than a religious assembly, this Court should find that those asserted interests are not compelling government interests for the purpose of this setback and parking requirement. Furthermore, the Defendants have routinely not enforced setback requirements when it comes to religious assemblies nor when it comes to non-religious assembly uses that have the same and/or similar impacts on residential properties. Most notably, when Defendants' engaged in PUD negotiation with a mega church of the type that they assert is the cause of their concern, they refused or otherwise failed to protect their own interests. The fact that each time they have the opportunity to protect their purported compelling government interest they refuse or fail to do so, is a clear indication that it is not as important as they allege.

b. _The Defendant's Zoning Ordinance is Not the Least Restrictive Means of Protecting Their Interest Regarding Light and Noise Pollution to Adjacent Residential Properties_

Should this Court determine that Troy's assertion that parking and traffic are a compelling government interest, this Court should find that the parking and setback requirements of 6.21 are not the least restrictive means of protecting that interest. Clearly, the Defendants have anticipated the needs of residential properties as it relates to impacts from parking and traffic from assembly uses and have set less restrictive setbacks to protect those interests. Furthermore, the Defendants, and their

Planning Director, have admitted that the city can regulate places of worship based on size of congregation and building, but they haven't done so. Furthermore, an expert in planning has provided at least two feasible, less restrictive, alternatives, that could protect the interests asserted by Defendants as the necessity for the setback.

As such, the Defendant cannot bear its burden in proving that the setback and parking restrictions of section 6.21of the zoning ordinance are the least restrictive means of furthering a compelling government interest, nor can they argue that the actions of the ZBA were the least restrictive means of furthering Defendants' interests.

c. *Defendants' Denial of Adam's Variance Request Was Not the Least Restrictive Means of Furthering Defendant's Interest in Protecting Adjacent Residential Properties from Impacts of Parking and Traffic*

It is also clear from the testimony provided by the Defendants' Planning director, and other Troy administrators, that the ZBA can, and routinely does, set conditions on the granting of variances including additional screening requirements and traffic control requirements that could mitigate the impacts and protect Defendants' interest and that the ZBA has the authority to, and has in the past, requested a traffic and/or parking study to be done prior to the granting of  a variance. Indeed, Defendants, have, through the ZBA hearing process, granted a 22' setback variance for a church that included additional screening requirements.

In 2018 when Adam went before the ZBA when members of the ZBA raised, ad hoc, issues of parking and traffic, they had the power to delay the vote on the variance to allow Adam to provide actual evidence of parking and traffic impacts but they opted to deny the variance without any facts to corroborate or rebut their concerns. Furthermore, based on the authority vested in the ZBA and their own past practices, the ZBA could have granted the variance with screening and traffic control restrictions. Yet, the ZBA did not do, nor did they consider either, and as such their outright denial of the variance was not the least restrictive means of furthering Defendants' interest.

Because Adam has suffered, and continues to suffer, a substantial burden to their religious exercise based on Defendants' zoning ordinance and implementation of its zoning ordinance, and because Defendants' actions are not the least restrictive means of furthering a compelling government interest, Adam is entitled to judgement as a matter of law in its claim that Defendants have violated RLUIPA's Substantial Burden provision.

IV.   **Defendant's Zoning Ordinance, as Written Treats Religious Assemblies on Less than Equal Terms with Non-Religious Assemblies**

RLUIPA prohibits Defendant from imposing or implementing a land use regulation that treats religious assemblies on less than equal terms than non-religious

assemblies.[106] The 6th Circuit has stated that the comparator must be similarly situated with regards to the regulation at issue and put forth a four part test to determine whether a religious institution is treated the same as a similarly situated non-religious assembly or institution.[107] The test is (1) whether the Plaintiff is a religious assembly or institution (2) that was subjected to a land use regulation (3) that treats the Plaintiff on less than equal terms (4) compared with a non-religious assembly or institution.[108] This court has found RLUIPA equal terms violations when a statute treats religious assemblies differently than it treats private clubs, civic and fraternal organizations, lodge halls, theaters, assembly halls, and public and private educational facilities.[109] This Court has also found a facial equal terms violation when a religious assembly was not allowed but schools, libraries and swim clubs of the same size were allowed.[110] This court has found an equal terms violation when "groups that gather and meet with similar frequency are only in violation of the zoning ordinance if the purpose for their assembly is religious."[111]

Courts should look to see whether the proposed use "would threaten legitimate interests of the city in a way that other permitted uses do not."[112] The comparators must be similarly situated to the religious assembly based on "legitimate zoning

---

[106] 42 USC 2000cc-(b)(1)

[107] *Tree of Life Christian Schools v. Upper Arlington, OH.,* 905 F.3d 357, 369-370 (6th Cir. 2008)

[108] *Id* at 357.

[109] *New Life Ministries v. Charter Twp. Of Mt. Morris* 2006 WL 2583254 (E.D. Mich. Sept. 7, 2006)- Appendix II

[110] *Dorman v. Charter Township of Clinton* 2019 WL 3322352 (E.D. Mich. July 24, 2019)

[111] *New Life Ministries v. Charter Twp. Of Mt. Morris* 2006 WL 2583254 (E.D. Mich. Sept. 7, 2006)

[112] *City of Cleyburn Tx. v Cleyburn Living Center* 473 US 432, 448 (1985).

criteria."[113] "Size, harmony with the neighborhood, impact on property values, traffic, lighting, hours of operation, and management of events, are considerations for churches, mosques, and synagogues as well as for the local elementary school, theater, or YMCA.[114]

In the instant matter, the Defendants have admitted that the zoning ordinance applies a more onerous setback requirement to religious assembly places even though there are many non-religious assemblies that, all things being equal, have the same or higher impact on adjacent residential properties, the purported justification for the unique setback requirements of 6.21. The Defendants admit that there is no justification or basis for regulating parking and setbacks differently in those circumstances.

As such Defendants' have acknowledged that the ordinance itself, by not imposing the same setback and parking requirements on religious assemblies as it does other assembly uses, treats uses that are similar based on their own asserted legitimate zoning criteria, differently simply because one use is religious, and the similar use is not.

It is also true that Defendants were going to permit Adam to use a restaurant, that does not meet the 6.21 setback requirements, as a community center without the

---

[113] Tree of Life 905 F.3d at 357
[114] *One (1) Ounce of RLUPA Prevention.,* Dwight H. Merrian, *Mun. Law. May/June 2008* at 11.

necessity of any variances. It was only after believing that Adam was going to worship in the property that Defendants' determined that Adam was subject to the setback and parking requirements and required them to seek a variance. This shows that assembly uses are subjected to different standards of zoning, based solely on the introduction of worship as one of the intended uses of a property.

As further evidence that the zoning ordinance applies differently to religious assemblies than it does to non-religious assemblies is Defendants' admissions that they would allow Adam to use the property that is the subject of this instant litigations, for all of the same assembly uses set forth in their site plan, without requiring a variance, if they had also not intended to use the building to hold prayer and that because it was going to also have prayer in the location, Adam would be subjected to the setback requirements of 6.21.

It is clear based on those facts alone that the Defendants have drawn a distinction, in the text of the zoning, that they will treat non-religious assembly uses one way, and religious assembly uses a different, and less favorable way, based solely on the purpose of the assembly as being for "worship." This court has already determined that distinctions like those are a violation of RLUIPA's equal terms provision and thus Adam is entitled to judgment as a matter of law on its RLUIPA Equal Terms claim against Defendants.

**CONCLUSION**

Based on the information provided in this Brief, there are no issues of material fact as it relates to Adam's Claims that Defendant violated RLUIPA's Substantial Burden and RLUIPA's Equal Terms provisions and Adam is entitled to judgment as a matter of law.

**WHEREFORE**, Adam respectfully requests this honorable Court, grant judgement in favor of Adam on its Motion for Summary Judgement and against Defendants, Declare that Defendant Troy's zoning ordinance as written Plaintiff is a violation of law and has substantially burden Adam's religious practice, enjoin the City of Troy from enforcing it against this Plaintiff with regards to the subject property, and further that Adam be heard as to monetary damages, attorney's fees and costs.

Respectfully Submitted,

CAIR-MI LEGAL FUND

/s/ Amy V. Doukoure
By: Amy V. Doukoure (P80461)
Attorney for Plaintiff
1905 S. Haggerty Road, Suite 105
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

Dated: December 23, 2020

30

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, the foregoing paper was filed with the

Clerk of the Court using the ECF System which will give notice to all counsel of

record.

/s/ Amy V. Doukoure