UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM COMMUNITY CENTER,
                Plaintiff,             Civil Action No. 18-13481
v                                District Judge Nancy G. Edmunds

CITY OF TROY, *et al*,
                Defendants.

And

UNITED STATES OF AMERICA
                Plaintiff,             Civil Action No. 19-12736
v                                District Judge Nancy G. Edmunds

CITY OF TROY,
                Defendant.
_____/

## DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT; BRIEF IN SUPPORT OF MOTION- ADAM v. TROY CASE

      Defendants City of Troy, City Council, Planning Commission, and

Zoning Board of Appeals (Troy Defendants) move pursuant to Fed R Civ P

56(a) for summary judgment in its favor for the following reasons:

- Plaintiff's RLUIPA claims brought under 42 U.S.C. § 2000cc(a)(1)

     should be dismissed because there is no evidence Defendant

     imposed or implemented a land use regulation that imposed a

     substantial burden on Adam's exercise of religion.

- Plaintiff's RLUIPA claims brought under 42 U.S.C. § 2000cc(b)(1) should be dismissed because there is no evidence Defendant imposed or implemented a land use regulation that treated a religious institution on less favorable terms than a similarly situated nonreligious institution.

- Plaintiff's RLUIPA claims brought under 42 U.S.C. § 2000cc(b)(2) and 42 U.S.C. § 2000cc(b)(3) should be dismissed because there is no evidence Troy discriminated against Adam on the basis of religion or that Troy imposed a land use regulation that unreasonably limited religious assemblies, institutions, or structures.

- All of Plaintiff's claims brought under 42 U.S.C. § 1983 should be dismissed on the basis there is no evidence of any underlying constitutional violations committed by Troy.

Counsel for Defendant had a conference with counsel for Adam on December 21, 2020, and explained the nature and legal basis of this motion and requested but did not obtain concurrence.


Dated: December 29, 2020          s/Lori Grigg Bluhm
                                  Lori Grigg Bluhm (P46908)
                                  Allan T. Motzny (P37580)
                                  500 W. Big Beaver Road
                                  Troy, MI 48084
                                  (248) 524-3320
                                  Bluhmlg@troymi.gov

## BRIEF IN SUPPORT

## STATEMENT OF ISSUES PRESENTED

1) Whether Plaintiff can prove Troy imposed a land use regulation that imposed a substantial burden on Adam's exercise of religion.

2) Whether Plaintiff can establish Troy imposed regulations treating religious institutions less favorably than similar nonreligious institutions.

3) Whether Plaintiff can prove that Troy discriminated against religion or imposed regulations that unreasonably limited religious institutions.

4) Whether Plaintiff's claims brought under 42 U.S.C. § 1983 should be dismissed since there is no evidence of constitutional violations.

## STATEMENT OF MOST CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

- The most appropriate authority for Issue 1 is *Livingston Christian Schools v Genoa Charter Township,* 858 F3d 996 (CA 6, 2017).

- The most controlling or appropriate authority for Issue 2 is *Tree of Life Christian Schools v City of Upper Arlington,* 905 F3d 357 (CA 6, 2018).

- The most controlling or appropriate authorities for Issue 3 are 42 U.S.C. § 2000cc(b)(2) and 42 U.S.C. § 2000cc(b)(3).

- The most controlling or appropriate authority for Issue 4 is *Napier v Madison County, KY,* 238 F3d 739, 743 (CA 6, 2001).

## INTRODUCTION

Plaintiff's complaint against Troy alleges violations of the Religious Land Use and Institutionalized Person Act, 42 USC §§ 2000cc – 2000cc-5 (RLUIPA), and seeks monetary, injunctive and declaratory relief. Count I is under 42 U.S.C. § 2000cc (a)(1) – where Plaintiff alleges Troy imposed a land use regulation that substantially burdened Adam's religious exercise. Compl, par 71, Apx p 18. Count III relies on 42 U.S.C. § 2000cc(b)(1) and contends that Troy's land use regulation treats religious institutions less favorably than nonreligious institutions. Compl, par 73, Apx p 19. Counts II and IV allege violations under 42 U.S.C. § 2000cc(b)(2) and (3). Compl par 72 and 74, Apx p 19.  Counts V – X allege a 42 U.S.C. Section 1983 claim and violations of the 1st, 5th, and 14th Amendments. Compl par 115-156, Apx pp 27 -34.

This case was consolidated for discovery and pretrial purposes with the pending US v. Troy case, since both stem from Adam's request to convert an existing building, located at 3635 Rochester Road into a mosque, community center, library, gymnasium, and banquet hall. The existing building does not meet Troy's setback and parking requirements for a house of worship. (Chapter 39, Section 6.21)   Adam then applied to Troy's ZBA, requesting several variances. After a public hearing, the ZBA unanimously denied Adam's requested variances, articulating that Adam had not satisfied the requisite burden of proof. Plaintiff claims the ZBA's denial of the variances

violate RLUIPA because it imposed an unjustified substantial burden on Adam's exercise of religion. Compl, par 71, Apx p 18. It also claims Section 6.21 of Troy's zoning ordinance, imposing 50-foot setbacks for places of worship, violates RLUIPA because nonreligious places of assembly do not share the same setback and parking requirements. Compl par 48, 68, 101, Apx pp 10,17,24. Plaintiff also contends the City treated Adam less favorably than similarly situated nonreligious places of assembly and institutions when it denied Adam's multiple variance requests. Compl par 73, Apx p 19. Plaintiff's remaining claims under RLUIPA's nondiscrimination and exclusions and limits provisions and its constitutional claims are based on the same alleged facts.

## STATEMENT OF FACTS

The City of Troy's zoning ordinance was adopted in accordance with the Michigan Zoning Enabling Act (MZEA), MCL 125.3102 *et seq.,* to promote and safeguard the public health and safety and the welfare of all members of the community. A fuller explanation of the purpose of the zoning ordinance is set forth in Sections 1.02 and 1.03 of the zoning ordinance. Apx pp75-76.[1] The zoning ordinance is based on the City's Master Plan, as required. MCL 125.3203. The Troy City Council adopts ordinances or amendments, but the

---

[1] The current ordinance was adopted April 11, 2011. Although there have been minor amendments since that date, such amendments are not applicable to any issues in this case.

Planning Commission make recommendations, receives input from planning experts and members of the public, holds a public hearing, and transmits all comments to Council.  MCL 125.3211, MCL 125.3301, MCL 125.3303, 3307-3308. City Council then conducts an additional public hearing, as allowed by MCL 125.3401. This process was followed for Troy's current zoning ordinance, and the City's expert has further detailed this process, as well as the reasoning for the provisions related to places of worship is set forth in the City's expert report.[2] Carlisle Rep, pp 1 – 4, Apx, pp 104-107.

Troy has numerous zoning districts, and the ordinance specifies whether a particular use is permitted in the district as of right or as a special land use. If permitted as a special land use, there are additional requirements designed to minimize the negative impacts on surrounding property that frequently arise with the proposed use, and proactive conditions can also be imposed. ICLE, *Michigan Zoning and Planning,* April 2009 Update, p 106.  Under Troy's zoning ordinance, places of worship are permitted either as of right or as a special use in approximately 97% of the City, in all zoning districts except for EP Environmental Protection, PV Planned Vehicle Sales, and Parking.

---

[2] The City's expert report indicates it was prepared by Richard Carlisle. Due to health issues, Richard Carlisle is unable to serve as the City's expert.  Instead, Benjamin Carlisle, who prepared the report along with Richard Carlisle (See Carlisle TR pp 51, 53 , Apx pp 118-119) will be the person who testifies as the City's expert at trial.

Carlisle Rep, p 3, Apx p 106. Section 4.21 of the zoning ordinance
designating the uses permitted in each district is set forth in Apx pp 81-84.

Places of worship are subject to specific use standards, as set forth in
Article 6 of the zoning ordinance. Apx pp 86-87. The more specific standards
for a special use prevail over general standards, since they are designed to
minimize negative impact(s) on surrounding property. Section 6.21 requires
places of worship be at least 50 feet from the front, side, and rear property
lines, and prohibits parking in these setbacks when adjacent to public streets
or residentially zoned land. Community Development Director Savidant
explains that places of worship can present unique potential negative impacts
on a community, especially since many have scheduled services where there
is a significant influx and exodus of cars over a short period of time. Apx pp
138-139, paragraphs 6-7. They also usually host other events with significant
visitors (weddings, funerals, graduation parties, religious festivals, etc.) at
different times of the day and until late at night, causing negative impacts to
abutting properties, such as car alarms, crowd noise, headlight glare, and loud
music. Unlike other types of uses, there is significant traffic and a need for
ample parking in a short period of time and on a regular basis, resulting in
traffic backups on local roads and other unique public health, safety, and
economic concerns. Savidant justified the parking and setback provisions for

places of worship, based on the City's experience and knowledge of significant historical negative impacts – which do not occur with other places of assembly. Savidant Tr, pp 15, 57-58, 60-61, 63, 65-66, 163-164, 173-174, 211, 213, Apx pp 147,149,150-158, 161,163. Troy's City Manager Mark Miller, a certified planner and previous City Planning Director testified about his 20- year experience in Troy, noting that places of worship generated significant traffic and noise issues which detrimentally impacted neighboring residential properties. Miller Tr, pp 10, 20, 33-34, 92, 93, 122-123, Apx pp 166-173. The City's planning consultant and expert witness agrees that unique setback and parking regulations are required for places of worship. Carlisle Tr, pp 111, 113-114, 140-141, 156, 165,167, 351-352, Apx pp 120, 122, 123, 124, 125, 126,128,129,132,133. According to Carlisle, adequate spacing is required between parking areas because of noise, light, and exhaust fumes during concentrated peak periods of time, and there needs to be adequate distance between the busy thoroughfare and the parking access points. Carlisle Rep, p 4, Apx p 107. Carlisle's report recognizes that unlike other places of assembly, there are substantial ancillary uses, such as day cares, schools, social halls, athletic facilities, shelters, etc., and this was confirmed by Savidant. Savidant Tr, p 63, Apx p153, Carlisle Rep, p 4, Apx p 107. In its variance application, Adam proposed to use the property for several

8

  
ancillary uses, including a library, gymnasium, recreation facility, conference center, counseling center and a banquet hall.  Carlisle Rep, p 4, Apx p 107.

These 50-foot setback and parking restrictions for places of worship have been in place for several years. Carlisle Rep, pp 1-2, Apx pp 104,105, Savidant Tr, 37, Apx p 148.  As explained by Savidant, those provisions worked well for the City so they were carried over when the City did its major revision of the zoning ordinance in 2011. The subject property in this case – 3635 Rochester Road – is located in Troy's GB General Business District, where places of worship are permitted as of right, subject only to the specific provisions of Section 6.21, and the general provisions found in Sections 4.14C and D.  Apx pp 77-80, which require at least 10-foot front yard setback, a 30-foot rear yard setback, and a total of 40 feet in side yard setbacks. Any yard adjacent to residentially zoned property must be at least 75 feet from the property line in a GB district, so the specific 50 foot set back provisions of Section 6.21 are actually less restrictive than the 75-foot general setbacks.

Plaintiff's Complaint implies that the City has thwarted Adam's efforts to establish a place of worship, without factual support. Plaintiff's first formal request to facilitate a "place of worship" was on April 23, 2019, when Plaintiff submitted its variance application for the subject property at 3635 Rochester Road. Apx pp 174-204. Dr. MD. Nurul Amin confirmed he is the president of

Adam Community Center.  Amin Tr p 7, lines 10-11, Apx p 208 (deposition excerpts at Apx pp 206-230). In 2013, Adam tried to purchase a different property at 4924 Rochester Road for use as a "community center," and expressly not as a place of worship.  Amin Tr p 25, lines 11-18, Apx p 210. Based on Dr. Amin's representations, the City granted approval. Then, the City received contradictory documentary information suggesting that Adam's proposed use was in fact a place of worship, and the building did not meet the specific requirements of Section 6.21. Accordingly, on October 28, 2013, the City sent Dr. Amin a letter, inviting him to present information about the proposed use at a public hearing, where Troy's ZBA would use this information in its interpretation of Troy's ordinance provisions. Amin Tr p 29, lines 8-22, Apx p 211. A copy of that letter is included in Apx pp 231 -233. The ZBA has authority to interpret the zoning ordinance pursuant to MCL 125.3603 and Section 15.04 D of the ordinance. Apx pp 93-94.

On January 21, 2014, the ZBA reviewed relevant information and took comments from members of the public, including Dr. Amin and an attorney representing Adam.  Amin Tr p 30, line 20 – p 31, line 15, Apx pp 212-213. At the conclusion of the public hearing, the ZBA determined the appropriate regulations were for a place of worship. Amin Tr p 32, lines 4-7, Apx p 214. The minutes for this ZBA meeting are included in Apx pp 234-237.  Since the

building did not meet the requirements of Section 6.21, it would not be compliant without variance(s).  Although Dr. Amin claims Adam applied for such a variance, the private property owner sold the property to another party before anything could be decided by the ZBA. Amin Tr p 33, lines 17-25, Apx p 215. After this matter, it is clear that Dr. Amin knew zoning requirements for places of worship since at least 2013. Amin Tr p 35, lines 18-21, Apx p 217.

Adam continued to search for properties for its place of worship. Amin Tr p 34, lines 13-25, Apx p216. In 2017, Adam attempted to acquire a residential parcel on Long Lake Road, which may have lent itself to a special use approval if Adam also acquired two adjacent residential parcels.  Amin Tr p 35, line 22 – p 37, line 12, Apx pp 217-219.  However, Adam didn't complete the necessary property assemblage, because the price was too high. Amin Tr p 37, line 18 – p 38, line 9, Apx pp 219-220.  Adam also tried to purchase an existing place of worship on Coolidge that complied with the zoning requirements. Amin Tr p 48, line 21 – p 49, line 14, Apx pp 221-222.  This property was sold before Adam could complete the transaction.  Amin Tr p 50, lines 14-21, Apx p 223.  Although Dr. Amin implies discriminatory actions, this was a private sale. Amin Tr p 50, line 24 – p 51, line 18, Apx pp 223-224.

Plaintiff's expert Alan Weinstein reports that Adam attempted to purchase at least five properties for a place of worship in Troy.  Weinstein

Rep, pp 10-11, Apx pp 248-249.  The first property is 301 Square Lake Road, which was only large enough to accommodate a single-family home, which is the likely the reason Adam declined to purchase it, rather than the City's setback provisions.  Paragraph 9, Brent Savidant Affidavit, Apx pp 139-140. Weinstein admits that Adam investigated 6191 John R., but this was not viable for Adam because of wetlands on the property. Weinstein Rep, p 10, Apx p 248.  However, Adam could have pursued a permit that would have allowed construction that impacted the wetlands.  MCL 324.30304 and 30306. In the report, Adam rejected a third property at 900 W. Maple because Adam's members thought it was too distant from the center of Troy.  Weinstein Rep, p 10, Apx p 248.  This property met the setback and parking regulations of Troy's zoning ordinance.  Savidant Affidavit, paragraph 9.  Apx pp 138-139.

On April 25, 2017, Dr. Amin sent an email to Savidant with a list of five properties, inquiring whether they could be used as a place of worship. Amin Tr p 51, line 23 – p 52, line 5, Apx pp 224-225.  A copy of that email is set forth in Apx pp 276 - 278. Savidant responded, saying he did not have access to real estate listings, and the City was not able to vet the suitability of proposed parcels for Adam or any other proposed purchaser's use, and suggested the retention of a property broker for the task. In April 2018, the agreement for the subject property at 3635 Rochester Road was executed.

Amin Tr p 76, line 12 – p 77, line 15 Apx pp 226-227 and is attached in Apx pp 279- 286.  The building had been previously used as a shoe store, market, and a restaurant. Savidant, Tr p 253, Apx p 163. The building and its use were non-conforming- not meeting the setback provisions for those uses. See par 10 of Savidant affidavit, Apx pp 279-280.  Under Sections 14.03 and 14.04, non-conforming structures and uses existing prior to the applicable zoning provisions may be continued.  Apx pp 88-90. However, any new use is required to be compliant. Savidant Tr, pp 203-204, Apx pp 159-160, Par 10 of Savidant Affidavit, Apx  p 141. Since Adam proposed a new use, which increased the non-conformity, there was no grandfathering. Par 10, Savidant Affidavit, Apx p 142. Dr. Amin knew the building did not meet the setback requirements of Section 6.21 and it could not be used as a place of worship without a variance from the ZBA, Amin Tr p 77, lines 16 - 21, Apx p 227. Demolition of the existing building to construct a new, compliant building wasn't considered.  Amin Tr p 82, line 10 – p 83, line 6, Apx pp 228-229.

Adam applied for dimensional variances from Section 6.21 of the zoning ordinance.  Appendix. Apx pp 174-204. The public hearing was scheduled for June 19, 2018, the next available ZBA meeting. Under Section 15.04 E, and in accordance with MCL 125.3604(7), the ZBA can grant dimensional variances only where "*a literal enforcement of the provisions of this ordinance would*

*involve practical difficulties…."* To demonstrate practical difficulty, the applicant has the burden of proof, and must present substantial evidence to satisfy ALL five of the criteria listed in Section 15.04. E. 2 for any proposed use of the property. Under Section 15.04. E. 4, *"no variance shall be granted where a different solution not requiring a variance would be possible."*

At the ZBA hearing, Administrator Evans highlighted Adam's requested 50-foot front, side, and rear setback variances, as well as a waiver of the no-parking and open landscape requirements in the setbacks. ZBA Tr p 43, lines 19-25, Apx p 289.  Using Adam's survey, Evans explained that "it's *very clear from the property conditions that significant portions of the building and parking areas are located within that 50-foot setback."*  ZBA Tr p 43, line 25 – p 44, line 3, Apx pp 289-290. Evans also noted that *"in order to proceed to use this facility as a place of worship, they're going to need a variance from the board on these three matters."* ZBA Tr p 44, lines 8-10, Apx p 290.

The hearing process complied with MCL 125.3604 and Section 15.05 of Troy's ordinance. Adam's attorney made a presentation and answered questions from Board members, ZBA p Tr 45, 46-56, lines 18 - 25, Apx p 292-303. Because of the size of the audience, and before opening the public hearing, the ZBA chair discussed limiting public comment to three minutes per person. ZBA Tr pp 57 line 11 –p 58, line 15, Apx pp 304-305.  Imposing such

limits at public meetings is a common practice and authorized by Michigan's Open Meetings Act, MCL 15.263(5) and the established rules of procedure adopted by Troy's ZBA. See Article III of the ZBA Rules of Procedure, Apx pp 374-375. The Board imposed a three-minute rule. ZBA Tr p 60, lines 1-14, Apx p 306. Several people addressed the Board during the public hearing. ZBA Tr pp 63-118, Apx pp 307-362. Afterwards, the ZBA Chair closed the public hearing and brought the matter back to the Board. ZBA Tr p 118, lines 3-6, Apx p 362. Most of the discussion was headed by the ZBA Chair, but other ZBA members had questions and/or comments. In response to an inquiry, Troy's attorney advised the ZBA to apply the practical difficulty standard for these dimensional variance requests, just as it does for all nonuse variances. ZBA Tr 127, lines 3-17, Apx p 363. ZBA member Eisenbacher observed the largeness of the request, with a 100% variance on one side. ZBA Tr p 131, line 9 – p 132, line 7, Apx pp 365-366. ZBA member McCauley agreed, and pointed out some safety concerns. ZBA Tr p 132, line 9 – p 133, line 8, Apx pp 365-366. In response to a question from Kuppa, Evans reported that it was possible for the applicant to construct a new building on the property that would comply with the ordinance. Tr p 136, lines 14 – 24, Apx p 366. Member Kuppa also asked about RLUIPA and was advised to apply the standards governing any dimensional variance request.

15

ZBA Tr p 137, lines 2 – 17, Apx p 367. Evans responded to another Kuppa

question, reporting that if the building continued to be used for its existing

commercial purpose as restaurant/ storage space, no variance would be

needed.  However, since the applicant was seeking a new use, it had to meet

the dimensional requirements specific to places of worship.  ZBA Tr p 140,

line 17 – p 141, line 4, Apx pp 368-369.  ZBA Member Kaltsounis commented

on traffic concerns with the property.  ZBA Tr p 141, line 23 – p 142, line 10,

Apx pp 369-370.  After discussion, ZBA member Agauas made a motion to

deny the variances, finding applicant had not established the requisite

practical difficulty and that the request was too aggressive, especially with a

100% variance on one side. ZBA Tr p 142, line 21- p 143, line 1, Apx pp 370-

371. The motion was seconded by McCauley, and the denial was passed 6 to

0.  ZBA Tr p 143, line 4, Apx p 371, ZBA Tr p 143, lines 7 – 22, Apx p 371.

## **STANDARD OF REVIEW**

Summary judgment is proper under Fed. R. Civ. Pro. Rule 56 if there is

no genuine issue as to any material fact and the movant is entitled to

judgement as a matter of law."  There is no issue for trial unless there is

sufficient evidence, favoring the nonmoving party, to allow a jury verdict in

favor of that party. *Anderson v Liberty Lobby Inc.,* 477 US 242; 106 S Ct

2505, 2512; 91 L Ed 2d 202 (1986).  The mere existence of scintilla of

evidence in support of the Plaintiff's position is insufficient; there must be evidence from which the jury could reasonably find for the Plaintiff.  *Id.*

## ARGUMENT

### I. PLAINTIFF HAS NOT PROVEN TROY IMPOSED A LAND USE REGULATION SUBSTANTIALLY BURDENING RELIGIOUS EXERCISE

Under RLUIPA, a claimant bears the burden of proving religious exercise was substantially burdened. 42 USC § 2000cc-2(b), *Holt v Hobbs,* 574 US 352, 360; 135 S Ct 853; 190 L Ed 2d 747 (2015).  Whether a municipality's actions imposed a substantial burden is a law question for the Court to decide.  *Livingston v Genoa Charter Twp.,* 858 F3d 996, 1001 (CA 6, 2017).  As stated in that case*,* "…n*ot just any imposition on religious exercise will constitute a violation of RLUIPA." Id,* 1003. *"Instead, a burden must have some degree of severity to be considered 'substantial." Id.* A substantial burden is "*more than an inconvenience." Id,* citing *Midrash,* 366 F3d 1214, 1227 (CA 11, 2004).  For this determination, a court may consider if a religious institution has feasible alternative locations. *Livingston,* 1004, citing *Westchester,* 504 F3d 338, 352 (CA 2, 2007). Additionally, several circuits have held there is no RLUIPA substantial burden violation when there is a self-imposed burden. *Livingston,* 1004. *"Allowing a plaintiff to make out a substantial-burden claim where the plaintiff has burdened itself or in fact has easy access to suitable property*

*in a neighboring jurisdiction is beyond the protection or RLUIPA." Id,* 1011.

In cases involving a denial of a zoning variance, "*Plaintiff must show that the denial of the variance request "coerces" individuals into acting contrary to their religious beliefs. Great Lakes v. Georgetown,* 281 Mich App 396, 424; 761 NW2d 371 (2008), quoting from *Shepherd Montessori*, on remand, 280 Mich App 449; 761 NW2d 230 (2008).

In this case, Adam has not suffered a substantial burden on its religious exercise. Dr. Amin and expert Alan Weinstein have verified there are alternative locations in Troy that would have been suitable for a place of worship and in compliance with the zoning ordinance. Property on Coolidge immediately utilized as a place of worship without variances or building permits. Savidant Affidavit, Apx pp 139-140. Property on Maple could have been used in compliance with Troy's zoning ordinance. Adam rejected this potential site because it was not conveniently located in the center of Troy. Additionally, other mentioned properties could have also been used as a place of worship, with a wetland permit or proper assemblage and pursuit of a special use request. There has been no evidence presented in this case that any City official or body took any action that was a substantial burden on Adam's exercise of its religion.

Additionally, Plaintiff's RLUIPA substantial burden allegations fail

because Adam could still use the subject property for a place of worship without the need to acquire a variance if the existing building was modified. Evans reported that Adam could construct a new building on the subject property that would comply with the ordinance and eliminate the need to seek a variance from the ZBA.  ZBA Tr p 136, lines 14 – 24, Apx p 366, and this was confirmed by Savidant who drafted a 6,400 square foot building on the property that met all the setback and parking requirements for a place of worship.  Par 11, Savidant Affidavit, Apx pp 141-143. According to Dr. Amin, Adam needed a building that was at least 6,000 square feet in size. Amin Tr 21, Apx p 209. Adam's reluctance to pursue this is partly due to costs and economic reasons. Amin Tr 83, Apx p 226. Adam has not established a mosque in Troy because it does not want to pay the costs to acquire suitable property or make the subject parcel compliant; and/or because Adam is unwilling to acquire property unless it is conveniently located in the center of the City; and/or because it does not want to get special use approval or acquiring a wetland permit.  This is not a substantial burden on its ability to exercise its religion.  *Livingston,* 1003.

Plaintiff's self-imposed burden status also defeats Plaintiff's RLUIPA substantial burden allegations.  *Livingston,* 1004. Adam purchased the subject property knowing it did not meet the ordinance requirements for a

place of worship. Amin Tr p 77, lines 16 - 21, Apx p 227. *Andon v Newport News, Va,* 813 F3d 510 (CA 4, 2016) is instructive, since it involved a congregation seeking to lease property that would require a variance, because the existing building did not meet the 100-foot setback from residential property required for places of worship. The BZA denied the variance and the congregation sued. As in this case, Plaintiff argued it could not find a suitable property in the community, but *Andon* Court found a self-imposed hardship as self-imposed, because they entered into the transaction knowing the building did not comply with the setback provisions. The *Andon* Court held that self-imposed hardships do not violate RLUIPA, since there was no legitimate expectation the proposed use would be allowed. *Id,* 515. The Court cautioned that otherwise, such "*a holding would usurp the role of local governments in zoning matters when a religious group is seeking a variance, and impermissibly would favor religious uses over secular uses.*" *Id,* 516. In the present case, Adam knew at the time it acquired its interest in the property that the existing building could not be used as a place of worship in compliance with the zoning ordinance. Its difficulty in establishing a mosque is a self-imposed hardship.

The Court can also consider whether a religious institution has a feasible alternative location where it can carry on its mission. *Livingston,*

1004.  "*When a religious institution has an available alternative outside of a desired jurisdiction, and where the distance from the desired location is reasonably close, the artificial boundaries of a particular jurisdiction become less important." Id,* 1011.  Various circuits have held *"requiring a religious institution to use feasible alternative locations for religious exercise does not constitute a substantial burden." Marianist Province v Kirkwood,* 944 F3d 996, 1001 (CA 8, 2019) citing *San Jose Christian v Morgan Hill,* 360 F3d 1024, 1035 (CA 9, 2004).  Plaintiff's complaint focuses on the lack of any Muslim house of worship within the borders of Troy, but Dr. Amin confirmed there are existing mosques within a five to fifteen-minute drive from most locations in Troy.  Amin Tr 97, Apx p 230.  The Islamic Association of Greater Detroit (IAGD) is only 5.8 miles from Troy's City Hall, according to Google Maps.  (Courts can take judicial notice of maps, *Id 1008*.)  Because of this proximity, Troy's lack of a mosque is not a substantial burden on the ability to exercise the Muslim faith.

Plaintiff has failed to provide any evidence that the denial of the requested variances coerced individual members of Adam to act contrary to their religious beliefs. *Great Lakes Society,* 424. Plaintiff may argue that "any" inconvenience as a result of a land use regulation constitutes a substantial burden.  If that is true, then RLUIPA is unconstitutional. The

First Amendment provides *"Congress shall make no law respecting an establishment of religion…"* US Const Am 1. The intent of this Clause is to afford protection against sponsorship, financial support, and active involvement of the sovereign in religious activity. *Lemon v Kurtzman,* 403 US 602, 612; 91 S Ct 2105; 29 L Ed 2d 745 (1971).

> *"In proscribing all laws 'respecting an establishment of religion' the Constitution prohibits, at the very least legislation that constitutes an endorsement of one or another set of religious beliefs or of religion generally. It is part of our settled jurisprudence that 'the Establishment Clause prohibits government from abandoning secular purposes in order to put an imprimatur on one religion, or on religion as such, or to favor adherents of any sect or religious organization.'" Texas Mobility Inc v Bullock,* 489 US 1, 8-9; 109 S Ct 890; 103 L Ed 2d 1 (1989).

In *Tree of Life,* the Court noted as follows with regard to RLUIPA:

> *"Did Congress intend for the statute to require municipalities to extend preferential treatment to religious entities? We think not. Such a requirement would be inconsistent with any definition of the term 'equal' and it would likely run afoul of the First Amendment Establishment Clause."*

If a nonreligious entity wants to develop land, it must comply with zoning regulations and pay the costs of acquiring property and constructing a building that complies with the zoning provisions. If special approval or a wetland permit is necessary, a nonreligious entity must pursue those actions, or abandon its plan. Religious institutions are held to the same standards, and this is not changed by RLUIPA, since this would be

unconstitutional preferential treatment in violation of the First Amendment.

## II.  TROY HAS NOT IMPOSED A LAND USE REGULATION THAT TREATED A RELIGIOUS INSTITUTION ON LESS FAVORABLE TERMS THAN A SIMILARLY SITUATED NONRELIGIOUS INSTITUTION.

Plaintiff cannot establish a RLUIPA equal terms claim, since it has not established that Troy imposed or implemented a land use regulation that treats the religious institution *"on less than equal terms with a nonreligious … institution."* 42 USC § 2000cc(b)(1). The Court must compare only "*similarly situated*" secular institutions. *Tree of Life Christian Schools,* 368-370.  Plaintiff *"…bears the burden of making out a prima facie case, and only if the pre-condition is satisfied does the burden of persuasion shift to the government." Id.* 370. Plaintiff has set forth two allegations that defendants treated similarly situated nonreligious institutions more favorably than it treated Adam. First, Plaintiff claims Troy violated RLUIPA because it granted variances to similarly situated nonreligious institutions but denied Adam's requests for variances. Complaint, par 54, Apx pp 21,57. Second, Plaintiff claims that Troy's zoning ordinance impermissibly distinguishes houses of worship from theatres, places of assembly, conference, meeting, and banquet facilities, fine and performing art facilities, dance, music, and art studios, daycare centers, preschools, primary and secondary schools and funeral homes, which Plaintiff

claims are similarly situated to places of worship but subject to different setback and parking requirements.

Plaintiff's first RLUIPA equal terms allegation fails, since Plaintiff has not established that defendants treated Adam any differently than any other applicant seeking dimensional zoning variance requests.  Pursuant to Section 15.04.E.2 of the zoning ordinance, Apx pp 94-95, there are five criteria that an applicant must establish with substantial evidence before the ZBA can grant dimensional variance(s). The criteria must be met by all applicants seeking a variance, regardless of whether the applicant is a religious or nonreligious institution. Carlisle Rep, p 5, Apx p 108, Carlisle Tr, p 355, Apx p 134. Since nonreligious and religious institutions seeking variance(s) are treated equally, there is no basis for a RLUIPA equal terms claim because of a a ZBA denial.

Plaintiff's expert Alan Weinstein implies the ZBA treated nonreligious institutions more favorably than it treated Adam and asserts some of those other institutions were similarly situated. Weinstein Rep p 29, Apx p 267, but Plaintiff has not met its burden of proof.  Adam's variance requests were denied because Adam failed to establish the five criteria required for its requested relief.  Variance requests are decided on a case by case basis, Carlisle Tr, pp 346, 47, Apx pp 130-131, Clark Tr, pp 43, 47, Apx pp 379-380, so the fact that one applicant for a variance satisfied the criteria based on its

particular circumstances does not mean another applicant with different circumstances should also be granted a variance. As Carlisle pointed out at his deposition, most variances should not be approved. Carlisle Tr, p 355, Apx p 135. Plaintiff's expert admitted that Adam's requested variances were quite substantial. Weinstein Rep p 29, Apx p 267. Adam also sought several variances, and one was for the entire 50- foot setback. Clark Tr, p 163, Apx p 381. Plaintiff has not demonstrated true comparators were treated differently.

Plaintiff also argues Adam allegedly met the variance criteria, and the ZBA should have granted its requests. However, there is no evidence to show the ZBA improperly carried out its duties to carefully determine if each of the five criteria were satisfied. If Adam felt otherwise, its remedy was to appeal the decision to the Circuit Court. MCL 125.3606. A mere disagreement with a ZBA decision is not a basis for a RLUIPA equal term claim.

Second, Plaintiff claims that Troy's zoning ordinance imposes more onerous setback and parking restrictions on places of worship than it does on similarly situated nonreligious institutions, which is an alleged equal terms RLUIPA claim. Again, none of the non-religious institutions identified in Plaintiff's complaint are appropriate comparators. As set forth in *Tree of Life Christian Schools,* comparators must be similarly situated with regard to legitimate criteria set forth in the zoning ordinance. *Tree of Life,* 369. In that

case, the City identified income tax revenue as a goal of zoning, and the Court agreed it was a legitimate zoning criterion. *Id.*, 372-373. Plaintiff's proposed Christian school was not similarly situated to other revenue generating uses that were treated differently under the ordinance, and therefore there was no violation of the equal terms provision of RLUIPA. *Id.,* 376.

In this case, the legitimate criteria in the zoning ordinance that justifies different setbacks and parking regulations for places of worship is detailed in the purpose section of Troy's zoning ordinance- Section 1.03. Apx. p 75-76. The overall purpose is to "*promote and safeguard the public health, safety and welfare" and "implement the Master Plan."* Individual purposes include protecting *"the character and stability of residential neighborhoods,"* providing "*transitions between land uses to reduce potential negative impacts"* and to "*lessen and avoid congestion on highways and streets, and provide safe and convenient access for property.*" Troy's 2011 zoning amendments were adopted with the foregoing purposes in mind, and *"were designed to accommodate places of worship in both residential and non-residential areas while still protecting neighboring residential areas."* Carlisle Rep, p 3, Apx p 106. The setbacks applicable to places of worship advance the goals of Troy's zoning ordinance by *"providing adequate spacing between parking areas that generate noise, light, and exhaust fumes for concentrated peak periods of*

26

*time."* Carlisle Rep p 4, Apx p 107.  Additionally, the parking regulations applicable to places of worship promote public health, safety and welfare because unlike many other places of assembly, places of worship *"typically have scheduled times of worship when members arrive and leave during conceptual periods of time."* Carlisle Rep, p 4, Apx p 107.  Thus, "*prohibiting parking in the front yard setback is designed to give drivers adequate distance between a busy thoroughfare and the point at which parking can be accessed."* Carlisle Rep, p 4, Apx p 107.  Another reason strict setback regulation for places of worship is justified is that places of worship, unlike other institutions and places of assembly, tend to have an "*an extensive number of uses other than worship that the building or buildings serve."* Carlisle Rep, p 4, Apx p 107.  Adam admitted in its application for a variance that the subject property would be used for multiple purposes in addition to serving as a place of worship.  Carlisle Rep, p 4, Apx p107.

Plaintiff, relying on the Weinstein report, will likely contend there is no justification for having parking and setback regulations for places of worship that differ from the parking and setback regulations applicable to theatres, places of assembly, conference, meeting, and banquet facilities, fine and performing art facilities, dance, music, and art studios, daycare centers, preschools, primary and secondary schools and funeral homes.  However,

Weinstein's claims are based on generalities and not on evidence specific to the City of Troy.  Based on Troy's own experience with places of worship, it is evident they are not similarly situated to other institutions.

As explained by the Court in *Tree of Life,* Congress failed to provide any guidepost as to what is meant by the term "*equal*" as that term is used in RLUIPA's equal terms provision.  *Tree of Life,* 367.  As a result, local units of government are afforded discretion in determining what constitutes equal treatment, based on the particular circumstances of the community.  Such an interpretation is consistent with established precedent that regulation of land use is a *"quintessential state and local power." Rappanos v United States,* 547 US 715, 738; 126 S Ct. 2208; 165 L Ed 2d 159 (2006). The power of local government to zone and control land uses is broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life. *Schenck v City of Hudson,* 114 F3d 590, 593-594. A local legislative body need not even select the best or the least restrictive method of attaining its goals so long as the means selected are rationally related to those goals.  *Id.,* 594.  The determination of whether a local zoning regulation is justified is based on the particular locality circumstances.  As explained in the landmark decision of *Village of Euclid v Ambler Realty,* 227 US 365, 388; 47 S Ct 114 (1926):

*"Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a*

*particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances of the locality."*

Since the justification for a particular zoning provision varies with circumstances and conditions, a big city regulation might be invalid in a rural community. *Id.,* 387. Zoning regulations in one community may not be suitable in another community, based on unique circumstances, as testified to by the City's expert Carlisle in his deposition. Carlisle Tr p 351, Apx p 132.

In this case, Troy has first-hand knowledge of significant negative impacts caused by places of worship, and these institutions are not similarly situated to the institutions the Plaintiffs claim are treated more favorably. Also, the fact that there are so many places of worship in Troy also supports differing regulations for houses of worship. During his deposition, Carlisle explained Troy has over 60 places of worship and only one or two of the other types of the institutions mentioned in Plaintiff's Complaint. Carlisle Tr p 111, Apx p120. Because of the total impact to the community, there are justifiably different parking and setback requirements. It is much easier to draft specifically tailored ordinance provisions when only a few exist in the City. Carlisle Tr p 111, Apx p 120. Troy has numerous places of worship, with thousands of members coming and going within a short period of time causing traffic and congestion. Carlisle Tr p 140, Apx p 124. This also applies to the

parking provisions of Section 6.21. Precluding parking within the required 50-foot setback leads to less congested parking areas, which is safer for both traffic and pedestrian movement. Carlisle Tr pp 140 -141, 165, Apx pp 124-126. As explained at Carlisle's deposition, another distinction is that customers of other places of assembly are likely to just drive away when a parking lot is full. Carlisle Tr p 167, Apx p 129. In contrast, a congregational member place is more likely to attend a service even when the parking lot is full. Carlisle Tr p 167, Apx p 129. The obvious result is overflow parking either on busy streets or in residential neighborhoods. Places of worship are not similarly situated to other types of institutions or places of assembly.

Mr. Weinstein also suggests Troy impose smaller setbacks for smaller places of worship. Weinstein Rep, pp 14-15, Apx pp 252-253. However, this solution is not practical without a mechanism for future adjustments.

## III. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 2000CC(B)(2) AND 42 U.S.C. § 2000CC(B)(3) SHOULD BE DISMISSED

Plaintiff contends Troy's actions constitute a violation of RLUIPA's nondiscrimination provision, but it has offered no evidence to support this conclusion. In order to prevail, there must be evidence of discriminatory intent. *Chabad Lubavitch v Litchfield County,* 768 F3d 183, 198 (CA 2, 2014). Adam's mere speculation that the City somehow bore discriminatory

animus towards Islam is not sufficient to overcome a motion for summary judgment. *Arendale v City of Memphis,* 519 F3d 587, 605 (CA 6, 2008).

In Count IV, Plaintiff claims a violation of RLUIPA's exclusions and limits provision.  Plaintiff has offered no evidence to support this claim, especially since Troy's zoning ordinance permits places of worship in all zoning districts except for the EP Environmental Protection, PV Planned Vehicle Sales, and Parking districts, allowing places of worship in approximately 97% of the land area in the City of Troy. Plaintiff cannot legitimately argue Troy unreasonably limits religious institutions.

## IV.  PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 SHOULD BE DISMISSED- THERE ARE NO CONSTITUTIONAL VIOLATIONS.

A case brought under 42 U.S.C § 1983 fails when Plaintiff cannot show an underlying constitutional violation. *Napier v Madison County,* 238 F 3d 739, 743 (CA 6, 2001). In this case, Plaintiff has not presented even a scintilla of evidence showing Troy engaged in conduct that violated Plaintiff's constitutional rights. In Count V, Plaintiff alleges a violation of the Free Exercise Clause, but that clause does not relieve an individual from the obligation to comply with neutral laws of general applicability.  *Great Lakes Society,* 389*,* citing *Employment Div. v Smith,* 494 US 872, 878-879; 110 S Ct 1595; 108 L Ed 2d 876 (1990). In this case, Plaintiff was required to meet the variance standards set forth in Section 15.04.E.2.  These provisions are

neutral on their face and there is no proof the ZBA acted in such a way as to infringe upon religious practices. *Church of the Lukumi Babalu Aye, Inc. v City of Hialeah,* 508 US 520, 533; 113 S Ct 2217; 124 L Ed 2d 472 (1993). In Count VI, Adam alleges an Establishment Clause violation. Pursuant to *Lemon v Kurtzman,* 612-13, a government practice violates the Establishment Clause if it 1) lacks a legitimate secular purpose; 2) has the primary effect of advancing or inhibiting religion; or 3) fosters an excessive entanglement with religion. Plaintiff has not satisfied these prongs with either the ZBA denial of the requested variances, nor the imposition of regulations that apply equally to all entities- both religious and non-religious. Adam has also failed to produce evidence Troy violated its Free Speech as alleged in Count VII. There is no proof Troy prevented Adam or its members from assembling as alleged in Count VIII, or passed restrictions limiting speech. Similarly, Plaintiff's Count IX unsuccessfully alleges an Equal Protection violation. Troy's ZBA based its decision to deny the requested variances public health and safety reasons and Adam's failure to meet its burden of proof. The decision had nothing to do with Adam's religion. Plaintiff's Substantive Due Process claims in Count X also fail. Plaintiff has not demonstrated any arbitrary basis for the ZBA decision, and the commentary shows a properly made decision based on the failure to meet the practical difficulty standards.

## RELIEF SOUGHT

For the reasons set forth above, Plaintiff's claims should be dismissed against all defendants, especially the Troy City Council, the Troy Planning Commission, and the Troy ZBA, since there is no evidence establishing any basis as to why those bodies are separately liable for any alleged conduct.

Dated: December 29, 2020

s/Lori Grigg Bluhm
Lori Grigg Bluhm (P46908)
Allan T. Motzny (P37580)
500 W. Big Beaver Road
Troy, MI 48084
(248) 524-3320
Bluhmlg@troymi.gov

## Certificate of Service

I hereby certify that on December 29, 2020, I electronically filed Defendants Motion for Summary Judgment and the Brief in Support of Motion with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record using the ECF system.

s/Lori Grigg Bluhm
Lori Grigg Bluhm (P46908)
Allan T. Motzny (P37580)
Attorneys for Defendants
500 W. Big Beaver Road
Troy, MI 48084
(248) 524-3320

Dated: December 29, 2020      Bluhmlg@troymi.gov