UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAM COMMUNITY CENTER,
               Plaintiff,               Civil Action No. 18-13481
v                                District Judge Nancy G. Edmunds

CITY OF TROY, *et al*,
               Defendants.

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; BRIEF IN SUPPORT OF RESPONSE

Defendants City of Troy, Troy City Council, Troy Planning Commission, and Troy Zoning Board of Appeals (hereafter "Troy" or "City") assert that Plaintiff's motion for summary judgment should be denied and this Court should grant summary judgment in favor of Troy, as allowed under Fed. R. Civ P. 56(f)(1), for the reasons set forth below in the brief in support of this response.

Dated: January 13, 2021          /s/Allan T. Motzny
                                 Lori Grigg Bluhm (P46908)
                                 Allan T. Motzny (P37580)
                                 500 W. Big Beaver Road
                                 Troy, MI 48084
                                 (248) 524-3320
                                 motznyat@troymi.gov

## BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF ISSUES PRESENTED

The issues presented in this case are:

1) Whether Plaintiff Adam Community Center (Adam) has a legally recognized property interest in the land at issue giving it standing to pursue its claims under the Religious Land Use and Institutionalized Person Act, 42 USC §§ 2000cc – 2000cc-5 (RLUIPA).

2) Whether Adam has or can establish that Troy imposed or implemented a land use regulation that imposed a substantial burden on Adam's exercise of religion.

3) Whether Adam has or can establish that Troy imposed a land use regulation that treated Adam on less favorable terms than a similarly situated nonreligious institution.

### STATEMENT OF MOST CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

1) The most controlling or appropriate authorities for Issue 1 are 42 U.S.C. § 2000cc(a), (b) and 42 U.S.C. § 2000cc-5(5).

2) The most appropriate authority for Issue 2 is *Livingston Christian Schools v Genoa Charter Township,* 858 F3d 996 (CA 6, 2017) and 42 U.S.C. § 2000cc(a), (b) and 42 U.S.C. § 2000cc-5(4).

3) The most controlling authority for Issue 3 is *Tree of Life Christian Schools v City of Upper Arlington,* 905 F3d 357 (CA 6, 2018).

## **COUNTER-STATEMENT OF FACTS**

This case involves Adam's efforts to convert an existing building, located at 3635 Rochester Rd. into a place of worship. Under Section 6 .21 of the Zoning Ordinance (Ex 1), the existing building does not meet the setback and parking requirements.  Adam applied to the ZBA requesting several variances, which were denied after a public hearing on June 19, 2018.

Although Adam claims to have an "interest" in the property, Adam does not own the subject property and hasn't established a cognizable interest as of June 2018. Adam's challenge to Defendants' zoning ordinance primarily rests on the report of Alan Weinstein (Adam's Ex T) and his deposition testimony (Adam's Ex S).  Weinstein alleges that Troy's zoning ordinance is fatally flawed, without having ever worked for a municipal planning department, or drafted a zoning ordinance for a Michigan municipality.  Weinstein admits he has only a basic understanding of the Michigan Zoning and Enabling Act (MZEA), MCL 125 .3102 *et seq.,* Weinstein Tr, p 10, lines 5-16, p 10, lines 3-6 and 10-11, and he ignores the explicit purpose of Defendants' zoning ordinance, which is set forth in Sections 1 .02 and 1 .03, (Ex 2), as well as the brief summary detailing the events leading to the adoption of Troy's current

zoning ordinance.  Troy's justification for special restrictions for places of worship is explained in the City's expert report, (Ex 3). Carlisle Rep, pp 1 – 4. Places of worship are allowed in approximately 97% of the land area in the City of Troy, and permitted either as of right or as a special use district in almost all districts. Ex 4, Section 4 .21, Carlisle Rep, p. 3.

Because places of worship present unique potential negative impacts on a community or neighboring properties, Article 6 of Troy's ordinance imposes specific standards, designed to minimize negative impact(s) the use may have on surrounding property.  Any specific use standards prevail over the general standards. Section 6 .21(Ex 1) requires place of worship buildings to be at least 50 feet from the front, side, and rear property lines, and prohibits parking in these setbacks when adjacent to public streets or residentially zoned land. Based on in-depth experience in Michigan zoning law and its application, Defendants' witnesses established that places of worship present unique potential negative impacts on a community. See par's 6 and 7 of Savidant affidavit (Ex 5). The secondary impacts negatively impact abutting properties. Unlike other types of uses, places of worship tend to have large volumes of traffic and need ample parking in a short period of time on a regular basis, which may result in traffic backups on local roads and public health, safety, and economic concerns that generally do not occur in other types of uses.

These factors were reiterated by Savidant during his deposition (Ex 6) where he explained the City's actual experience and knowledge of significant negative impacts in the City – which have not occurred with other places of assembly. Savidant Tr, pp 15, 57-58, 60-61, 63, 65-66, 163-164, 173-174, 211, 213. Troy's Manager Miller is a certified planner who has been with the City for 20 years, and previously served as the Planning Director. He testified in his deposition (Ex 7) that in Troy's experience places of worship have caused significant traffic and noise issues that detrimentally impacted neighboring residential properties. Miller Tr, pp 10, 20, 33-34, 92, 93, 122-123. The City's planning consultant and expert witness gave additional reasons at his deposition (Ex 8) and in his expert report for the different setback and parking regulations for places of worship, due to the unique nature of the use. Carlisle Tr, pp 111, 113-114, 140-141, 156, 165,167, 351-352. According to Carlisle, there is a need to provide adequate spacing between parking areas that generate noise, light, and exhaust fumes during concentrated peak periods of time, and to give drivers adequate distance between a busy thoroughfare and the point at which parking can be accessed. Carlisle Rep, p 4. Places of worship, unlike other places of assembly and institutions, tend to involve an extensive number of ancillary types of uses such as day cares, schools, social halls, athletic facilities, shelters, etc. Savidant Tr, p 63, Carlisle

Rep, p 4. In fact, as noted in its application for a variance, Adam proposed to use the subject property for several ancillary uses. Carlisle Rep, p 4.

Defendants' 50-foot setback and parking restrictions for places of worship were on the books for several years prior to the 2011 amendment to the zoning ordinance. Carlisle Rep, pp 1-2, Savidant Tr, 37.  As explained by Savidant, those provisions had worked well for the City so they were carried over when the City did its major revision of the zoning ordinance in 2011. Defendants' witnesses were consistent in detailing this.  Even with its mischaracterization of witness statements, and the use of statements taken out of context, Plaintiff has not refuted this testimony.

The subject property – 3635 Rochester Road – is located in Troy's GB General Business District, where places of worship are permitted as of right subject only to the provisions of Section 6 .21. For other uses in a GB district, the general setback provisions are found in Sections 4 .14C and D (Ex 9), and include a minimum 10-foot front yard setback, a 30-foot rear yard setback, and a total of 40 feet in side yard setbacks.  Additionally, any yard adjacent to residentially zoned property must be at least 75 feet from the property line.  As a result, Troy's place of worship setbacks are less restrictive than the 75-foot general setbacks for other uses in the GB district.

Although Adam implies the City has for several years thwarted Adam's efforts to establish a place of worship, there is no factual support for this implication. The first time a formal request for approval of a "place of worship" on behalf of Adam occurred when Amin applied for the variances for the subject property at 3635 Rochester Road. See Adam Ex L. At his deposition, (Adam Ex I), Amin testified Adam wanted to purchase a different property at 4924 Rochester Road to be used as a "community center" and not as a place of worship. Amin Tr p 25, lines 11-18. Based on these representations by Dr. Amin, the City granted approval. However, subsequent to the approval, the City was provided a great deal of contradictory information, which suggested that Adam was actually planning to use the building as a place of worship. This was significant because the building did not meet the requirements of Section 6.21. Accordingly, the City sent Dr. Amin a letter dated October 28, 2013 (Ex 10) indicating the City would submit this matter to a public hearing before the ZBA, as allowed by the ordinance, and would defer to the ZBA's determination as to whether Plaintiff's proposed use was a "place of worship" Amin Tr p 29, lines 8-22. The ZBA has authority to interpret the zoning ordinance pursuant to MCL 125 .3603 and Section 15 .04 D the zoning ordinance (See Ex 11). The ZBA held a public hearing on January 21, 2014, where it reviewed relevant information and took comments from members of

the public, including Dr. Amin and an attorney representing Adam. Amin Tr p 30, line 20 – p 31, line 15. The ZBA determined the proposed use of the property was a place of worship. Amin Tr p 32, lines 4-7, (Also see Ex 12). Subsequently that property was sold. Amin Tr p 33, lines 17-25.

Adam makes other inaccurate statements in its brief.  On page 3 it implies Troy improperly allows its own Community Center to be used as a place of worship, but fails to mention the Community Center complies with Section 6.21.  On page 4 it implies Troy was obligated to help locate property suitable for a place of worship even though RLUIPA has no such requirement. Adam also claims ZBA members told Adam they should look elsewhere for property, but the referenced transcript pages reveal that statement is false. On page 11 Adam suggests that the City unfairly approved Woodside Bible Church without requiring compliance with Section 6.21. However, any discussion related to Woodside is not relevant because it was approved as a PUD which is a negotiated process allowed under the zoning ordinance that allows for relaxation of zoning ordinance provisions in exchange for benefits to the public provided by the applicant. Savidant Tr, pp 232, 235, 237, 307, Carlisle Tr, pp299-300. On page 13, Adam refers to the market study of Gerendasy (Adam Ex Q) and claims its conclusive proof residential property values are not negatively affected if property is in close proximity to a place of

worship. However, at his deposition (Ex 14), Gerendasy admitted the study demonstrated some properties adjacent to a place of worship did have a lower property value. Gerendasy Tr, p 59, lines 5-8, p 63, lines 1-4. Moreover, the Gerendasy report is not relevant because "increased" property values is not one of the purposes of zoning. Carlisle Tr, p 350, lines 20-22. Also see Sections 1 .02 and 1 .03 of zoning ordinance (Ex 2).

### STANDARD OF REVIEW

Troy concurs with Adam's statement regarding standard of review.

### ARGUMENT

### I.    ADAM HAS NO STANDING TO ASSERT ANY RLUIPA CLAIMS

Standing is a jurisdictional element which cannot be waived and can be raised at any time. See e.g. *United States v Van,* 931 F2d 384, 387 (CA6,1991). A party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v Defenders of Wildlife,* 504 US 555, 561; 112 S Ct 2130; 119 L ED2d 351 (1992). To have standing to pursue a RLUIPA claim based on the implementation of a land use regulation, the claimant must have "*an ownership, leasehold, easement, servitude, or other property interest in the regulated land or contract or option to acquire such an interest.*" 42 U.S.C. § 2000cc-5(5). In this case, Adam has not offered any evidence that it (as opposed to Dr. Amin) had a contract or option to lease the subject property in

June 2018 when the ZBA acted on the variances. Adam does not own the subject property. The purchase agreement (Adam's Ex V) reveals the actual purchaser was Dr. Nurul Amin. Although Amin's signature indicates "on behalf of Adam," Adam is not the entity bound by the agreement. This is confirmed in paragraph 7 of Amin's declaration (Adam's Ex B) acknowledging his company - Haji Alliance - purchased the property in 2018. Amin declares Adam has an option to lease, but does not provide any details. Ex N to Adam's brief labelled "Option to Lease Agreement – Extension" dated December 17, 2020 states identical agreements were signed in September 2018 and 2019. There is no evidence Adam had an interest in the property in June 2018, when the variances were requested, and therefore has no standing under RLUIPA.

## II.   ADAM HAS NO EVIDENCE TO PROVE TROY IMPLEMENTED A LAND USE REGULATION THAT IMPOSED A SUBSTANTIAL BURDEN ON ITS EXERCISE OF RELIGION

Plaintiff has not established that the ZBA's denial of Plaintiff's requested variances imposed a substantial burden, and therefore dismissal is appropriate. According to 42 USC § 2000cc (a)(2)(C), the challenged action must be an individualized assessment, which limits the substantial burden inquiry to the ZBA decision. Plaintiffs erroneously attempt to challenge Troy's zoning ordinance under the substantial burden framework, and this should be rejected. Instead of the required narrow focus, Plaintiff's argument is circular,

concluding that because there is no Islamic place of worship similar to the mosque/community center/ library requested by Plaintiff within the City's boundaries, there must be a substantial burden imposed.

A RLUIPA claimant bears the burden of proving its religious exercise was substantially burdened. 42 USC § 2000cc-2(b), *Holt v Hobbs,* 574 US 352, 360; 135 S Ct 853; 190 L Ed 2d 747 (2015). Whether a municipality's actions imposed a substantial burden under RLUIPA is a question of law for the Court to decide. *Livingston Christian Schools v Genoa Charter Township,* 858 F3d 996, 1001 (CA 6, 2017). "…*not just any imposition on religious exercise will constitute a violation of RLUIPA" Id,* 1003. *"Instead, a burden must have some degree of severity to be considered 'substantial'" Id.* A substantial burden is "*more than an inconvenience" Id,* citing *Midrash Sephardi, Inc. v Town of Surfside,* 366 F3d 1214, 1227 (CA 11, 2004). One factor a court may consider in determining whether a substantial burden exist is whether a religious institution has a feasible alternative location from which it can carry on its mission. *Livingston Christian Schools,* 1004, citing *Westchester Day Sch v Vill of Mamaroneck,* 504 F3d 338, 352 (CA 2, 2007). Additionally, several circuits have held when a plaintiff has imposed a burden on itself, the government cannot be liable for a RLUIPA substantial burden violation. *Livingston Christian Schools,* 1004. *"Allowing a plaintiff to make out*

*a substantial-burden claim where the plaintiff has burdened itself or in fact has easy access to suitable property in a neighboring jurisdiction is beyond the protection or RLUIPA." Id,* 1011. In cases involving a denial of a zoning variance, in order to establish a RLUIPA violation "*Plaintiff must show that the denial of the variance request "coerces" individuals into acting contrary to their religious beliefs." Great Lakes Society v. Georgetown Twp,* 281 Mich App 396, 424; 761 NW2d 371 (2008), quoting from *Shepherd Montessori Center Milan v Ann Arbor Twp*, on remand, 280 Mich App 449; 761 NW2d 230 (2008).

Adam has not established that its religious exercise was substantially burdened, since the ZBA's denial of Plaintiff's requested variances did not preclude Plaintiff's members from worshipping. First, the subject property is not the only viable location. Plaintiff missed or rejected other property acquisition opportunities in the City because of financial or other reasons. Plaintiff attempts to blame this on the City, arguing that the subject property is the only property where Plaintiff could exercise its religion in the City or immediate vicinity, and it could be used only if variances were granted. Plaintiff's failure to establish this is fatal to its substantial burden claim.

Plaintiff and the USA expert confirm that there were alternative locations in Troy suitable for a place of worship and in compliance with the zoning ordinance. There was property on Coolidge that Adam could have purchased

and immediately utilized a place of worship without variances and without building permits.  Adam's rejection of this property was related to price. Amin Tr p 48, line 21 – p 49, line 14, p 50, lines 14-21. There was also property on Maple that could have been developed as a place of worship in compliance with Troy's zoning ordinance without the need for a variance. Adam rejected this potential site because it was not conveniently located in the center of Troy. Weinstein Rep, p 10. Other properties were also mentioned for possible places of worship, including one on John R Road and one on Long Lake Road, but these locations were rejected since they required Adam to pursue a special use or a wetland permit or the price was too high. Amin Tr p 35, line 22 – p 37, line 12; p 37, line 18 – p 38, line 9, Weinstein Rep, p 10.

Plaintiff's substantial burden claim should be dismissed because there are also feasible alternative locations outside of the City but in the immediate vicinity where it can carry on its mission. *Livingston Christian Schools,* 1004. "*When a religious institution has an available alternative outside of a desired jurisdiction, and where the distance from the desired location is reasonably close, the artificial boundaries of a particular jurisdiction become less important.*" *Id,* 1011. Various circuits have held *"requiring a religious institution to use feasible alternative locations for religious exercise does not constitute a substantial burden." Marianist Province v City of Kirkwood,* 944 F3d 996, 1001

(CA 8, 2019).  At his deposition, Dr. Amin confirmed there is an existing mosque (IAGD) located within a five to fifteen-minute drive from most locations in Troy. Amin Tr 97.  Adam members Syed and Ahmed admit they have attended IAGD, but would rather attend a mosque in Troy based on convenience. (Adam Ex C, par 4, Ex D, par 5 and 7).

Plaintiff's substantial burden RLUIPA claim also fails since Adam could have used the subject property for a place of worship without the requested variances if it modified the existing building. Savidant prepared a plan for the subject property with a 6,400 square foot building that met all the setback and parking requirements for a place of worship. Par 11, Savidant Affidavit. Contrary to the representations in Plaintiff's brief, Dr. Amin testified that a building of such size would meet Adam's needs, and that the option was not considered based on costs. Amin Tr p 21, p 82, line 10 – p 83, line 6.

Plaintiff knew the building did not meet the setback requirements of Section 6.21, but was hoping that variances would be granted by the ZBA to facilitate its planned mosque and community center facility. Amin Tr p 77, lines 16 – 21.  Therefore, the purchase or option of this property qualifies as a self-imposed burden. This is very similar to *Andon, LLC v City of Newport News,* 813 F3d 510 (CA 4, 2016), where a congregation entered into a purchase agreement to lease property with an existing office building that it intended to

use for a place of worship.  The congregation needed a variance from the BZA, since the building didn't satisfy the zoning ordinance's required 100-foot setback from residential property. The BZA denied the variance and the congregation sued, claiming the variance denial was a RLUIPA violation.  As in this case, *Andon* argued it could not find a suitable property in the township to serve as a place of worship. The Court determined this was a self-imposed hardship because the plaintiff entered into the purchase agreement knowing the building violated setback provisions.  The Court held that a self-imposed hardship will not support a substantial burden claim under RLUIPA, since the hardship was not imposed by governmental action. *Id,* 515. The Court noted that to hold otherwise "*would usurp the role of local governments in zoning matters when a religious group is seeking a variance, and impermissibly* would *favor religious uses over secular uses.*" *Id,* 516.

Plaintiff argues that it had a reasonable expectation that the variances would be granted, since they were not expanding the footprint of the building. As noted in Adam's brief, the building on the subject property had been previously used as a shoe store, market, and a restaurant. Savidant, Tr p 253. However, the building and its use were non-conforming because it did not comply with the setback provisions of the zoning ordinance for those uses. See par 10 of Savidant Affidavit.  Under Sections 14 .03 and 14 .04 of the

zoning ordinances (Ex 13), non-conforming structures and uses that existed prior to the applicable zoning provisions may be continued.  However, since it is the ultimate zoning goal to eliminate non-conforming uses and structures so that the community's revised health, safety, and welfare regulations are realized, any new use that results in an increase in the non-conformity is required to comply with the zoning ordinance. Savidant Tr, pp 203-204, Par 10 of Savidant Affidavit. Since Adam's proposed new use would increase the non-conformity, there would need to be compliance with Troy's then existing setback and parking zoning provisions. Par 10, Savidant Affidavit. Following this, there is no support for the blind belief that requested variances would be granted, especially where Plaintiff was apprised of the standards that the ZBA was bound to follow for any variance request.

In this case, the ZBA properly considered Plaintiff's requested variances under the applicable standards, and determined that Plaintiff had not met its burden of proof, and therefore denied the application in its entirety.  Plaintiff cannot demonstrate that it was treated in a discriminatory manner. Although there is some reference to the adjudication of the 2013 matter before the ZBA, there is no proof of any untoward action or bias. The ZBA articulated its rationale on the record.  Under Section 15 .04 E (see Ex 11), and in accordance with MCL 125 .3604(7), the ZBA has the discretion to grant

dimensional variances only where "*a literal enforcement of the provisions of this ordinance would involve practical difficulties within the meaning of this article.*" To demonstrate a practical difficulty, the applicant has the burden of proof, and must present substantial evidence to satisfy ALL five of the criteria listed in Section 15.04. E.2. Under Section 15.04. E.4, *"no variance shall be granted where a different solution not requiring a variance would be possible."* At the hearing, the ZBA was advised to apply the practical difficulty standard that is applied to all nonuse variances. ZBA Tr 127, lines 3-17. ZBA member Eisenbacher pointed out that the applicant was seeking a substantial variance that was 100% on one side. ZBA Tr p 131, line 9 – p 132, line 7. ZBA member McCauley agreed with Eisenbacher and pointed out safety concerns if the variance was granted. ZBA Tr p 132, line 9 – p 133, line 8. In response to a question, the ZBA was advised the applicant could potentially construct a new building on the property that would comply with the ordinance and eliminate the need to seek a variance. Tr p 136, lines 14 – 24. In response to an inquiry regarding RLUIPA, the ZBA was advised to apply the standards applied to any dimensional variance request. ZBA Tr p 137, lines 2 – 17. ZBA Member Kaltsounis commented on traffic concerns he had with the property. ZBA Tr p 141, line 23 – p 142, line 10. At the conclusion of the discussion, ZBA member Agauas made a motion to deny the variances on the basis the

applicant had not established the requisite practical difficulty and, that the request did not meet the intent, and pointing out a 100% variance on one side was too aggressive. ZBA Tr p 142, line 21- p 143, line 1. The motion denying the variances passed on a 6 to 0 vote. ZBA Tr p 143, line 4, ZBA Tr p 143, lines 7 – 22. The ZBA acted on the information presented at the meeting. Plaintiff faults the ZBA for failing to grant a lesser variance, but this would have been difficult to do, since Plaintiff never presented any alternatives that would have reduced the variance requests. Plaintiff also requested the ZBA lower the standards for places of worship, incorrectly concluding that RLUIPA requires this. Should the ZBA have given Plaintiff preferential treatment, it would have violated the Establishment Clause of the First Amendment, tantamount to an endorsement of religion. RLUIPA expressly guards against this in 42 USC § 2000cc (3)(g), where it expressly recognizes that its application is limited by the constitution and other laws.

There is also an argument that ZBA is not a "government" that imposes or implements a land use regulation under RLUIPA, and therefore its denial of Plaintiff's requested variances does not establish a substantial burden claim. Under 42 U.S.C. § 2000cc(a) or (b), a claimant must show a challenged land use regulation was imposed or implemented by a "government" 42 U.S.C. § 2000cc-5(4) a government includes a municipality or" *any branch, department,*

*agency, instrumentality, or official of"* a municipality.  Troy's ZBA was

established in accordance with Article VI of the MZEA, MCL 125 .3601 *et seq.*

The Troy zoning ordinance provisions applicable to the ZBA are set forth in

Article 15.  Pursuant to Section 15.02.A.2, ZBA members are not City

employees.  The ZBA is a quasi-judicial body that hears variance requests,

makes interpretations, and hears appeals from administrative decisions.  It

does not create or enforce any law.  Since the ZBA does not impose or

implement any land use regulation, Adam's RLUIPA claims based on the

actions of the ZBA must be dismissed.

Adam's substantial burden claim fails since there is no evidence that the

ZBA denial of the requested variances coerced individual members of Adam

to act contrary to their religious beliefs. *Great Lakes Society,* 424.

## III.   TROY HAS NOT IMPOSED A LAND USE REGULATION TREATING RELIGIOUS INSTITUTIONS ON LESS FAVORABLE TERMS THAN SIMILARLY SITUATED NONRELIGIOUS INSTITUTION.

To prevail on an equal terms claim under RLUIPA, the plaintiff must

show the governmental entity imposed or implemented a land use regulation

on a religious institution that treats the religious institution *"on less than equal*

*terms with a nonreligious institution"* 42 USC § 2000cc(b)(1). The plaintiff must

demonstrate the governmental entity has treated a religious institution less

favorably than a *"similarly situated"* secular institution. *Tree of Life Christian*

*Schools,* 368-370. To determine what comparators are similarly situated, the comparison must "*be conducted with regard to the legitimate zoning criteria set forth in the municipal ordinance in question." Id,* 369. The plaintiff *"bears the burden of making out a prima facie case, and only if the precondition is satisfied does the burden of persuasion shift to the government." Id* . 370. Adam argues that it was treated discriminatorily in the ZBA variance process, but Adam has not established it was treated any differently than any other variance applicant. The same dimensional criteria must be met by all applicants, regardless of whether the applicant is a religious or nonreligious institution. Carlisle Rep, p 5, Carlisle Tr, p 355. USA's expert Weinstein admits the variances requested by Adam were quite substantial, Weinstein Rep p 29. Plaintiff has not established a RLUIPA equal treatment claim.

Plaintiff also challenges that Troy's zoning ordinance violates the RLUIPA equal terms provisions, but is has not established that Troy imposes more onerous setback and parking restrictions on places of worship than it does on **similarly situated** nonreligious institutions. The non-religious institutions identified in Adam's motion are not appropriate comparators for an equal term RLUIPA analysis. As set forth in *Tree of Life Christian Schools,* comparators must be similarly situated with regard to legitimate criteria set forth in the zoning ordinance. *Tree of Life Christian Schools,* 369. The

legitimate criteria in the zoning ordinance that justifies different setbacks and parking regulations for places of worship are included in Section 1 .03 (Ex 2). The overall purpose of the zoning ordinance is to "*promote and safeguard the public health, safety and welfare*" and "*implement the Master Plan.*"  Express individual purposes in Troy's zoning ordinance include protecting "*the character and stability of residential neighborhoods,*" providing "*transitions between land uses to reduce potential negative impacts*" and to "*lessen and avoid congestion on highways and streets, and provide safe and convenient access for property*."  Troy's 2011 zoning amendments, which included provisions specifically related to places of worship, were adopted with the foregoing purposes in mind.  They "*were designed to accommodate places of worship in both residential and non-residential areas while still protecting neighboring residential areas.*" Carlisle Rep, p 3.  The setbacks applicable to places of worship advance the goals of Troy's zoning ordinance by "*providing adequate spacing between parking areas that generate noise, light, and exhaust fumes for concentrated peak periods of time.*" Carlisle Rep p 4. Additionally, the parking regulations applicable to places of worship promote public health, safety and welfare because unlike many other places of assembly, places of worship "*typically have scheduled times of worship when members arrive and leave during conceptual periods of time.*" Carlisle Rep, p

4.  Thus, "*prohibiting parking in the front yard setback is designed to give drivers adequate distance between a busy thoroughfare and the point at which parking can be accessed.*" Carlisle Rep, p 4.  Another reason strict setback regulation for places of worship are justified, based on the legitimate criteria of the zoning ordinance, is that places of worship, unlike other institutions and places of assembly, tend to have an "*an extensive number of uses other than worship that the building or buildings serve.*" Carlisle Rep, p 4. Adam admitted in its application for a variance that the subject property would be used for multiple purposes. Carlisle Rep, p 4.

Adam, relying on the Weinstein report, contends there is no justification for having regulations for places of worship that differ from regulations for non-religious uses.  However, Weinstein's claims are based on generalities and not on evidence specific to Troy.  Based on Troy's own experience with places of worship, it is evident they are not similarly situated to the other institutions and places of assembly described by Weinstein.  As explained by the Court in *Tree of Life Christian Schools,* Congress failed to provide any guidepost as to what is meant by the term "*equal*" as that term is used in RLUIPA's equal terms provision. *Tree of Life Christian Schools,* 367.  This lack of specification reveals the intent of RLUIPA was to give local units of government some discretion in determining what constitutes equal treatment based on the

particular circumstances of the community.  Such an interpretation is

consistent with established precedent that regulation of land use is a

*"quintessential state and local power." Rappanos v United States,* 547 US

715, 738; 126 S Ct. 2208; 165 L Ed 2d 159 (2006).  The power of local

government to zone and control land uses is broad and its proper exercise is

an essential aspect of achieving a satisfactory quality of life. *Schenck v City of*

*Hudson,* 114 F3d 590, 593-594.  A local legislative body need not even select

the best or the least restrictive method of attaining its goals so long as the

means selected are rationally related to those goals. *Id,* 594.  The

determination of whether a local zoning regulation is justified is based on the

particular circumstances of the locality.  As explained in the landmark decision

of *Euclid v Ambler Realty,* 227 US 365, 388; 47 S Ct 114; 71 L Ed 303 (1926):

> *Thus the question whether the power exists to forbid the erection of a*
> *building of a particular kind or for a particular use, like the question*
> *whether a particular thing is a nuisance, is to be determined, not by an*
> *abstract consideration of the building or of the thing considered apart,*
> *but by considering it in connection with the circumstances of the locality.*

Since the justification for a particular zoning provision varies with

circumstances and conditions, a regulation that would be valid in a big city

might be clearly invalid as applied to a rural community. *Id,* 387.  The principle

that the provisions of a zoning ordinance required in one community based on

its circumstances may not be suitable for another community was also espoused by the City's planning expert at his deposition. Carlisle Tr p 351.

In this case, based on the City of Troy's experience with the significant negative impacts caused by places of worship, as described in the testimony and affidavit of the City's Planning Director Brent Savidant, and the testimony of City Manager and former Planning Director Mark Miller, it is evident that places of worship in Troy are not similarly situated to any of the places of assembly or institutions the Plaintiffs claim are treated more favorably.

Another reason that places of worship are not similarly situated to the institutions described in Adam's motion is the fact there are so many.  Troy has over 60 places of worship and only one or two of the other types on institutions mentioned by Adam. Carlisle Tr p 111.  This justifies different parking and setback requirements because it is much easier to draft ordinance provisions for specific types of places of assembly when only a few exist in the City. Carlisle Tr p 111.

Weinstein suggests Troy impose smaller setbacks for smaller places of worship. Weinstein Rep, pp 14-15.  This solution would not be practical because small congregations often grow into large ones.

Since places of worship in Troy are not similarly situated to the other uses that Adam contends are appropriate comparators, the equal terms RLUIPA claim must be dismissed.

/s/Allan T. Motzny
Lori Grigg Bluhm (P46908)
Allan T. Motzny (P37580)
Attorneys for Defendants
500 W. Big Beaver Road
Troy, MI 48084
(248) 524-3320

Dated: January 13, 2021                    motznyat@troymi.gov

## **Certificate of Service**

I hereby certify that on January 13, 2021, I electronically filed Defendants Response to Plaintiff's Motion for Summary Judgment and the Brief in Support of Response with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record using the ECF system.

/s/Allan T. Motzny
Lori Grigg Bluhm (P46908)
Allan T. Motzny (P37580)
Attorneys for Defendants
500 W. Big Beaver Road
Troy, MI 48084
(248) 524-3320
motznyat@troymi.gov

Dated: January 13, 2021