# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISON

**ADAM COMMUNITY CENTER,** a
domestic nonprofit corporation, a/k/a
**ADAM COMMUNITY (ACC),** a
Domestic nonprofit corporation**,**

      Plaintiff,              **Case No: 18-13481**
                             **Hon. Nancy G. Edmunds**

v.

**CITY OF TROY,** et. al.

      Defendants.

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BREIF IN OPPOSITION

Defendants are not entitled to judgement as a matter of law on any single count of Plaintiff's complaint for the reasons more fully laid out in Plaintiff's Brief in Opposition and Plaintiff's Motion and Brief in Support of its own Motion for Summary Judgement identified as ECF 66.

Respectfully Submitted,

**CAIR-MI LEGAL FUND**


/s/ Amy V. Doukoure
BY: Amy V. Doukoure (P80461)
30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247
adoukoure@cair.com

**COUNSEL FOR PLAINTIFF**

DATED: January 18, 2021

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISON

**ADAM COMMUNITY CENTER,** a
domestic nonprofit corporation, a/k/a
**ADAM COMMUNITY (ACC),** a
Domestic nonprofit corporation**,**

      Plaintiff,               **Case No: 18-13481**
                                 **Hon. Nancy G. Edmunds**

v.

**CITY OF TROY,** et. al.

      Defendants.

---

## PLAINTIFF'S BRIEF IN OPPOSITON OF DEFENDANTS MOTION FOR SUMMARY DISPOSITION

By: Amy V. Doukoure (P80461)

**CAIR-MI LEGAL FUND**

30201 Orchard Lake Road, Suite 260
Farmington Hills, MI 48334
(248) 559-2247
adoukoure@cair.com

**COUNSEL FOR PLAINTIFFS**

## STATEMENT OF ISSUE PRESENTED

1. Whether Plaintiff can prove Troy imposed a land use regulation that imposed a substantial burden on Adam's exercise of religion such that Defendants are not entitled to judgement as a matter of law.

Plaintiff Answers: Yes

Defendant Answers: No

This Court Should Answer: Yes

2. Whether Plaintiff can establish Troy imposed regulations treating religious institutions less favorably than similar non-religious institutions such that Defendants are not entitled to judgement as a matter of law.

Plaintiff Answers: Yes

Defendant Answers: No

This Court Should Answer: Yes

3. Whether Plaintiff can prove that Troy discriminated against religion or imposed regulations that unreasonably limited religious institutions such that Defendants are not entitled to judgement as a matter of law.

Plaintiff Answers: Yes

Defendant Answers: No

This Court Should Answer: Yes

4. Whether evidence exists to support Plaintiff's constitutional claims brought under 42 USC 1983 such that Defendants are not entitled to judgement as a matter of law.

Plaintiff Answers: Yes

Defendant Answers: No

This Court Should Answer: Yes

## MOST CONTROLLING AUTHORITY

**Issue One:**

*Livingston Christian Schools v Genoa Charter Township*, 858 F.3d 996, 1004 (6th Cir. 2017)

**Issue Two and Three:**

*Tree of Life Christian Schools v. Upper Arlington, OH*., 905 F.3d 357, 369-370 (6th Cir. 2008)

**Issue Four:**

*Midrash Sephardi, Inc. v Town of Surfside,* 366 F. 3d 1214, 132 (11th Cir. 2004)

**Summary Judgement:**

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED……………………………………………ii

MOST CONTROLLING AUTHORITY………………………………………….iii

TABLE OF CONTENTS…………………………………………………………..iv

TABLE OF AUTHORITY…………………………………………………………vi

PRELIMINARY MATER…………………………………………………………1

STATEMENT OF FACTS…………………………………………………………1

      a. Troy's Basis for More Onerous Setback and Parking for Religious Assembly…………………………………………………………………7

LAW………………………………………………………………………………14

      I.  Standard of Review…………………………………………………….14

      II.   Defendants' Imposition and Implementation of its Zoning Ordinance Has Substantially Burdened Plaintiff's Religious Exercise in Violation of RLUPA……………………………………………………………...14

            a. Adam has no Feasible Alternative Location for a Place of Worship……………………………………………………………..16

     b.  Adam has Suffered and Will Continue to Suffer Substantial Delay, Uncertaintity and Expense due to the Imposition of Troy's Land use Regulation…………………………………………………………18

     c.  Adam did Not the Create the Harm that Led to the Substantial Burden………………………………………………………………20

III.  Defendants' Zoning Ordinance and Its Implementation of Its Zoning Ordinance Treats Adam Differently than Non- Religious Assemblies or Institutions…………………………………………………………..22

IV.  If the Court Finds that there is an Equal Terms Violation, then The Court Should find that Defendants have Violated Adam's Constitutional Rights as Outlined in its Complaint…………………27

CONCLUSION……………………………………………………………...28

PRAYER FOR RELIEF……………………………………………………...29

CERTIFICATE OF SERVICE………………………………………………30

# TABLE OF AUTHORITY

## CASES

*City of Cleyburn Tx. v Cleyburn Living Center* 473 US 432, 448 (1985).

*De Laura vs City of Ann Arbor,* 30 Fed. Appx. 501, 510 (2002)

*Dorman v. Charter Township of Clinton* 2019 WL 3322352 (E.D. Mich. July 24, 2019)

*Guru Nanak Sikh Soc'y of Yabu City v County of Sutter*, 456 F.3d 978, 991-992 (9Th Cir. 2006)

*Lighthouse Community Church of God v City of Southfield* 2007 WL4230280 (ED. Mich. Jan. 3, 2007)

*Livingston Christian Schools v Genoa Charter Township*, 858 F.3d 996, 1004 (6th Cir. 2017)

*Midrash Sephardi, Inc. v Town of Surfside,* 366 F. 3d 1214, 132 (11th Cir. 2004)

*New Life Ministries v. Charter Twp. Of Mt. Morris* 2006 WL 2583254 (E.D. Mich. Sept. 7, 2006)

*Tree of Life Christian Schools v. Upper Arlington, OH*., 905 F.3d 357, 369-370 (6th Cir. 2008)

*Westchester Day Sch. V Vill. Of Mamaroneck*, 504 F.3d 338 352 (2d Cir. 2007)


## STATUTES

42 USC 2000cc-2(b)

42 USC 2000cc(a)(1)

42 USC 2000cc-(b)(1)

42 USC 2000cc(a)(2)(C)


## COURT RULES

E.D. Mich. Local. Rule 7

Fed. R. Civ. Pro. 56

## SECONDARY SOURCES

*One (1) Ounce of RLUPA Prevention.*, Dwight H. Merrian, Mun. Law. May/June 2008

## PRELIMINARY MATTER

Defendants have submitted a brief in support of their Motion for Summary Judgement that is full of factual allegations as well as conclusions that they have followed Michigan's Zoning Enabling Act that, for a second time, bear no citations to supporting documents, depositions, affidavits, or any other form of "evidence" as accepted by the Federal Rules of Evidence. As such, Plaintiff's object to those facts which remain unsupported in Defendant's brief and assert that any statement of fact or conclusion that is unsupported by citation to evidence should be stricken and/or disregarded by the Court pursuant to the requirements of Fed. R. Civ. Pro. 56(c)(1)(A) and 56(c)(2).

## STATEMENT OF FACTS

It is undisputed by Defendants' that Plaintiff, Adam Community Center ("Adam"), is a religious organization whose stated mission and purpose is to establish a center for religious exercise and that central to its mission is to establish a mosque in the city of Troy to serve its current membership.[1] It is also undisputed that the City of Troy ("Troy") is a government within the meaning of 42 U.S.C. §2000cc-5(4)(A).[2]

---

[1] See ECF 66- Plaintiff's Motion for Summary Judgement and Exhibits A-D of ECF 66. (Unless otherwise noted, all referenced exhibits are attached to ECF 66)

[2] See Defendants Answer to Plaintiff's Complaint- Exhibit E of ECF 66.

It is also undisputed that Adam has been searching for a permanent location in the city of Troy to have a religious place of assembly since it was founded in 2009, and that due to its inability to obtain a permanent place, they have utilized a basement of a commercial building that is not suitable for their current religious needs.[3] Furthermore, the current space does not comport with the requirements of the zoning ordinance as it relates to setback and parking restrictions for places of worship.[4]

In 2013, Adam obtained permission to use a building on Rochester Road as a community center for non-religious assembly purposes, but later had permission revoked when a person unknown to Adam stated that they might worship in the building.[5] The uses of the building as a community center remained the same, but it was the idea that there would be worship in the building that subjected Adam to complying with the more onerous setback and parking requirements.[6] Adam was instructed by Defendants that they should seek a variance of parking and setback requirements in order to utilize the building as a religious assembly use.[7] Indeed, the uses of the community center as proposed in 2013 are the same ancillary uses that Adam is proposing for the building that is the subject of the current litigation.[8]

---

[3] See Generally Exhibits B, C and D of ECF 66.
[4] See Exhibits B, C, and D of ECF 66.
[5] See Exhibits C, H and E (Dep of Savident 2020 pg. 72-78) of ECF 66.
[6] *Id*.
[7]

[8] See Generally Exhibit B of ECF 35

Immediately following the sale of the proposed community center, Adam began investigating a number of other available properties in the city of Troy for a religious assembly, but each place they considered failed to be an appropriate place.[9] Many of the reasons that Adam's made a determination not to pursue a property was because of the conditions of the property related to setback and parking restrictions, the need to obtain a Special Land Use permits from the city and the overall unsuitability of the properties as a result of conditions on the land.[10]

The Defendants were aware of the efforts and difficulties that Adam was having in finding a suitable location, as Adam sought advice and assistance from the Defendants regarding the suitability of several properties, including undeveloped land and land with already existing buildings.[11] Defendants routinely offer this type of assistance to individuals and entities looking to purchase or build in Troy.[12] However, Defendants failed to provide any routine advice or assistance to Adam in its search for property.[13] Adam was told by members of the ZBA that there was no place left in Troy for them to have a place of worship, and that they should look outside the city.[14] Both Defendant city of Troy and their expert stated that Troy is nearly completely built out.[15]

---

[9] Dec. Syed ¶ 20-23; See Also Dep. Amin Pg. 34-43; Pg. 48-54; Pg. 92-94
[10] Deposition Dr. Mohamed "Nurul" Amin Pg. 34-43; Pg. 48-54; Pg. 92-94 (generally)Dec. Syed ¶19-26.
[11] Dep. Savident 8/8/2020 Pg. 111 ln 2- Pg. 112 ln. 20
[12] Dep. Paul Evans 8/8/2020 Pg. 35 Ln 3-21; Dep Savident 2020 Pg.30 Ln. 23-Pg 32 Ln. 8
[13] Dep. Savident 2020 Pg.107 Ln 20- Pg. 109 Ln 4; Dep Amin Pg. 52-53;
[14] 06/19/18 ZBA Tr. Pg. 135 Ln 8-20; Pg. 134 Ln 16-21; Pg. 125 Ln 22-23; Pg. 131 Ln 19-Pg. 132 Ln. 3
[15] Dep. Savident Pg. Ln.; Dep Carlisle Pg.317 Ln.4-17; Exhibit D Carlisle Expert Report

In 2018, Adam entered into an agreement for the purchase of the subject property 3635 Rochester Road that would have been sufficient to meet their needs for Mosque with ancillary uses similar to a community center.[16] When Adam entered into the agreement, the building was being used as a restaurant that included two separate banquet halls and had a large warehouse.[17] The property had previously been used as a (1) fruit market (2) shoe store  (3) haunted house and (4) an antique and collectible store in operation at the same time as the haunted house.[18]

The building currently existing on the property is a non-conforming structure[19] Adam was unable to move into the building, without seeking a variance from the Defendant ZBA, due to their classification as a religious assembly,.[20] If Adam were any assembly use other than a religious one, they would have been able to move into the subject property without seeking any variances.[21]  At most they may have been subjected to informal discretionary involvement of Troy's Planning Director.[22]

Adam applied for and believed they'd receive a variance from the setback and parking restrictions of Section 6.21 of the Zoning Ordinance because they were not making any external changes to the building or parking, and because they believed

---

[16] See **Exhibit V**- Purchase Agreement; Dec. Syed ¶24 Dep. Amin. Pg. 76-77.
[17] **Exhibit K**- City of Troy Approved Site Plan for Sakura
[18] Dep. Savident Pg. 252-253 ln 19.
[19] Dep. Savident Pages 254-258 ln 12.
[20] Dep Savident Pg. 216 LN. 15-20
[21] Dep. Savident Pg. 257 Ln. 20-25
[22] *Id* and Pg. 248 Ln 24-Pg. 249 Ln. 7; Pg. 284 Ln 18- Pg. 285 Ln. 7; PG. 197 Ln 18-20; 198 ln 2-8

they were going to continue to use the building in the same manner it was already being used.[23] However, that variance was denied with little more than conclusory statements that Adam's request didn't fit the statement of practical difficulty or the intent and purpose of the specific lot, that Adam was asking to "severely break the law", that variances are always denied when the community didn't give "100% support," and some unfounded statements about Friday night traffic.[24]

The ZBA suggested that Adam demolish either all or some of the current building and rebuild a new building in compliance with the setback requirements.[25] Adam is unable to engage in that type of construction because a substantial portion of the land and 60% of building would be lost to setbacks making this property no more compatible with their needs as their current basement location. As such, Adam would need to expend upwards of $3 million to demolish and completely rebuild a new facility on that space, that still would not meet their needs.[26]

When the variance was denied by the ZBA, Adam lost substantial contributions that were pledged donations necessary to acquire and renovate the property.[27] As a result Dr. Nurul Amin, Mr. Mahmood Syed and two other individuals purchased the building for Adam's benefit with their own personal funds

---

[23] **Exhibit M**- 06/18/2018- ZBA Hr. Tr. Pg.50 Ln 7-13. Dec. Syed ¶24.  See also **Exhibit L**-Application for Variance
[24] Id at Pg 125 ln 23-25;125 Ln 4-6; Pg 141 Ln 66-8; Pg. 142 Ln 21-25.
[25] **Exhibit L**- Variance request with site plan; 06/19/18 ZBA Meeting Tr. pg. 143 ln 9-25.
[26] Dec. Amin ¶8.
[27] Dec. Dr. Amin Ln. 9.

and gave Adam an option to lease agreement that has been renewed continuously during this litigation.[28]

According to the Defendant's Planning Director, the zoning ordinance at issue in this matter was enacted pursuant to a comprehensive rewrite of both the master plan and zoning ordinance which took effect in 2011.[29] In that re-write, Troy created form-based districts that contained use groups based on the similar impacts and characteristics of the uses.[30] Places of worship are allowed as of right in all form-based districts.[31] As a result of the re-write places of worship are also permitted as a right in nearly all of the other districts including the GB district where the property at issue is located.[32] Places of worship are subjected to stricter setback and parking restrictions in all districts where they are approved as of right.[33]

The definition of "Place of Assembly" could encompass that of a "Place of Worship" under the express language of the zoning ordinance at issue, but "Place of Worship" is singled out for more significant zoning restrictions based solely on religious services being conducted at a location.[34]

Defendants' zoning ordinance sets forth unique and more stringent parking and setback requirements for religious assemblies than it does for secular assembly

---

[28] Dec. Amin ¶7; Dep Syed ¶ 25; See also **Exhibit N**: Current Option to Lease
[29] Dep. Savident 2020- Pg. 35 Ln. 17-23;  Pg. 40 Ln 5- 41 Ln. 1;
[30] Dep. Savident Pg. 186 Ln. 15- Pg. 190 Ln 3.
[31] Dep. Savident Pg. 48
[32] *Id*.
[33] **Exhibit O1**-Zoning Ordinance Section Pg. 26 (ordinance page).
[34] **Exhibit O1**- Sections 2 (Definitions) Page 26.

uses.[35] The text of the zoning ordinance sets a fifty-foot setback on all sides from religious places of worship and doesn't allow parking in the setback area.[36] The parking and setback requirements are imposed only on assembly uses that are religious in nature and secular assemblies, regardless of size or membership, are not required to adhere to the same requirements.[37] Furthermore, in the zoning districts where religious assembly uses are permitted only as a "special use", secular assembly uses are permitted as of right.[38]

Mr. Savident further recognizes that the zoning itself places a burden on Adam's ability to find a suitable property in Troy because (1) it is more difficult to develop a lot with a larger setback and less usable space (2) not allowing parking in the setback means that there is less room overall for parking making land more difficult to develop and (3) the fifty-foot setback requirement makes it challenging for a religious assembly to get into a commercial property.[39] The ZO allows non-religious assembly uses and commercial properties to seek relief directly from the Planning Department without going through the variance process, but does not afford the same administrative relief to religious assembly.[40]

a. _Troy's Basis for More Onerous Setback and Parking for Religious Assembly_

---

[35] Dep. Savident 2020 Pg. 181 ln 12-Pg 182 Ln. 3; Pg. 171Ln 12-18.
[36] **Exhibit O5**
[37] Dep. Savident 2020 Pg. 167 Ln 9; Pg. 171 Ln. 12-18; Dep Alan Weinstein Pg. 20 Ln 14-19;
[38] **Exhibit O3**
[39] Dep. Savident 2020 Pg. 171 Ln 1-11; Pg. 171 Ln 19-Pg 172 Ln 11; Pg. 114 Ln 6-10.
[40] **Exhibit 3-** ZO Relevant Section- Deposition of PE from 2019 Pg. Ln.

The stricter setback and parking requirements for religious assemblies were kept in the comprehensive re-write of the ordinance because the city gave little or no thought to "carrying them over" from residential neighborhoods to commercial districts or the effects that would have on the ability of a religious assembly to come into those districts.[41] The Defendant recently stated concerns regarding the impact of Troy's five largest "megachurches".[42]  However at least one of Troy's largest mega churches,  Woodside Bible, was not in existence at the time of the re-write and was granted a PUD that didn't subject it to the parking and setback requirements for places of worship.[43]

Defendants' assert that the rationale for the more stringent building and parking requirements is due to secondary impacts to residential properties due to the use of the building as a place of worship including (1) property values of residential neighborhoods (2) light and noise associated with parking during events and (3) traffic congestion.[44]

However, Defendant's Planning Director who oversaw the re-write of the zoning ordinance acknowledges (1) there is no justification to treat places of worship and secular assembly with the same capacity differently based on concerns of

---

[41] Dep Savident Pg. 37 Ln 15- Pg. 38 Ln 2: **Exhibit P**- Deposition of Mark Miller Pg. 74 Ln 14- Ln 21, Dep Evans Pg. 47 Ln 21- Pg. 48 Ln. 4.
[42] Dep. Savident Pg. 132 Ln. 3- Pg. 134 Ln. 18 and Pg. 56 -57 Ln. 3.
[43] Dep. Savident Pg. 232-233; (and exhibit 13 to his Deposition)- Woodside Bible PUD
[44] Dep. Savident 2020 Pg. 55 Ln 18-Pg 58;. PG. 179 Ln 14-21.

impact[45] (2) non-religious assembly with similar building capacity could have the same impact on traffic and noise[46] (3) all things being equal with size of building and activities, secular assemblies could have the same impacts as a religious assembly and those impacts would translate into requiring the same setback[47] (4) the city is capable of distinguishing between larger and smaller places of worship, yet they didn't[48] and (5) other assembly uses are allowed to abut a residential property in the GB district and all form based districts with less than a 50' setback.[49]

Furthermore, Mr. Paul Evans, whose Defendants' co-administrator of the zoning ordinance, staff liaison to the ZBA, and responsible for code enforcement, stated that he believes that other uses are similar to religious assemblies and doesn't see the need for the different setbacks.[50]

It is also true that a Market Study report done by Gerendasy Valuation, LLC. provides conclusive evidence that residential property values are not negatively impacted when they abut adjacent religious assembly places, even when those assembly places have parking and setbacks that are less than those prescribed in section 6.21 of the Zoning Ordinance.[51] Notably, Defendants have provided no

---

[45] Dep. Savident 2020 Pg. 62 Ln 4-8;
[46] Dep. Savident 2020 Pg. 61 Ln 18- 62 Ln 3
[47] Dep. Savident 2020 Pg. 68 Ln 7-10.
[48] Dep. Savident 2020 Pg. 61 n 9-12
[49] Dep. Savident Pg. 169 Ln 6-9.
[50] Dep. Evans 2020 Pg. 20-23; Pg. 135 Ln 18 Pg. 137 Ln. 5.
[51] See **Exhibit Q**: Market Valuation Prepared by Gerendasy Valuation, LLC.

information, documentation, or expert opinion to support any assertion that residential property values are affected negatively by religious assembly uses.

In his report, Mr. Weinstein states that Defendants' zoning ordinance section 6.21 has applied a "unique set of requirements for places of worship that do not apply to uses that are not places of worship.[52] Indeed Mr. Weinstein agrees with Mr. Savident that theaters, funeral homes and restaurants that hold receptions and other large gatherings, places of assembly, conference, meeting and banquet facilities, fine and performing art facilities, funeral homes and primary and secondary schools are all similarly situated to religious assemblies based on the legitimate zoning criteria in Section 1.03 of Troy's zoning ordinance.[53] Despite these uses being comparable to religious assemblies, Mr. Weinstein states that Defendant has "imposed a scheme of parking and setback requirements on religious assemblies that are far more restrictive and extensive than those of secular assemblies that have a greater impact than places of worship."[54] According to Mr. Weinstein, Defendants' zoning is an express differentiation of religious assembly.[55]

Further, according to Mr. Weinstein, Defendants' differential treatment of religious assembly uses within the same zoning district, on both vacant and

---

[52] Dep. Weinstein Pg. 20 Ln 14-19
[53] Id. Pg 41 Ln 9 – Pg. 46 Ln 5; Page 53 Ln 2-5; Pg. 53 Ln 21- Pg 55Ln 12. **Exhibit T**- Weinstein Expert Report Pg 22-23.
[54] Weinstein Report Pg. 17-18;
[55] Id at 20.

developed parcels of land, created "significant obstacles for many, if not most or all,
places of worship seeking to locate on a developed parcel in a non-residential district
and a near-insuperable barrier to Adam gaining approval for Rochester road without
a variance."[56]

Additionally, Mr. Weinstein asserts that the Defendant ZBA's denial of the
variance for 3635 Rochester Road resulted from the members failing "to evaluate
parking and safety concerns, precluding it from legitimately justifying its decision
to deny Adam's application."[57] "Given this information, and the historical context
of Muslims treatment in requesting zoning relief made it a reasonable choice that
Adam decided not to pursue subsequent or additional special use approvals."[58]
Furthermore, in Weinstein's professional opinion, Adam's search for properties led
to no "alternative properties" because set backs are not the only issues facing them
in their search for reasonably available properties."[59]

As for Defendants' claims of their legitimate zoning criteria for the setback,
Weinstein's expert opinion is that Troy doesn't provide ***any*** to "explain setback
differences within each district for religious assemblies or institutions."[60] His
explanation is that based on the criteria set forth in Defendants' zoning ordinance

---

[56] Id at 18.
[57] Id at 32-33.
[58] Dep. Weinstein Pg. 32 Ln 11
[59] Weinstein Report Page 27-29 Generally.
[60] Weinstein Report Page 22.

section 1.03, many of the similarly situated non-religious uses have a greater impact than places of worship yet are subject to less restrictive zoning.[61]

Mr. Weinstein also believes that Defendants have undermined their own argument regarding the need for greater setback and parking restrictions for religious places of worship in the following ways (1) granting a PUD to the mega church Woodside Bible without the 50' setback because doing so suggests that the city, when faced with the very concern they are asserting as the rationale for the setback, didn't find it necessary to secure public safety and welfare[62] (2) the city's granting of variances reducing screening walls in places of worship adjacent to residential properties [63] and (3) the city's history of having numerous places of worship with parking no less than 10' from residential neighborhoods posing no concerns "with regard to public safety welfare, or any other concern germane to a land-use decision."[64]

Mr. Weinstein, states that the ordinance is offensive to religious assemblies because (1) it requires a much larger setback than necessary in all cases except very large places of worship (2) smaller congregations on smaller parcels of land require less buffering than larger congregations on larger parcels of land[65] (3) the setback

---

[61] Id.
[62] Id at 31; Dep Weinstein Pg. 73 Ln 7- Pg. 74 Ln 5;
[63] Dep. Weinstein Pg. 62 Ln 17-Pg. 63 Ln 2
[64] Id at Page 31-32.
[65] Weinstein Report page 15 -17.

requirements make religious assemblies "patently incompatible with four out of five building form build to requirements and are greater than the requirements for the fifth[66] and (4) in the GB district where the 3635 property is located secular assemblies have greater use of their property due to having substantially reduced setback requirements. [67]According to him, it is "good planning practice" to "impose smaller setback requirements- and less of a "burden"- for places of worship on smaller parcels" and "thus the rational and legitimacy of Troy's setback requirements" are undermined.[68]

Weinstein asserts that Defendants' could have achieved the goal of protecting adjacent residential properties from traffic and parking impacts in less restrictive ways and set forth two examples in his report of how to achieve that.[69] He further proffers that the ZBA could have alleviated the concerns by placing screening as a condition of approval, and further that the ZBA had a history of doing so in the case of a church who was asking for a 22' variance from the parking and setback requirements.[70]

Furthermore, the Defendants' reliance on Mr. Carlisle as an expert witness is fatally flawed by Mr. Carlisle's admission that his report overstates their position by

---

[66] Id. At 20.
[67] Id.
[68] Id at 15-17.
[69] Weinstein Dep. Pg. 36 ln 24-page 41
[70] Weinstein Dep. Pg. 76 Ln 20- Page 77 Ln 22. Weinstein Report Page 33-34

denying that any facts were presented on several issues to the ZBA even though he admits that facts were indeed presented to the ZBA.[71] Mr. Carlisle himself admitted that is report was not accurately stated and should be amended to reflect this inaccuracy.[72]   It is further true that Defendants' own Planning Administrator acknowledges that Mr. Carlisle's work is inaccurate, when during his deposition, he claims that several mistakes that were made with regards to information and charts provided to the Department of Justice pursuant to discovery were not correct and states affirmatively that Carlisle made the mistakes.[73]

## LAW

### I.    Standard of Review

This Court has set forth the standard for Summary Judgement on page 10 of ECF 9. Based on that standard, Adam is entitled to judgement as a matter of law.

### II.    Defendants' Imposition and Implementation of its Zoning Ordinance Has Substantially Burdened Plaintiff's Religious Exercise in Violation of RLUPA

RLUIPA prohibits Defendant from imposing or implementing a land use regulation that substantially burdens Plaintiff's religious exercise unless the burden is the least restrictive means of furthering a compelling government interest.[74]

---

[71] See Carlisle Dep. Pg. 223-225; Pg. 322-328 attached hereto as Exhibit 1.
[72] Id.
[73] Dep. Savident Pg. 227 ln 25 through Pg. 228 Ln. 24;
[74] 42 USC 2000cc(a)(1)-

Furthermore, the Defendant must have a system in place under which they make an individualized assessment of the property involved.[75] The *DiLaura* court found that requiring an application for a variance constitutes an individualized assessment.[76]

In *Livingston,* the controlling 6th Circuit case, the court sets forth some factors that are helpful in determining whether a substantial burden exists because of a land use regulation.[77] The Livingston factors are (1) whether a religious institution has a feasible alternative location (2) whether a religious institution will suffer substantial delay, uncertainty or expense due to the imposition of a regulation[78] and (3) whether the Plaintiff's own actions created a substantial burden on itself by obtaining an interest in land without a reasonable expectation of being able to use the land for religious purposes.[79]

Feasible alternative location is based on (1) whether the current location is adequate to carry out the mission of the religious institution[80] and (2) whether there are other properties available close to the property at issue adequate for the needs of the religious institution.[81]   "When central religious beliefs are in question, courts

---

[75] 42 USC 2000cc(a)(2)(C).

[76] *De Laura vs City of Ann Arbor, 30 Fed. Appx. 501, 510 (2002)*

[77] *Livingston Christian Schools v Genoa Charter Township*, 858 F.3d 996, 1004 (6th Cir. 2017)

[78] *Livingston Christian School* 858 at 1004.

[79] Id.

[80] *ID* at 1005-1006. (citing *Bethel World Outreach Ministries*, 706 F.3d at 558 and I*nt'l Church of the Foursquare Gospel v City of San Leandro*, 673 F.3d 0159, 4068-69 (9th Cir. 2011) and *Westchester Day Sch. V Vill. Of Mamaroneck*, 504 F.3d 338 352 (2d Cir. 2007)) (internal quotes omitted)

[81] *Id* (citing *World Outreach Conference Ctr. v City of Chicago*, 591 F.3d 539 (7th Cir. 2009).

must be especially deferential to testimony from the religious institution about the truth of that belief."[82]

The *Livingston* Court cites several instances of insufficiency of a current place of worship that create a substantial burden including (1) when an assembly's current location doesn't allow the congregation to worship as a whole and (2) lack of sufficient space when a school or congregation were expanding.[83]

a. *Adam has no Feasible Alternative Location for a Place of Worship*

Defendants' make no argument that Plaintiff's current location is adequate, as such, this Court should, for the purposes of this motion, find that the first prong of the first factor of the *Livingston Factors* is met by Plaintiff's, and that Adam's doesn't have a current location that is sufficient to meet their religious needs.

With regards to the second prong of the first factor, (whether Adam has a feasible alternative location) Defendants would have this court believe that a feasible alternative   location exists because (1) Adam's members can split up and individually go to different congregations in different cities to worship (2) there  may have been in some time in the past a building that could fit their needs (3) or they may have been able to obtain special permits to build on wetlands or (4) they may have been able to convince property owners to sell them their land so they could

---

[82] ID at 1006 citing Foursquare 637 F. 3d at 1069
[83] *Id.*

accumulate enough land to build a place of worship and (6) the subject building could have been demolished and a new building rebuilt on the land.

However, the law is clear that none of these options is enough to show that there is a reasonable alternative location for several reasons. Defendants cite no authority that a reasonable alternative to having a place of worship is requiring a congregation to break apart and pray in other communities. On the contrary, the case law is clear that when there is an insufficient space for a congregation to pray together as a whole, that in and of itself is a substantial burden to relgious exercise in violation of RLUIPA. Adam is indeed an established community with a congregation that does not have a sufficient space to allow congregational worship with *their* congregation as a whole and they are not required to dissolve their community and require members to find another community to join.

Defendants' assertions there could have been at some time in the past or may again sometime in the future be a place that Adam could utilize as a place of worship is likewise misguided. The question for this litigation is whether Adam, at the time it sought the variances, had a feasible alternative location sufficient to support their religious assembly. Defendants have not pointed to a single example of an actual feasible alternative location that Adam could utilize as a religious place of worship for their congregation within the city of Troy, or even within an area near Troy at this time, or at any time since June 2018. The answer to that question is no, and

Defendants have provided no proof of the contrary. Furthermore, Courts have determined that continued and prolonged searches for land and continued necessity to file applications with the city created enough delay and uncertainty to be a substantial burden.[84] The courts have further found that a Plaintiff's "uncertainty increased with each time they were denied or put off by Defendant's multiple permit denials and broad reasoning for each denial" because it "significantly reduced Plaintiff's prospects for ever gaining approval."[85]

b. *Adam has Suffered and Will Continue to Suffer Substantial Delay, Uncertainty and Expense due to the Imposition of Troy's Land use Regulation.*

Defendants' Motion and Brief in Support completely ignores this factor of the Livingston case and appears to conflate it with whether there is a feasible alternative location. As such, this Court should determine that Plaintiff's burden of proving this factor is met by the facts set forth above and in its Motion for Summary Judgement at ECF 66.

However, as stated above, each of the alternative "options" listed by Defendants in their motion are fraught with delay, uncertainty and expense. For instance, the idea that Defendants may have granted a request to build on wetlands to Adam is speculative at best as they made no assertion that had Adam applied, they would approve the permit, and any claim now would be self-serving as it would negate their

---

[84] *Id.*
[85] *Guru Nanak Sikh Soc'y of Yabu City v County of Sutter*, 456 F.3d 978, 991-992 (9Th Cir. 2006).

own process of how applications are decided. Furthermore, Defendants' assertion that Adam could have acquired enough land by purchasing land that was not for sale at the time, to build a place of worship offends the second factor by being both uncertain and expensive.

Likewise, Defendants' assertion that Adam could have purchased an already existing church building is rediculous as the fact remains that Adam wasn't able to purchase the church despite outbidding the actual purchase price, the assertion doesn't magically make another church in Troy available to purchase for them, and Adam wasn't actually able to purchase the subject church, therefore it is not a feasible alternative location.

The idea that Adam could have demolished a building that was existing, to build a smaller one that may have fit their needs is likewise an offense to the second Livingston factor. The Livingston court stated that expense and delay each and together can create an unreasonable burden of relgious exercise. If Adam were required to demolish the existing building the expense of doing so is cost prohibitive and would create further substantial delay in obtaining a place of worship. Furthermore, doing so would likely result in a building of a size that was not sufficient to meet Adam's needs.

Requiring Adam to continue to search for property that fits within Troy's more onerous setback and parking requirements for places of worship in a city that is

nearly completely built out, will only continue to lead to delay, uncertaintity and expense, which according to the Livingston court is a substantial burden to Adam's religious exercise in violation of RLUIPA.

c.  _Adam did Not the Create the Harm that Led to the Substantial Burden_

Troy's argument that Adam knew that the building didn't meet the setback requirements, and thus created their own harm by acquiring an interest in land is misguided. This is true because Defendants have a mechanism for seeking relief from the strict zoning requirements by obtaining a variance. It is undisputed that Adam was told by Defendants in 2013 to seek a variance to the parking and setback requirements when their previous property on Rochester Road was denied classification as community center and was going to be classified as a place of worship. That building, like the subject property, was similarly a non-conforming structure. Defendants' encouragement of Adam to seek a variance indicated to Adam that they may be successful at doing so. At no time in 2013 did Defendants indicate to Adam that they were unlikely to succeed in their variance request.

It is undisputed that Adam thought that their request for a variance for the subject property would be approved because they were not changing the footprint of the building or the parking lot from what it was currently being used. They believed that the use of the building as a religious assembly was no different than that of a restaurant that had not one, but two separate, banquet halls which could have been

utilized at the same time and during the time the restaurant was open. Adam's belief in the probable success of their variance request for the subject property was bolstered by the memory that Defendants had previously encouraged Adam to seek a variance under similar circumstances.

Furthermore, the cases cited by Defendant are easily distinguished from the matter at hand. In those cases, the plaintiffs were told prior to entering into lead agreements that their variance requests would be denied.  However, in the instant case, Adam was encouraged to seek a variance for a property in 2013 similarly situated to the one that is the subject of the litigation and further, Adam was not aware that their variance would be denied until after they entered into a purchase agreement for the subject property.

Since Defendants engaged in an individualized assessment of the subject property, and Plaintiff's currently have no adequate location or any feasible alternative location, because they will suffer substantial delay, uncertainty and expense due to the denial of the variance, and because they did not create the harm to themselves, Defendants are not entitled to judgement as a matter of law on Plaintiff's RLUIPA claim.

Furthermore, Defendants' allege no facts and make no arguments that their strict enforcement of the zoning ordinance or the denial of the variance is the least

restrictive means to further a compelling government interest.[86] As such, should this Court find that Adam's religious exercise was substantially burden, or otherwise that there remains an issue of material fact as to Adam's substantial burden, Defendants cannot meet their burden and are thus not entitled to judgement as a matter of law.

### III.   Defendants' Zoning Ordinance and Its Implementation of Its Zoning Ordinance Treats Adam Differently than Non- Religious Assemblies or Institutions.

RLUIPA prohibits Defendant from imposing or implementing a land use regulation that treats religious assemblies on less than equal terms than non-religious assemblies.[87] The 6th Circuit has stated that the comparator must be similarly situated with regards to the regulation at issue and put forth a four part test to determine whether a religious institution is treated the same as a similarly situated non-religious assembly or institution.[88] The test is (1) whether the Plaintiff is a religious assembly or institution (2) that was subjected to a land use regulation (3) that treats the Plaintiff on less than equal terms (4) compared with a non-religious assembly or institution.[89] This court has found RLUIPA equal terms violations when a statute treats religious assemblies differently than it treats private clubs, civic and fraternal organizations, lodge halls, theaters, assembly halls, and public and private educational facilities.[90]

---

[86] 42 USC 2000cc-2(b). *Lighthouse Community Church of God v City of Southfield* 2007 WL4230280 (ED. Mich. Jan. 3, 2007) (attached to ECF 66 as Appendix I)

[87] 42 USC 2000cc-(b)(1)

[88] 42 USC 2000cc-(b)(1)*Tree of Life Christian Schools v. Upper Arlington, OH.,* 905 F.3d 357, 369-370 (6th Cir. 2008)

[89] *Id* at 357.

[90] *New Life Ministries v. Charter Twp. Of Mt. Morris* 2006 WL 2583254 (E.D. Mich. Sept. 7, 2006)- Appendix II

This Court has also found a facial equal terms violation when a religious assembly was not allowed but schools, libraries and swim clubs of the same size were allowed.[91] This court has found an equal terms violation when "groups that gather and meet with similar frequency are only in violation of the zoning ordinance if the purpose for their assembly is religious."[92]

Courts should look to see whether the proposed use "would threaten legitimate interests of the city in a way that other permitted uses do not."[93] The comparators must be similarly situated to the religious assembly based on "legitimate zoning criteria."[94] "Size, harmony with the neighborhood, impact on property values, traffic, lighting, hours of operation, and management of events, are considerations for churches, mosques, and synagogues as well as for the local elementary school, theater, or YMCA.[95]

In the instant matter, the Defendants have admitted that the zoning ordinance applies a more onerous setback requirement to religious assembly places even though there are many non-religious assemblies that, all things being equal, have the same or higher impact on adjacent residential properties, the purported justification for the unique setback requirements of 6.21. The Defendants admit that there is no

---

[91] *Dorman v. Charter Township of Clinton* 2019 WL 3322352 (E.D. Mich. July 24, 2019)

[92] *New Life Ministries v. Charter Twp. Of Mt. Morris* 2006 WL 2583254 (E.D. Mich. Sept. 7, 2006)

[93] *City of Cleyburn Tx. v  Cleyburn Living Center* 473 US 432, 448 (1985).

[94] Tree of Life 905 F.3d at 357

[95] One (1) Ounce of RLUPA Prevention., Dwight H. Merrian, *Mun. Law. May/June 2008* at 11.

justification or basis for regulating parking and setbacks differently in those circumstances.

As such Defendants' have acknowledged that the ordinance itself, by not imposing the same setback and parking requirements on religious assemblies as it does other assembly uses, treats uses that are similar based on their own asserted legitimate zoning criteria, differently simply because one use is religious, and the similar use is not.

It is also true that Defendants were going to permit Adam to use a restaurant, that does not meet the 6.21 setback requirements, as a community center without the necessity of any variances. It was only after believing that Adam was going to worship in the property that Defendants' determined that Adam was subject to the setback and parking requirements and required them to seek a variance. This shows that assembly uses are subjected to different standards of zoning, based solely on the introduction of worship as one of the intended uses of a property.

As further evidence that the zoning ordinance applies differently to religious assemblies than it does to non-religious assemblies is Defendants' admissions that they would allow Adam to use the property that is the subject of this instant litigations, for all of the same assembly uses set forth in their site plan, without requiring a variance, if they had also not intended to use the building to hold prayer

and that because it was going to also have prayer in the location, Adam would be subjected to the setback requirements of 6.21.

It is clear based on those facts alone that the Defendants have drawn a distinction, in the text of the zoning, that they will treat non-religious assembly uses one way, and religious assembly uses a different, and less favorable way, based solely on the purpose of the assembly as being for "worship." This court has already determined that distinctions like those are a violation of RLUIPA's equal terms provision and thus Defendants are not entitled to judgment as a matter of law on Adam's RLUIPA Equal Terms claim against Defendants.

Furthermore, as outlined in Plaintiff's response to the Individual Defendants' Motion for Summary Judgement at ECF 35 and ECF 36, Defendants have treated Adam on less than favorable terms from non-religious assembly when it comes to variance requests. It is clear from the transcripts of the ZBA hearing in June 2018[96] and the depositions of the ZBA Chairperson Glen Clark[97], that Adam was held to a much different and higher standard than was an applicant in December 2018[98] attempting to build on vacant land to develop a wine bar.

When it came to Plaintiff's application, the ZBA determined that Adam was asking to break the law and was not entitled to a variance for vague reasons. The

---

[96] Attached to ECF 66 as Exhibit M.
[97] Attached to ECF 35 as Exhibit B.
[98] Transcript and Application for the December 2018 Variance of the Wine Bar and Restaurant attached to ECF 35 as Exhibits M and N.

ZBA, when making its decision, utilized reasons that did not fit within the legitimate criteria for consideration including denying the variance because not all neighbors agreed with development as a mosque and because the mosque didn't fit in with the intent of the commercial lot.[99]

However, when it came to a non-relgious assembly or institution, the Napa style wine bar and restaurant, the ZBA members determined that it was important to consider the benefits and how much they would enjoy the development[100], determined that the zoning ordinance wasn't the law, but rather "silly little man made pitfalls" [101] and further granted a variance of all of the parking and setback requirements on three sides of a property. Important to note is that when Adam wanted to enter an already developed building that didn't meet the zoning criteria, the ZBA suggested that they demolish the building and build a new structure that was complaint with the ordinance. However, when they granted the variance for the wine bar, they did so for a property that was completely undeveloped and therefore a blank slate where a building could have been built that complied with the zoning ordinance.[102]

Defendants' hyperbole in its brief that Defendants cannot reasonably be said to limit religious exercise in the city of Troy because the zoning ordinance allows

[99] See fully developed argument and citations set forth in ECF 36 Exhibit K.
[100] Dec 2018 ZBA Tran.  pg. Ln
[101] Dec 2018 ZBA Tran. pg. Ln.
[102] See Generally ECF 36 Exhibits K and M.

religious assembly and institutions in 97% of the zoning districts is a complete farce. While the text of the zoning ordinance clearly permits religious assembly, the same ordinance puts such onerous restrictions on the ability to actually obtain a place of worship in the city of Troy, that it ostensibly prohibits religious institutions from actually obtaining and utilizing property in the majority of the land in the city.

Troy has acknowledged during this litigation and argued at the ZBA hearing that many religious assembly places were built prior to the current zoning ordinance. Defendants have also admitted that the majority of the religious assembly places in Troy do not comply with the current setback and parking restrictions set forth in the zoning ordinance, and the DOJ's expert reports provide a list of religious assemblies that do not conform to the ZO requirements.

Furthermore, several of the religious assembly places currently existing in the city were able to be developed precisely because Defendants waived their setback requirements by approving PUDs that do not comply with the setback and parking requirements, as in the case of Woodside Bible, or because Defendants granted variances of the parking and setback requirements.

For the Defendants to now argue that there are sixty religious places of assembly in Troy, their ordinance cannot violate RLUIPA, requires this Court to ignore the fact that those places most likely exist without conforming to the setback

and parking requirements of the current zoning ordinance and that many of them exist because Defendants waived those setback requirements.

The difficulty in obtaining a new place of worship in the City of Troy is acknowledged by the DOJ's expert witness Weinstein in his report, by Mr. Carlisle and Mr. Savident in their depositions where they admit that (1) the city is almost fully developed and (2) that the setbacks make it difficult if not impossible for a religious assembly to come into the city. The concept that it is difficult, if not impossible based on the setback and parking restriction for a religious assembly to come into the city of Troy were further acknowledged at length during the June 2018 ZBA hearing by several members of the ZBA who advised that there was no usable land left in Troy to develop a place of worship, that there is no where in Troy for Adam to have a place of worship, and when the ZBA stated that Adam should look elsewhere and in different cities and communities for a place of worship.[103]

Since there is evidence that the zoning ordinance treats religious assembly on less than equal terms than non-religious assembly, and evidence that the ZBA indeed treated Adam differently than it did a non-religious assembly or institution and because there is evidence Troy's zoning ordinance makes it impracticable for a religious assembly place to obtain and use property in the city of Troy, Defendants are not entitled to judgement as a matter of law on Plaintiff's equal terms claims.

---

[103] June 2018 ZBA Hearing Tr. Pg. 133 Ln 9-13; Pg. 125 Ln 18-24; Pg. 136 Ln. 3-13; Pg. 142 Ln. 21-25.

**IV.    If the Court Finds that there is an Equal Terms Violation, then The Court Should find that Defendants have Violated Adam's Constitutional Rights as Outlined in its Complaint.**

Plaintiff's Constitutional Claims and its RLUIPA claims overlap such that if this Court determines that there is a genuine issue of material fact on any of Plaintiff's RLUIPA claims, they should likewise decline to dismiss Plaintiff's Constitutional Claims. Courts have determined that when a zoning ordinance applies a different standard to religious assemblies and non-religious assemblies in a manner that violates RLUIPA's equal terms provision, that there is also a violation of the First Amendment's Free Exercise clause.[104] The court reasoned that upon a closer look that a law that fail the equal terms provision of RLUIPA will violate the Free Exercise requirements of neutrality and general applicability.

As such, since Defendant's are not entitled to summary judgement on Plaintiff's RLUIPA Equal Terms claims, they are likewise not entitled to judgement as a matter of law on Plaintiff's Constitutional claims.

## CONCLUSION

Defendants' bear the burden of proving there is no issue of material fact such that they are entitled to judgement as a matter of law. Based on the facts as outlined in this Response Brief as well as Plaintiff's Motion and Brief for Summary Judgement, there is ample evidence of Defendants' Violations of RLUIPA and the

---

[104] *Midrash Sephardi, Inc. v Town of Surfside,* 366 F. 3d 1214, 132 (11th Cir. 2004)

US Constitution and thus they are not entitled to judgement as a matter of law and their Motion should be denied in its entirety.

**WHEREFORE**, Plaintiff respectfully requests this honorable Court, deny Defendants' motion in its entirety.

Respectfully Submitted,

CAIR-MI LEGAL FUND


/s/ Amy V. Doukoure
By: Amy V. Doukoure (P80461)
Attorney for Plaintiff
1905 S. Haggerty Road, Suite 105
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

Dated: January 18, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2021, the foregoing paper was filed with the Clerk of the Court using the ECF System which will give notice to all counsel of record.

<u>/s/ Amy V. Doukoure</u>