## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISON

**ADAM COMMUNITY CENTER,**
      Plaintiff,               **Case No: 18-13481**
                                    **Hon. Nancy G. Edmunds**

v.

**CITY OF TROY, et. al.**

      Defendants.

---

### PLAINTIFF'S BRIEF OF THE AVAILABILITY FOR DAMAGES PURSUANT TO THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

NOW COMES Plaintiff, Adam Community Center, by and through its counsel, CAIR-MI Legal Fund, by Amy V. Doukoure and in support of its request for monetary damages against Defendants, avers as follows:

i

# QUESTIONS PRESENTED

1. Does *Sossamon* provide binding precedent prohibiting damages against a municipality in a case alleging violations of RLUIPA's land use provisions?

   Plaintiff: No

   Defendants: Yes

2. Should Plaintiff be entitled to an award of monetary damages for Defendants' violation of RLUIPA's land use provisions because Defendants are not entitled to 11th Amendment Sovereign Immunity?

   Plaintiff: Yes

   Defendant: No

3. Are monetary damages appropriate relief in the context of a violation of RLUIPA land use violation by Defendants?

   Plaintiff: Yes

   Defendant: No

4. Does the 6th Circuit Court's Decision in *Haight v Thompson* provide binding precedent prohibiting damages against a municipality in a case alleging violations of RLU'PA's land use provisions?

   Plaintiff: No

   Defendant: Yes

## MOST CONTROLLING AUTHORITY

*Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357 (6th Cir.

2018)

*Tanzin v Tanvir* 141 U.S. 486 (2020)

*Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 70-71 (1992)

*Sossaman v Texas* 563 U.S. 277 (2011)

RLUIPA's provision that authorizes a cause of action states that: "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." There is no binding precedent in this district that prohibits Adam from obtaining money-damages against Defendants.

I. *SOSSAMON*'S HOLDING IS LIMITED AND DOES NOT GOVERN WHETHER A MUNICIPALITY CAN BE LIABLE FOR DAMAGES UNDER THE LAND USE PROVISIONS OF RLUIPA

The Defendants in this matter will likely rely on *Sossamon v Texas* 563 U.S. 277; (2011) to claim that there is a total bar on the availability of monetary damages in RLUIPA cases. While *Sossamon* does prohibit monetary damages under RLUIPA, against a State, it does not extend to cases involving non-sovereign municipal entities in a land use context.

a. *The Sossaman Decision Relies on State Sovereign Immunity*

The Supreme Court's holding and rationale in *Sossamon v. Texas,* are limited to an analysis of Congress's spending power in abrogating the grant of sovereign immunity to the states in the U.S. Constitution. "***States*** in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA" (*Id* at 293 emphasis added), is unmistakable language that clearly indicates that the Court's analysis is based solely on the concept sovereign immunity and does not, without further guidance, extend to an analysis of municipal liability.

Throughout its analysis, the Court distinguishes its opinion from other lines of cases, including those against municipalities where "appropriate relief" provisions have led to an award of monetary damages. The majority in *Sossaman* squares its opinion with a contrary opinion in other cases allowing money damages as "appropriate relief*"* by stating:

> "The Court's use of the phrase "appropriate relief" in *Franklin v. Gwinnett County Public Schools*, 503 U. S. 60, and *Barnes v. Gorman*, 536 U. S. 181, does not compel a contrary conclusion [that the terms "appropriate relief" do not clearly create a money-damages action against the state where Congress did not speak with clarity]. In those cases, where there was no express congressional intent to limit remedies available against municipal entities under an implied right of action, the Court presumed that compensatory damages were available. *Franklin,* supra, at 73." *Sossamon,* 563 U.S. at 288.

Furthermore, the Court goes out of its way to reiterate that federal statutes must contain clear and unequivocal language in order for states to waive their sovereign immunity. As a result, the court concludes that RLUIPA's provision for "appropriate relief" "does not include suits for damages against at *State*" *Id*. (emphasis added). Another example of the Court's limitation as it pertains to a state's preferential treatment, and inapplicability to municipalities, is when the Court explains that "*sovereign immunity* barred Sossamon's claim for monetary relief." *Id* at 282(emphasis added).

1. Municipalities are Not Afforded Sovereign Immunity

It is clear from other Supreme Court precedent that sovereign immunity is not afforded to political subdivisions of states, therefore any reliance that Defendant has on *Sossamon* is misplaced. "[P]olitical subdivisions of states, such as counties and municipalities . . . are not shielded by sovereign immunity") *N. Ins. Co. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006). The *Sossamon* Court in fact provides clear guidance that municipalities do not enjoy sovereign immunity. After discussing *Franklin*, and other cases of municipal liability, the Court provides clarification in footnote 6 that municipalities are nonsovereign stating that, "those cases did not involve sovereign defendants, so the Court had no occasion to consider sovereign immunity." This is a firm indication that the Court has drawn two conclusions (1) its decision in *Sossamon* was prefaced on the identity of the Defendant as a sovereign state and (2) municipalities are not sovereign.

Since the Court determined that money damages are not available against the sovereign, and because it acknowledges that municipalities are not sovereign, *Sossaman* does not and cannot be argued to prohibit damages under RLUIPA against a municipality for a violation of its land use provision.

b. <u>Congress Enacted the Land Use Provisions Based on Commerce Clause and Enforcement Powers of the 14th Amendment</u>

RLUIPA's Land Use provision is not based on Congress's spending power, but rather stems from its powers under the Commerce Clause and the Enforcement Clause of the Fourteenth Amendment. As such, *Sossaman's* holding does not restrict

- 3 -

damages against municipalities under RLUIPA's land use provisions. Congress enacted § 2(b) pursuant to its enforcement authority under Section 5 of the Fourteenth Amendment. *See* 146 Cong. Rec. at S7775. RLUIPA § 2(b) enforces the Constitution's prohibitions against categorical exclusion of activities protected by the First Amendment. It is not a Spending Clause provision.

In enacting RLUIPA § 2(b)(3) Congress acted to enforce the principle set forth in *Schad*[1] against total exclusion of a category of First Amendment activity, namely, "the right to assemble for worship or other religious exercise under the Free Exercise Clause, and the hybrid free speech and free exercise right to assemble for worship or other religious exercise." 146 Cong. Rec. at S7776.

Other courts have recognized this connection between RLUIPA § 2(b)(3) and the holding in *Schad*. See *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 989 (7th Cir. 2006) ("A similar First Amendment protection [against the total exclusion at issue in *Schad*], albeit limited to religious freedoms, is embodied in RLUIPA § 2(b)(3)."); *Freedom Baptist Church*, 204 F. Supp. 2d at 871 (holding that RLUIPA § 2(b)(3)(A) "codifies" the Schad rule and that § 2(b)(3)(B) codifies existing Supreme Court Equal Protection jurisprudence under the Fourteenth Amendment) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447-48 (1985)).

---

[1] *Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981).

Thus, the Courts have the power to award compensatory damages in a cognizable cause of action brought pursuant to RLUIPA's land use provisions at issue here, particularly Section (b)(2) of the non-discrimination provision. Where there is no express Congressional intent to limit remedies available against a municipality under such implied rights of action, compensatory damages are available. *Franklin* 503 U.S. at 73.

## II. MONETARY DAMAGES ARE APPROPRIATE RELIEF

Not only does *Sossamon* not stand for the proposition that there is a bar on damages against a municipality, it also provides the framework for determining that "appropriate relief" in fact necessitates a finding of damages in the land use context.

a. *Congress Failed to Expressly Limit Remedies Against a Municipality Under RLUIPA and Therefore it is Presumed that Damages are Available*

The *Sossamon* court, as detailed above, clearly differentiated its decision to deny damages against a state based on congress's failure to include an "express waiver provision" in RLUIPA with the need for Congress to include an express limitation on damages in a federal statute creating a cause of action against a municipality. *See* generally *Sossamon* 563 at 286-288 (detailed quote above at I(a) page 2 supra). It is clear from the Court's discussion that when a grant of authority from Congress allows for a private right of action against a municipality, there is a presumption that a monetary award is available unless Congress specifically and explicitly limits the type of relief available.

- 5 -

b. *The Supreme Court's Decision in Tanzin v Tanvir Supports a Determination That Monetary Damages are Available in A RLUIPA Land Use Case Against a NonSovereign Defendant*

*Tanzin v Tanvir* 141 S.Ct. 486, 488 (2020) unequivocally states that "RFRA was enacted to reinstate.. substantive protections of first amendment and the right to vindicate those protections, as such the remedies provision must encompass at least the same forms of relief authorized by §1983." *Tanzin* at 488. The Court goes on further to state "[T]he presumption in Sossaman is inapplicable because this case does not involve sovereign immunity" *Id* at 488 and further "The obvious difference is that these case features a suit against individuals, who do not enjoy sovereign immunity." *Id* at 493. The language from the Supreme Court is a clear and unequivocal proof that the Court interprets damages provisions based on the identity of the defendant and further that monetary damages are available against a nonsovereign under a provision providing for "appropriate relief."

Just like RFRA, RLUIPA was enacted to reinstate the substantive protections of the First Amendment and the ability of religious assemblies to vindicate those rights, especially as it related to implementation and application of land use regulations of a municipality as is the case here. 146 Cong. Rec. 16698 (2000).

Since the Supreme Court in *Tanzin* clearly distinguished its decision in *Sossamon* along the lines of sovereign immunity, and since it is clear that municipal

governments are not sovereign, *Tanzin* provides substantial persuasive authority for the award of damages in favor of Adam for Defendants' violations of RLUIPA.

    *c.* <u>*Tanzin Provides a Salient Explanation of the Definition of Appropriate Relief*</u>

In *Tanzin* the Court also quotes *Sossaman* stating that because appropriate relief "is 'open ended' on its face, what relief is 'appropriate' is 'inherently context dependent." *Tanzin* 141 S.Ct. at (quoting *Sossamon* 563 US at 286). The Court further goes on to explain that sometimes a damages award is not only appropriate relief, it is the "*only* form of relief that can remedy some violations." *Id* at 492 (emphasis supplied) The Court then holds that "effective relief consists of damages, not an injunction." (quoting *DeMarco v Davis*, 914 F.3d 383, 390 (5th Cir 2019; *Yang v Sturner*, 728 F. Supp. 845 (DRI 1990)).

*Tanzin* further reiterates that Congress is aware of how to limit remedies and that a failure to expressly provide a limitation to the types of remedies available for a suit authorized by federal statute creates the implication that indeed damages are appropriate relief. *Id* at 492 (citing statutory language of 29 USC 1132(a)(3) ("appropriate equitable relief") and 42 USC 2000e-5(g)(1) ("equitable relief as the court deems appropriate").

The Supreme Court through its decision in *Tanzin* has clearly stated that appropriate relief, when not addressing a sovereign state, includes, and oftentimes mandates, the award of monetary damages in order to actually bring about

appropriate relief. *Tanzin* clearly tracks with other Supreme Court precedent which allows for monetary damages for violation of a federal statute under an "appropriate relief" provision against a municipality. It is incongruous to extend a decision based on a state's sovereign immunity to municipalities in light of *Tanzin* as well as other clearly established body of law as outlined throughout this brief.

Additionally, damages suffered as a result of a violation of RLUIPA's land use provision are uniquely different than those suffered by an incarcerated person for a violation of their rights. In the context of land use cases, there are oftentimes real monetary losses necessitating a compensatory damage award to provide complete and appropriate relief from the illegal actions of municipalities who've violated their rights.

This is the case in the instant matter where Troy's illegal zoning scheme resulted in Adam Community Center incurring exorbitant monetary losses. Indeed, just like in *Tanzin*, the circumstances are such that an injunction and declaratory relief are insufficient to remedy the harms suffered by Adam in the instant matter.

III.   ***Haight v Thompson*, Like *Sossamon*, Does Not Preclude Damages Against a Municipality for Land Use Violations of RLUIPA**

The Defendants are likely to argue, as they have previously, that *Haight v Thompson* 763 F3d 554 (CA 6, 2014) is the preeminent RLUIPA case in the Sixth Circuit and clearly prohibits damages for violations of RLUIPA. However, like their

anticipated reliance on *Sossamon*, their dependence on *Haight* is mislaid. Like *Sossaman*, *Haight* is a case involving the institutionalized persons act provision of RLUIPA and like *Sossaman* the *Haight* case involves an analysis of what damages are available against a ***State***. *See generally Haight,* 763 F3d at 560-561.

The *Haight* Court expressly relies on the *Sossamon* sovereign immunity analysis in its determination that appropriate relief does not encompass money damages against a state. *Id* at 568-569. A thorough reading of *Haight* clearly shows that just like *Sossaman*, the matter turns on the statutory relief provision of RLUIPA encompasses an express waiver of sovereign immunity provision due to Congress's acting under its authority authorized by its spending power. *Id* at 568.

The *Haight* Court attempts to make the proposition, and Defendants will likely latch on, that enactment under Congress's commerce power is a savings provision and doesn't suddenly permit for monetary damages based on separate powers. *Id*. at 569 stating, "But when Congress invokes more than one source of federal power to enact a law, it does so as a form of insurance—on the off chance that the first source of authority exceeds its grasp. It does not invoke two sources of authority in order to permit two interpretations of the same phrase." However, this argument in the context of RLUIPA land use provision violations must also fail for two reasons. First, the *Haight* Court clearly indicates that the analysis is limited to the context where there is a need for abrogation of state sovereign immunity and (2) the

commerce clause and enforcement provisions of the Fourteenth Amendment are the sole basis for Congress's power to enact the land use provisions of RLUIPA.

### a. _The Clear Statement Rule Adopted in Haight only Applies to States_

Haight adopted what is known as the "clear statement rule," that requires a clear statutory provision that Congress intends to enact legislation that constitutes a waiver of sovereign immunity of the states under its spending powers. In other words, if Congress wishes to make it a condition to receive federal funding that states waive their immunity from suit under a federal statute, it must directly state as much within the language of the statute. _Id_ at 569-570.

However, any argument that this "clear statement rule" applies and should be expanded to include municipalities under the same statute is a misreading and impermissible over broadening of the clear language of _Haight_. _Haight_ clearly states that "If Congress intends to alter the usual constitutional balance between the **_States and the Federal Government_**, it must make its intention to do so unmistakably clear in the language of the statute." _Id_. (quoting _Gregory v. Ashcroft_, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (emphasis added and internal quotation marks and alterations omitted).

At no point does the _Haight_ Court address any issue related to an interpretation of the remedies provision of RLUIPA outside the context of a state and indeed limits its decision to the nature of the relationship between two sovereigns. As stated

above, Defendant Troy is not entitled to sovereign immunity and to assert that *Haight* stands for the proposition that they cannot be held liable for their multiple violations of RLUIPA's land use provision is an impermissible expansion of *Haight*.

    b. *Congress's Enactment of the Land Use Provisions of RLUIPA Under The Commerce and Enforcement Clauses Prevail in Allowing Damages Against A Municipality*

Any argument that Adam is not entitled to money damages because the term "appropriate relief" does not clearly create a money-damages action where Congress did not speak with clarity on this type of award under its spending powers is fatally flawed. As the Ninth Circuit noted, although Congress rested its authority to pass RLUIPA on its spending power, that power has, however, little, if any applicability, to RLUIPA's land use provisions. *See Mayweathers v. Newland*, 314 F.3d 1062, 1068-69 (9th Cir. 2002). The reason is because it is highly unlikely that land use regulation of church construction and maintenance, for example, is an economic activity open to federal regulation under Congress' spending powers, such that the clear-statement rule the Defendants rely on applies. These principles are fatal to the any claims that the clear-statement rule requiring Congress to speak with clarity when imposing a money-damages remedy also applies to land-use claims against municipalities under RLUIPA.

    c. *The Sixth Circuit has Hinted That Haight Doesn't Govern Land Use Cases*

In 2018, the Sixth Circuit issued its Opinion in the *Tree of Life Christian Sch. v. City of Upper Arlington,* 905 F.3d 357 (6th Cir. 2018). In that case, the Court had already heard two previous appeals and indicated that the only claim left standing on the instant third appeal was Plaintiff's claim under RLUIPA's Equal Terms provision *Id*. at 365. During the appeal the Defendant municipality alleged that the case was moot because there was an injunction and Tree of Life had abandoned its claim for money damages. *Id* at 365. In its holding on that issue alone the Court held that "Tree of Life has not abandoned its money-damages claim; nor did the district court's permanent injunction moot it." *Id* at 365.

It is clear from the Court's holding that the district court's permanent injunction did not moot Tree of Life's claim for money-damages, that the Sixth Circuit felt that damages were available as a result of a claim under RLUIPA's Equal Terms provision. Certainly, the Court would have been aware of its ruling in *Haight* at the time that it decided *Tree of Life* and by not invoking its decision in *Haight* to state that there is no claim of money damages and therefore the claim was mooted by a district court injunction, the Court signaled that its interpretation of the applicability of the remedies provision to municipalities was not covered or abrogated by its prior decision.

IV.   **THERE IS PERSUASIVE AUTHORITY THAT A MUNICIPAL VIOLATION OF RLUIPA PERMITS MONEY DAMAGES**

There is ample proof outlined above that the Supreme Court has interpreted "appropriate relief" to include money-damages in cases involving municipalities brought under various federal statutes unless Congress has explicitly limited the remedies provision. Following this line of precedent, several circuits have distinguished *Sossamon's* sovereign immunity analysis from RLUIPA land use violations.

One such case is *Opulent Life Church v City of Holly Springs*, Miss. 697 F3d 279 (5th Cir. 2012). The 5th Circuit unequivocally held that "Money damages are available under RLUIPA against political subdivisions of states, such as municipalities and counties." *Id* at 290 (*citing Centro Familiar Christiano Buenas Nuevas v. City of Yuma,* 651 F3d 253 260-261 (3d Cir. 2007); *see also Mt. Healthy City Sch. Dist. D of Ed v Doyle,* 429 US 274 280-281, (1977) (recognizing that political subdivisions of states do not enjoy Eleventh Amendment immunity). They utilized the rationale in *Sossamon*, discussing *Franklin* as cited above in holding, "Under Supreme Court precedent, money damages are available against municipal entities unless "Congress has given clear direction that it intends to exclude a damages remedy" from a cognizable cause of Action" *Id* (citing Sossaman at 131 S. Ct at 1660 (*citing Franklin v Gwinnett Cnty Pub Schl,* 503 US 60, 70-71 (1992). Based on the distinctions made in *Sossaman* as identified through *Franklin* the Fifth Circuit found that "RLUIPA contains no indication, much less clear direction, that

it intends to exclude a money damages remedy. Thus, municipalities and counties may be held liable for money damages under RLUIPA but states may not." *Id*.

The Ninth and Third Circuits have also allowed for damages against a municipality in RLUIPA land use violations like those at issue in this case based on similar reasoning utilizing Sossamon's own language to distinguish between sovereign immunity enjoyed by States and municipalities who are afforded no such protection. *See generally, Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 (9th Cir. 2011) ("The City of Yuma, therefore, may be liable for monetary damages under RLUIPA."); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260-61, 273 (3rd Cir. 2007).

## CONLCUSION

It is clear that Defendants are not entitled to the protections of sovereign immunity and therefore are liable for monetary damages resulting from their multiple violations of a federal statute, RLUIPA. To allow them to avoid liability while Adam suffered the brunt of the harm without full remedy would be incongruous with prevailing legal authority. Adam has suffered substantial harm, including monetary harm, that can only be remedied with a monetary damages award.

A detailed explanation of Adam's damages is attached hereto as Appendix I. Furthermore, while this brief was requested to assess a damages claim by Adam,

Plaintiff believes that it is entitled to recoup attorney fees and costs associated with the prosecution of this case. As of the time of submission of this Brief those costs and fees are $306,426.12 as more fully outlined in **Exhibit A**. Plaintiff asks this Court to order an interim award of costs and fees to date and to reserve the issue of the continued costs and fees of this litigation for such a time that the litigation is complete.

Dated: October 19, 2022

Respectfully Submitted,
CAIR-MI Legal Fund

/s/ Amy V. Doukoure
Amy V. Doukoure (P80461)
Attorney for Plaintiff
1905 S. Haggerty Road, Suite 5
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

- 15 -