## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ADAM COMMUNITY CENTER**,　　　　)
　　　　　　　　　　　　　　　　　)
Plaintiff,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　Civil Action No. 18-CV-13481
v.　　　　　　　　　　　　　　　　)　　Hon. Nancy G. Edmunds
　　　　　　　　　　　　　　　　　)
**CITY OF TROY**,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
Defendant.　　　　　　　　　　　　)

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this statement under 28 U.S.C. § 517[1]

to assist the Court in evaluating whether private litigants may obtain damages

against municipalities under the land use provisions in the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. 2000cc *et seq*. The

United States has a strong interest in RLUIPA's robust, private enforcement, which

depends on an effective private judicial remedy. Precluding places of worship from

ever obtaining damages against municipalities that violate their rights under

RLUIPA, as the City of Troy proposes, could undermine RLUIPA's enforcement.

---

[1] Under 28 U.S.C. § 517 "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

## I.    PROCEDURAL HISTORY

On September 19, 2019, the United States filed a lawsuit against the City of Troy, Michigan ("Troy"). The United States alleged that Troy violated RLUIPA by treating places of worship worse than equivalent nonreligious assemblies in its zoning ordinance and by denying zoning variances to Adam Community Center ("Adam"), a Muslim organization seeking to establish a place of worship in Troy. On March 18, 2022, the Court held that Troy's zoning ordinance pertaining to setbacks, parking, and special use permits for places of worship violates RLUIPA's equal terms provision. *United States v. City of Troy*, No. 19-CV-12736, 2022 WL 831225 at *12 (E.D. Mich. Mar. 18, 2022). It also held that Troy violated RLUIPA's substantial burden provision when it denied zoning approval to Adam. *Id*. at *15. On September 28, 2022, the Court granted summary judgment to Adam in its companion RLUIPA case on a similar basis. *Adam Cmty. Ctr. v. City of Troy*, No. 18-CV-13481, 2022 WL 4541630 (E.D. Mich. Sept. 28, 2022). The Court also ordered Adam and Troy to submit supplemental briefing as to damages. *Id*. On October 19, 2022, Troy filed a brief arguing that damages are not available to private litigants to remedy a violation of RLUIPA's land use provisions. *See* ECF No. 93, PageID.7606-11.

## II.   ARGUMENT

### A. Statutory Provisions at Issue

As relevant here, RLUIPA makes it unlawful for a government to "impose or implement a land use regulation in a manner that imposes a substantial burden on" religious exercise, absent a compelling interest pursued through the least restrictive means. 42 U.S.C. § 2000cc(a)(1). This substantial burden provision applies not only when the program or activity at issue receives federal financial assistance or affects interstate commerce, *see id*. §§ 2000cc(a)(2)(A)-(B), but also whenever "the substantial burden is imposed in the implementation of a land use regulation" in which the government makes "individualized assessments of the proposed uses of the property involved," *id*. § 2000cc(a)(2)(C). RLUIPA also contains an "equal terms" provision that provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." *Id*. § 2000cc(b)(1). RLUIPA's equal terms provision, and its provision addressing land use regulations that substantially burden religious exercise through "individualized assessments," are both based on Congress's power under Section 5 of the Fourteenth Amendment. *See, e.g., Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1239-40 (11th Cir. 2004) (equal terms)*; Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 995 (9th Cir. 2006) (substantial

burden). *See also* 146 Cong. Rec. S7774-75 (daily ed. July 27, 2000) (Joint

Statement of Sens. Hatch and Kennedy) (noting that the "Fourteenth Amendment"

provides "a third constitutional base" for RLUIPA's land use protections).

RLUIPA also contains a separate provision that prohibits governments from

imposing substantial burdens on the religious exercise of institutionalized persons

without a compelling interest pursued through the least restrictive means. 42

U.S.C. § 2000cc-1(a). Unlike the land use provisions, however, RLUIPA's

institutionalized persons provision only applies when the program or activity

receives federal financial assistance or when the imposition or removal of the

burden affects or would affect interstate commerce. *Id*. § 2000cc-1(b). Unlike its

land use provisions, therefore, RLUIPA's institutionalized persons provision is

grounded solely in Congress's powers under the Commerce Clause and the

Spending Clause. *See Haight v. Thompson*, 763 F.3d 554, 568-69 (6th Cir. 2014);

*see also* 146 Cong. Rec. S7774-75.

RLUIPA allows for judicial enforcement by either the United States or

private parties. 42 U.S.C. § 2000cc-2(a),(f). Suits by the United States are limited

to actions "for injunctive or declaratory relief." *Id*. § 2000cc-2(f). For private

actions, however, the statute allows the litigant to "obtain appropriate relief against

a government." *Id*. § 2000cc-2(a). This Court must therefore determine whether

monetary damages may constitute "appropriate relief" in private actions alleging

violations of RLUIPA's land use provisions.

### B. Monetary Damages May be "Appropriate Relief" for Violations of RLUIPA's Land Use Provisions, and Such Relief is Appropriate Here.

Because RLUIPA does not define the term "appropriate relief," courts must consider "the phrase's plain meaning at the time of enactment."[2] *Tanzin v. Tanvir*, 208 L. Ed. 2d 295, 141 S. Ct. 486, 491 (2020). Appropriate means "especially suited or fitted, proper." *Id.* (citations and quotations omitted). As the Supreme Court has observed, the term "appropriate relief" is "'open-ended' on its face." *Id.* (quoting *Sossamon v. Texas*, 563 U.S. 277, 286 (2011)). Accordingly, "what relief is 'appropriate' is 'inherently context dependent.'" *Id.* (quoting *Sossamon*; additional internal quotation omitted).

---

[2] *Tanzin* involved RLUIPA's predecessor statute, the Religious Freedom Restoration Act of 1993 ("RFRA"). 42 U.S.C. § 2000bb *et seq*. Congress first passed RFRA "to provide greater protection for religious exercise than is available under the First Amendment" in the wake of *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990). *Holt v. Hobbs*, 574 U.S. 352, 356-57. Congress subsequently passed RLUIPA after *City of Boerne v. Flores*, 521 U.S. 507 (1997), found unconstitutional RFRA's application to States and their subdivisions. *Id.* at 357. RLUIPA and RFRA have identical provisions authorizing a private right of action for "appropriate relief." *Sossamon v. Texas*, 563 U.S 277, 286, 291 (2011) (citing 42 U.S.C. §§ 2000bb-1(a) and 2000cc-1(a). Thus, because RFRA "uses the same terminology as" RLUIPA "in the very same field of civil rights law, 'it is reasonable to believe that the terminology bears a consistent meaning.'" *See Tanzin,* 141 S. Ct. at 490-91 (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 323 (2012)) (relating RFRA to 42 U.S.C. § 1983).

1.  <u>The Supreme Court Has Held that "Appropriate Relief" May Include Monetary Damages When the Defendant is Not a Sovereign.</u>

The Supreme Court first examined the meaning of "appropriate relief" in RLUIPA in *Sossamon v. Texas*, where it considered whether the term authorized monetary damages against a State for violating the rights of a prisoner. 563 U.S. 277. Starting from the premise that the meaning of appropriate relief is "context dependent," *Sossamon* found dispositive that the context was a suit against a State. *Id*. at 286. This context required the Court to apply the "clear statement" rule applicable to laws passed under the Spending Clause, under which the "State's consent to suit must be unequivocally expressed in the text of the relevant statute" to overcome the State's immunity from suit by private parties for damages. *Id*. at 284 (quotation omitted).

Applying the above principle, the Court easily concluded that monetary damages were not "appropriate relief" in the context of a prisoner suing the State under RLUIPA's institutionalization provisions. *Id*. at 285-86. The statutory language, which simply referred to "appropriate relief" but did not specify that damages were available, "[did] not so clearly and unambiguously waive sovereign immunity to private suits for damages" that the Court could "be certain" the State consented to such a suit. *Id*.

The Court acknowledged that in prior cases involving other statutes it had used the phrase "appropriate relief" to authorize a private right of action for

damages against government entities. *Id*. at 288 (citing *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, (1992), and *Barnes v. Gorman,* 536 U.S. 181 (2002). *Id*. Those cases were inapposite, the Court concluded, because they involved "municipal entities" rather than "sovereign defendants." *Id*. at 288-89 and n.6.

Nine years later, the Supreme Court in *Tanzin v. Tanvir* reaffirmed that, outside the context of sovereign immunity, "appropriate relief" can include monetary damages. 141 S. Ct. at 489. In *Tanzin*, the Court considered whether the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq*., permits the recovery of monetary damages against federal officials in their individual capacities.[3] *Id*. Because suits against federal officials in their individual capacities did not implicate sovereign immunity, the Court applied ordinary principles of statutory construction rather than the clear statement rule. *Id*. at 492-93 (distinguishing *Sossamon* by noting that "this case features a suit against individuals, who do not enjoy sovereign immunity").

Applying those principles, the Court unanimously concluded in the case before it that monetary damages could be "appropriate relief" against federal officials in their individual capacities. *Id*. at 489. The Court emphasized that

---

[3] As noted earlier, although *Tanzin* involved RFRA, its reasoning is fully applicable to RLUIPA. *Infra* at n.2.

damages had long been awarded against government officials at common law, and were still commonly available today. *Id*. at 491-92. In addition, the Court noted that damages were often the only way to fully remedy some RFRA violations. *Id*. at 492. These considerations led the Court to conclude that "appropriate relief" encompasses damages against government officials in their individual capacities. *Id*. at 491-92.

2.   Under *Tanzin's* Analysis, Damages Are Appropriate Against Troy.

The same considerations the Court considered in *Tanzin* make clear that damages may be an appropriate remedy for violations of the RLUIPA land use provisions by local governments, and are appropriate here. First, Troy, a municipal defendant and not a State, does not enjoy sovereign immunity. *See Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017); *Sossamon*, 563 U.S. at 289 n.6. Accordingly, this Court must apply the "plain meaning" of the statutory term "appropriate relief" in this context, rather than the clear statement rule that the Court applied in *Sossamon*. *See Tanzin,* 141 S. Ct. at 492-93.

Second, just as the historical practice supported the view that monetary damages were appropriate in the context of *Tanzin*, *id*. at 491-92, the same is true here. At the time of RLUIPA's enactment, damages were available against municipal defendants under 42 U.S.C. § 1983 for unlawful policies, including for unlawful zoning ordinances and land use decisions. *See Monell v. Dep't of Soc.*

*Servs. of City of New York,* 436 U.S. 658, 690 (1978); *Shelton v. City of Coll. Station*, 754 F.2d 1251, 1257 (5th Cir. 1985), *on reh'g*, 780 F.2d 475 (5th Cir. 1986) (reversing dismissal of damages claim and holding that "the city is liable for injury inflicted by" its zoning board because it "delegated exclusive policy-making authority to that Board with regard to the grant or denial of variances"); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 695-98 (1999) (recognizing a 42 U.S.C. § 1983 damages action against a city based on zoning permit denials).[4]

Finally, as was the case in *Tanzin*, monetary damages are potentially "the *only* form of relief that [could] remedy some" RLUIPA land use violations against municipal defendants. *See Tanzin*, 141 S. Ct. at 492 (emphasis in original). Specifically, in RLUIPA land use cases plaintiffs are at risk of losing properties due to litigation delays. *See, e.g., Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1168 (9th Cir. 2011) ("If damages were not allowable, then mootness of declaratory judgment and injunction claims would moot out the

---

[4] The Sixth Circuit has also allowed damages claims against municipalities under *Monell* for land use decisions. *See, e.g., Paeth v. Worth Twp.*, 483 F. App'x 956, 964 (6th Cir. 2012) (affirming damages award against a municipality under *Monell* based on "the ZBA's [Zoning Board of Appeal's] decision to deny … a variance"); *Mator v. City of Ecorse*, 301 F. App'x 476, 478-79 (6th Cir. 2008) ("dispens[ing] with the City's *Monell* defense" and finding that "requiring a variance application is a City policy").

entire case."). Similarly, without a damages remedy, a litigant like Adam that experienced years of "delay, expense, and uncertainty," *City of Troy*, 2022 WL 831225, at *14, would have no means of remedying that harm. For the same reasons offered in *Tanzin*, damages under RLUIPA may be an "appropriate" remedy, and Adam should be allowed to obtain damages against Troy for the RLUIPA violations found by this Court.[5] *See City of Troy*, 2022 WL 831225 (finding that Troy violated RLUIPA based on its zoning ordinance and variance denials).

Not surprisingly, the Courts of Appeals have readily concluded that damages are available to private parties alleging violations of RLUIPA's land use provisions by local governments. In *Tree of Life Christian Sch. v. City of Upper Arlington, Ohio*, 905 F.3d 357, 366 (6th Cir. 2018), the Sixth Circuit declined to dismiss a plaintiff's RLUIPA equal terms claim as moot because the plaintiff had also sought "compensatory damages for the harm" caused by the City's alleged violations. *Id.* at 365-66. The Fifth and Ninth Circuits similarly have concluded that "appropriate

---

[5] Notably, *Tanzin's* conclusion that "appropriate relief" encompasses damages against individual officials does not mean damages will necessarily be appropriate relief for every individual-capacity claim. *See* 141 S. Ct. at 493 (holding that RFRA "permits litigants, *when appropriate*, to obtain money damages against federal officials in their individual capacities") (emphasis added). In this particular case, however, damages are appropriate against Troy for Adam's RLUIPA land use claims arising from a discriminatory zoning ordinance and variance denial and for which damages are necessary for complete relief. *See infra* Section II.B.

relief" may include monetary damages against municipalities for violations of RLUIPA's land use provisions. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 289-90 (5th Cir. 2012) (holding that "money damages are available under RLUIPA against political subdivisions of states, such as municipalities"); *Centro Familiar*, 651 F.3d at 1168.[6]

> 3. Troy's Arguments that Monetary Damages Can Never be Appropriate Relief in Land Use Cases Lack Merit.

Troy does not apply *Tanzin's* reasoning to the question of whether monetary damages can be appropriate relief in land use cases against local governments. Instead, relying on *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), Troy argues that damages are categorically unavailable against local governments under RLUIPA. *See* ECF No. 93, PageID.7607-11. *Haight* is distinguishable from the situation at issue in this litigation.

---

[6] Other Circuits have assumed, without explicitly deciding, that damages are available against municipalities for violations of RLUIPA's land use provisions. *See, e.g., Church of Our Lord & Savior Jesus Christ v. City of Markham, Illinois*, 913 F.3d 670, 680 (7th Cir. 2019) (reversing district court dismissal of damages claim because, though "not as easily quantifiable as a business's lost profits or a tort victim's medical bills … [the Church's alleged injuries] are within the ambit of compensatory damages"); *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 368 F. App'x 370, 373 (4th Cir. 2010) (affirming district court's judgment entering jury's $3,714,822.36 compensatory damages award for County's substantial burden violation); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 273 (3d Cir. 2007) (remanding equal terms claim for district court to enter summary judgment and determine compensatory damages for church).

*Haight* addressed whether "RLUIPA permit[s] inmates to collect money damages from prison officials sued in their individual capacities" under the statute's institutionalization provisions. 763 F.3d at 559. Although *Haight* acknowledged that such officials were not entitled to sovereign immunity, it nevertheless concluded that it was obligated to apply *Sossamon*'s clear statement rule rather than consider the ordinary meaning of "appropriate relief." *Id*. at 568.

In reaching that conclusion, the *Haight* court emphasized that Congress's only sources of authority for extending RLUIPA's institutionalization provisions to state prison facilities were the Spending Clause and the Commerce Clause. *Id.* at 568-70. Relying on *South Dakota v. Dole,* 483 U.S. 203, 206-07 (1987), the court concluded that the clear statement rule applies whenever Congress regulates the activity of a State "through the spending power, whether related to waivers of sovereign immunity or not." *Id.* at 568. And citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991), the court concluded that "[a] comparable clear-statement rule … applies to the federal regulation of state prisons under the commerce power." *Id*. at 569-70. Ultimately, *Haight* concluded that regardless of whether sovereign immunity was at issue, allowing damages based on the conduct of state officials in a state prison, a traditional state function, would risk "alter[ing] the usual constitutional balance between the States and Federal Government[.]" *Id.* This consideration required the application of a clear statement rule for determining

whether damages were available, rather than simply analyzing the plain meaning of "appropriate relief." *Id*.

*Haight*, of course, was decided before *Tanzin*, which counsels hesitation in extending its reasoning beyond its factual context.[7] In any event, the concerns that led the court in *Haight* to apply the clear statement rule are simply inapplicable here. This case involves the conduct of a "nonsovereign[]" municipal government, not a State activity. *See Sossamon*, 563 U.S. at 289 n.6; *see also infra* at 8. Furthermore, the land use provisions of RLUIPA are not limited to situations that implicate Congress's powers under the Spending Clause or the Commerce Clause. *See infra* at 3-4. Rather, they are supported by Congress's authority under Section 5 of the Fourteenth Amendment, *id*., which "fundamentally altered the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." *Timmer v. Michigan Dep't of Com*., 104 F.3d 833, 838 (6th Cir. 1997).

Accordingly, the federalism concerns that *Haight* concluded applied in the

---

[7] *See Gill v. Coyne*, No. 3:18-CV-00631-CHL, 2021 WL 4811300, at *15 (W.D. Ky. Oct. 14, 2021) (collecting cases to show "[w]ithin the Sixth Circuit, courts have diverged in their application of *Tanzin*" on RLUIPA money damages claims against individual prison officers); *Ruplinger v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:19-CV-583-DJH-RSE, 2021 WL 682075, at *4 (W.D. Ky. Feb. 22, 2021) (allowing prisoner's money- and punitive-damages claims against a municipal defendant in the absence of Sixth Circuit guidance "about how *Tanzin* affects the holding in *Haight*").

context of state prisons have no relevance to this case. This Court must therefore employ the plain meaning of "appropriate relief" in the relevant context rather than the clear statement rule applied in *Haight*. Similarly, the other cases cited by Troy all address RLUIPA's institutionalization provisions and none of them prohibit damages claims under RLUIPA's land use provisions. And even if they were applicable, all but one are unpublished, district court cases, and this Court need not follow their logic.[8] *See Chevalier v. Est. of Barnhart*, 803 F.3d 789, 796 n.4 (6th Cir. 2015).

### III. CONCLUSION

For the foregoing reasons, the United States respectfully urges the Court to decide that monetary damages are available to Adam to remedy Troy's RLUIPA violations.

---

[8] The one exception relies on *Haight* but was decided before *Tanzin*. *See Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019). Of the five other cases cited by Troy, one supports the availability of damages post-*Tanzin*. *See Ruplinger*, 2021 WL 682075, at *4. One was decided before *Tanzin* but questioned *Haight's* reasoning as applied to municipalities. *See Eidam v. Cnty. of Berrien*, No. 1:19-CV-978, 2019 WL 7343354, at *8 n.5 (W.D. Mich. Dec. 31, 2019). And the other three unpublished, district court cases rejected damages. *See Catlett v. Washington*, No. 20-CV-13283, 2021 WL 3680196 (E.D. Mich. Aug. 19, 2021), *reconsideration denied*, 2021 WL 4593945 (E.D. Mich. Oct. 6, 2021); *Mease v. Washington*, No. 2:20-CV-176, 2021 WL 1921071, at *1 (W.D. Mich. May 13, 2021); and *Newman v. Muhlenberg Cnty.*, No. 4:19-CV-00154-JHM, 2021 WL 467201 (W.D. Ky. Feb. 9, 2021).

**For the United States:**

DAWN N. ISON
United States Attorney
Eastern District of Michigan

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief


_/s/ Shannon M. Ackenhausen_
SHANNON M. ACKENHAUSEN
(P83190)
Assistant United States Attorney
Acting Chief, Civil Rights Unit
United States Attorney's Office
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9730
Facsimile: (313) 226-3271
Shannon.Ackenhausen@usdoj.gov

_/s/ Abigail B. Marshak_
TIMOTHY J. MORAN
Deputy Chief
ABIGAIL B. MARSHAK
(NY 5350053)
KATHERINE A. RAIMONDO
(DC 985157)
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
4 Constitution Square / 150 M Street NE
Washington, DC 20530
Phone: (202) 514-1968
Facsimile: (202) 514-1116
Abigail.Marshak@usdoj.gov
Katherine.Raimondo@usdoj.gov

Dated: November 15, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2022, I electronically filed the foregoing document, Statement of Interest of the United States, with the Clerk of Court using the ECF system, which will send notification of such filing to counsel of record for all parties.

*/s/ Abigail B. Marshak*
ABIGAIL B. MARSHAK (NY 5350053)
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
4 Constitution Square
150 M Street NE
Washington, DC 20530
Phone: (202) 514-1968
Facsimile: (202) 514-1116
Abigail.Marshak@usdoj.gov